IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BOWOTO, et al., | No. C 99-02506 SI |
|     Plaintiffs, | **ORDER GRANTING IN PART DEFENDANTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PLAINTIFFS' DESIGNATED EXPERTS WATTS AND SAGAY** |
| v. | |
| CHEVRON CORP., et al., | |
|     Defendants. | |

On March 10, 2006, the Court heard argument on defendants' motion in limine to exclude expert testimony from Professor Michael Watts and Professor Itsejuwa Esanjumi Sagay. Having considered the arguments of counsel and the papers submitted, and for good cause appearing, the Court hereby GRANTS IN PART defendants' motion.

**BACKGROUND**

In preparation for the upcoming trial in this matter, plaintiffs have disclosed reports from two experts they plan to call at trial: Dr. Michael Watts, Professor of Geography and Director of the Center of African Studies at the University of California, Berkeley; and Itsejuwa Esanjumi Sagay, Professor of Law at the University of Benin in Nigeria. Defendants now move to preclude testimony from these experts at trial.

**I.  Report of Dr. Watts**

Dr. Watts' report is divided into eight categories of information, seven of which are relevant to

defendants' motion[1]:

    (1) *Nigeria Background*, which describes Nigeria's people, history, and environment;

    (2) *Oil Industry Background*, which provides a general overview of the development of Nigeria's oil wealth;

    (3) *Nigerian National Petroleum Company (NNPC) and Joint Venture Agreements*, which describes the operation of Nigeria's partnerships with major oil companies;

    (4) *Conditions in the Niger Delta Are Marked By Unemployment and Poverty*, which describes the lamentable conditions in the Niger Delta region;

    (5) *Several Factors Preclude Local People in Oil-Producing Areas to Benefit from Oil Operations*, which attempts to explain why the region of Nigeria that contains its oil reserves has not benefitted from the wealth those reserves have produced;

    (6) *Oil Installations Are Natural Targets of Protest, Given the Inability of Local People in Oil-Proudcing Areas to Benefit from Oil Operations, and Given the Deleterious Effects of Oil Operations on the Environment and the Livelihood of People in the Niger Delta*, which explains why community protests at oil installations were common events during the 1990s; and

    (7) *Chevron Must Have Known of the Human Rights Abuses Committed by the Military in Nigeria Before May 1998*, which describes in detail the human rights abuses by the Nigerian military up until 1999, the time Nigeria's military rule ended.

## II. Report of Sagay

Sagay's report covers eleven topics, ten of which are relevant to defendants' motion[2]:

    (1) *The Niger-Delta, Location, Description*, which provides characteristics of the Niger delta region.

    (2) *The Evolution of the Nigerian Oil Industry*, which provides a history of oil exploration and production in Nigeria, beginning near the end of World War I.

    (3) *History of Federalisation of Nigerian Mineral Rights*, which describes the laws that place control over oil in the Nigerian federal government.

    (4) *Resource Control*, which describes the struggle by people of the Niger delta region to control the oil resources in their backyard.

    (5) *Obligations of Oil Companies in Dealing with Communities Impacted by Their Drilling/Oil Production Activities*, which describes the obligations imposed upon oil

---

[1] The eighth section is titled "The Basics of Oil and Gas Operations and Their Environmental Effects." This section is the subject of a second motion in limine brought by defendants.

[2] As with Dr. Watts' report, defendants challenge the section of Sagay's report that describes the environmental effects of petroleum operations in a separate motion.

2

companies by Nigerian law.

(6) *Duty to Pay Fair and Adequate Compensation*, which describes the duties placed on oil companies to compensate Nigerians for damage to their land or property.

(7) *Causes of Conflict between Oil Producing Companies and Oil Producing Communities*, which provides reasons for community dissatisfaction with oil companies.

(8) *The Use of Government Security Agencies to Protect Oil Assets*, which describes oil companies' use of military police to guard installations.

(9) *The Notoriety of Human Rights Abuses from the Mid-Nineties*, which describes in general terms the upsurge in violence during the mid-nineties.

(10) *The Chevron/Parabe Oil Rig Platform Incident*, which expresses Sagay's conclusions about the Parabe incident.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed R. Evid. 702. "In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind Rule 702's broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation marks omitted). "Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro Am. Inc. v. Secure Invests., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (internal quotation marks omitted).

Federal Rule of Evidence 403 allows a court to exclude evidence where "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**DISCUSSION**

Before discussing the two expert reports, the Court will describe what it views as the reports' relevance. Nigeria is a country far removed from the understanding of the average American. This is particularly true of the delta states, where the extreme poverty and lack of development will almost certainly be unfamiliar to a jury. Thus, to a certain extent, the Court believes that expert testimony about the country of Nigeria, and the delta states in particular, will be useful to a jury.[3] Plaintiffs should be allowed to provide a context for the events in question; the Court believes the expert testimony they have proffered will accomplish that goal.

Further, Rule 702 contemplates such use of expert testimony. The Rule speaks in terms of "specialized knowledge [that] will assist the trier of fact to understand the evidence." Fed. R. Evid. 702. Numerous courts have allowed expert testimony on background material, when cultures or locations would be foreign to a jury. In *Vang v. Toyed*, 944 F.2d 476 (9th Cir. 1999), for example, the Ninth Circuit considered whether expert testimony was proper in a case brought by a number of Hmong women who claimed to have been raped by a state employee. The trial court allowed plaintiffs' expert to testify "generally as to the Hmong culture, but [precluded him from testifying] as to his opinion regarding the specifics of this case, such as whether there was a rape or why these particular plaintiffs did not report the rape." *Id.* at 481. The Ninth Circuit found that the trial court did not abuse its discretion in admitting the evidence under Rule 702, noting that "expert testimony on issues of culture properly is admitted when relevant and not unfairly prejudicial." *Id.* Other courts have agreed with this result, including in circumstances similar to this case. *See, e.g.*, *Scott v. Ross*, 140 F.3d 1275, 1286 ("Shupe's testimony was proper for the jury because he testified regarding matters beyond the general knowledge of jurors."); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 1340-43 & n.12 (N.D. Ga. 2002)

---

[3]Even the Court has been affected by its lack of familiarity with the region in question. Videos shown to the Court in recent discovery disputes have helped the Court's understanding of the region where the alleged events occurred. Similarly, the Court has found plaintiffs' experts' reports to be quite helpful, particularly the Watts report. Thus, the Court believes that the expert testimony will be useful to the jury for the background information they can provide.

4

1  (relying on expert report on context of Bosnian ethnic cleansing)[4]; *Ford ex rel Estate of Ford v. Garcia*,
2  289 F.3d 1283, 1296 n.17 (11th Cir. 2002) ("Ambassador Corr's 'opinion about [the] general situation
3  in El Salvador: political, economic, and military,' however, would seem more naturally to fall under
4  Rule 702, governing testimony by experts.").

5  With this background, the Court turns to defendants' specific objections to the testimony of
6  Watts and Sagay.

**I.   Watts**

The Court rejects defendants' argument that Watt's testimony on the social, political, and economic history of Nigeria is irrelevant. As discussed above, plaintiffs should be allowed to provide a context for the events that they allege occurred. In the Court's view, this context includes the information discussed in the first six areas of Watt's report, as set forth above.[5]

The Court rejects defendants' argument that this evidence should be excluded under Rule 403. As plaintiffs' expert has admitted time and again, his opinions are not based on the facts of this case, thus, the Court agrees with plaintiff that the evidence is relatively non-controversial and is unlikely to prejudice defendants.

The Court also rejects defendants' arguments that whether oil installations are "natural" targets of protest is irrelevant or unduly prejudicial. Plaintiffs do not offer Watts' opinion on this subject to prove their motive in taking over the Parabe platform, as defendants argue; rather, they offer the opinion to explain the consequences of the "restive youth" phenomenon and specifically to explain the spate of platform protests in the Niger Delta in the 1990s. As defendants made abundantly clear in their deposition questioning of Watts, he knows nothing about plaintiffs' actual motivation and only seeks to describe a general phenomenon that occurred. The Court believes that this testimony is admissible.

The Court agrees with defendants, however, that Watts' testimony that Chevron "must have

---

[4]*Mehinovic* was a bench trial, so the use of expert testimony is not entirely analogous to this case, which will be tried to a jury.

[5]These numbers correspond to sections II.A, II.B, II.C, II.E, and II.G of Watt's report.

5

known" of the Nigerian government human rights record is inadmissible. Whether plaintiffs may introduce evidence of human rights abuses by Nigeria's military is one thing. But whether Chevron was aware of those abuses is pure speculation. In this regard, Watts' proposed testimony is not based upon any specialized knowledge. Rather, it is merely an inference that Watts is no more equipped to make than the jury. Thus, the Court finds that Watts' testimony on this point is not proper under Rule 702.[6]

## II.     Sagay

The Court agrees with defendants that Sagay's testimony is largely inadmissible. With few exceptions, Sagay's report covers topics that the Court does not believe would be particularly helpful to the jury. For example, Sagay's description of the federalization of Nigerian mineral rights and the Nigerian government's relationship with foreign oil companies covers background issues that are only tenuously related to this lawsuit, and that raise a strong risk of confusion of the issues and waste of time. Similarly, for the same reasons as with Watts, Sagay may not testify to his speculation that Chevron "must have known" of the Nigerian military's human rights record. Finally, Sagay's testimony that takes the form of legal conclusions is also not admissible. *See Nieves-Villanueva v. Sota-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997).

Nonetheless, the Court believes that Sagay may be able to provide testimony that will assist the jury. Specifically, the Court believes that Sagay may testify, as a general matter, to the obligations that Nigerian law places on oil companies – the subjects contained in the fifth and sixth topics identified above. As to the rest of Sagay's testimony, the Court agrees with defendants that it is inadmissible, either because it is of only marginal relevance, or because Sagay does not appear to have specialized knowledge of the matters he discusses.

## CONCLUSION

---

[6]Because Watts has not violated any Court order, the Court rejects defendants' argument that Watts' testimony should be disallowed because he has not fully responded to a subpoena.

6

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' motion in limine (Docket ## 797, 802, 854).

Dated: August 22, 2006

SUSAN ILLSTON
United States District Judge