IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BOWOTO, et al., | No. C 99-02506 SI |
| Plaintiffs, | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL** |
| v. | |
| CHEVRON CORP., et al., | |
| Defendants. | |

Now before the Court is a motion to compel brought by defendants in this case. Pursuant to Local Rule 7-1(b), the Court finds this matter appropriate for submission without oral argument. Having carefully considered the arguments presented in the papers submitted, the Court GRANTS IN PART defendants' motion.

**BACKGROUND**

Plaintiffs filed this action in 1999, seeking compensation for a string of brutal attacks that took place in Nigeria in 1998 and 1999. The attacks took place on an oil platform known as the "Parabe platform," and at two villages in the Niger River delta named Opia and Ikenyan. Plaintiffs alleged that the attacks were orchestrated by Chevron's Nigerian subsidiary, Chevron Nigeria Limited ("CNL"), and have sought to recover from two of CNL's parent companies for the attacks. Discovery in this matter closed on December 16, 2005. Defendant now moves to compel additional discovery.

# DISCUSSION

**1.    Opia and Ikenyan Videotape**

The parties' main dispute is over the admissibility of a videotape that purports to show Ikenyan and Opia a few days after the January 4, 1999, incident. Plaintiffs produced the videotape to defendants as part of their initial disclosures, but failed to produce any other information about the video until the end of discovery. Defendants argue that plaintiffs deliberately failed to answer interrogatories and deposition questions about the video. Thus, defendants seek to exclude the video from trial, or, at the very least, to reopen a number of depositions.

Defendants base their argument on a number of discovery responses that plaintiffs have recently admitted were erroneous. For example, one of defendants' interrogatories requested that plaintiffs disclose "all INFORMATION RELATED to the creation of the video entitled 'Opia and Ikenyan Incidents.'" Kollios Decl., Exh. 28. Each plaintiff's response indicated that he had no information about the video. *Id.* In addition, plaintiff Benson Edekou testified at his deposition that he had never seen a video purporting to depict Opia and Ikenyan. Kollios Decl., Exh. 17. Plaintiffs' counsel confirmed their lack of knowledge at a September 2005 case management conference, informing the Court that they knew "nothing" about the video and that they were not planning on using it at trial. Kollios Decl., Exh. 29.

Following the case management conference, however, plaintiffs informed defendants that they had learned more about the video. They claimed that they had contacted the Nigerian attorney who had given them the videotape, Uche Onyeaguchi, after the case management conference, and that he had remembered that he received the video from former plaintiff Robinson Uroupa. Plaintiffs' counsel wrote defense counsel a letter with this information on September 21, 2005. Kollios Decl., Exh. 30. On December 16, 2005, plaintiffs produced discovery responses in which two of the plaintiffs claimed to remember the video. Edekou's response stated that he, along with two non-plaintiffs, had decided to commission a video to document the attacks on Opia and Ikenyan, and that he was present during the filming of the video. Kollios Decl. Exh. 32. Plaintiff Henry Pabulogba's response also stated that he was present when the video was filmed. *Id.*

Plaintiffs' counsel attributes the reversal in Edekou's and Pabulogba's discovery responses to

their failure to recognize the title of the video in defendants' initial interrogatory. Because neither plaintiff recognized the title, and because plaintiffs' counsel did not show either plaintiff the video, both Edekou's and Pabulogba's interrogatory responses indicated that they knew nothing of the video. Once plaintiffs' counsel showed Edekou and Pabulogba the video in November 2005, however, in response to a Court order compelling them to identify the individuals in the video, both plaintiffs recognized the video and remembered its history. Once plaintiffs' counsel learned the additional information, they promptly disclosed it to defendants.

The Court agrees with defendants that plaintiffs' counsel's conduct was lacking. If plaintiffs did not recognize the name of the video, plaintiffs' counsel should have showed them the video in order for them to provide an adequate answer to defendants' interrogatories. As it occurred, plaintiffs' counsel's actions rendered their clients' interrogatory responses wholly meaningless.

The Court does not believe, however, that defendants have demonstrated the type of bad faith necessary to warrant excluding the video from trial, and to that extent the motion is DENIED. The Court believes that any prejudice can be cured by allowing defendants to reopen the depositions of Edekou and Pabulogba to question them about the video's creation, and to that extent only the motion is GRANTED.

**2.    Kretzmann Memo**

Defendants also seek a memorandum prepared by Stephen Kretzmann, a former employee of Project Underground. Kretzmann visited the villages of Opia and Ikenyan a few weeks after the 1999 attacks. In this visit, he interviewed approximately 23 villagers, taking notes, audiotapes, and photographs. Approximately 6 months later, plaintiffs' counsel requested that Kretzmann summarize some of the information from his visit in a memorandum, and Kretzmann obliged. That memorandum is the subject of defendants' motion.

The Court agrees with plaintiffs that the memorandum is covered by the work product doctrine. Although Kretzmann visited Nigeria and conducted the interviews on his own initiative, it is undisputed that the memorandum at issue was created in response to a specific request from plaintiffs' counsel. Thus, the Court believes it should fall under the protection of the work product doctrine. *See In re*

3

*Grand Jury Subpoena (Mark Torf/Envt'l Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (document prepared by investigator in anticipation of litigation was fell under work product doctrine).

The Court, however, does not believe that the memorandum is entitled to a particularly high level of protection. The notes from which the memorandum was made do not qualify as attorney work product, and plaintiffs do not allege that an attorney assisted Kretzmann in creating the memorandum. Thus, it is unclear whether the memorandum will divulge the "mental processes of the attorney," *United States v. Nobles*, 422 U.S. 225, 238, 95 S. Ct. 2160, 2170 (1975), or other protected information. *See* Fed. R. Civ. P. 26(b)(3) ("[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation").

Given that the memorandum appears to be only marginally protected by the work-product doctrine, the Court believes that defendants have made a showing of "substantial need" sufficient to warrant production of the memorandum. Kretzmann's notes, audiotapes, and pictures have all been lost; the memorandum therefore appears to be the only record of Kretzmann's 1999 visit to Nigeria. Moreover, it is clear from Kretzmann's deposition testimony that he remembers very little from his visit. *See, e.g.*, Filios Decl. Exh. E at 121. Thus, the memorandum is the only source from which defendants can obtain the information.[1]

To ensure that no "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party" are contained in the memorandum, the Court will review the document *in camera* before ordering its production to defendants. **Accordingly, plaintiffs are ORDERED to produce the Kretzmann memorandum for *in camera* inspection, no later than September 18, 2006.**

**3.    ERA Reports**

In a November 2005 case management conference statement, defendants moved to compel

---

[1] Kretzmann testified at his deposition in some detail about his interview with Lawuru. Filios Decl., Exh. E at 126-134. The Court agrees with defendants that Kretzmann's testimony was likely taken from his memorandum.

4

plaintiffs to respond to a number of interrogatories that sought information about an Environmental Rights Action ("ERA") report on the Opia and Ikenyan incidents. In a November 10, 2005, order, the Court granted defendants' motion as to some of their requests, and denied it as to others. Defendants now ask the Court to revisit its ruling, and also argue that plaintiffs have inadequately responded to the interrogatories for which defendants' motion was granted.

Defendants have provided no compelling reason for the Court to revisit its ruling, and the Court declines to do so. As to plaintiffs' purportedly inadequate responses, the Court agrees with plaintiffs that their interrogatory answers sufficiently fulfilled their discovery obligations. Plaintiffs are not required to seek information from ERA to answer the interrogatories; they are only required to answer from their own personal knowledge. Thus, defendants' motion is DENIED as to the interrogatories concerning the ERA report.

Defendants also argue that plaintiffs have inadequately answered two interrogatories that requested information on all public statements made by Oronto Douglas, a former lawyer for ERA, and by other ERA employees. Plaintiffs' response, which consisted of an "exemplary" list of public statements, was insufficient. Plaintiffs must produce all responsive information that is in their possession. Accordingly, defendants motion to compel is GRANTED with respect to defendants' interrogatories 183 and 184.

### 4.     2001 Video

The last matter defendants raise concerns a video plaintiffs' counsel took in 2001 of Opia and Ikenyan. Plaintiffs produced the video without the audio track, arguing that the audio was protected by the attorney-client privilege. The Court agrees. Plaintiffs have established that portions of the video contain communications protected by the attorney-client privilege and work-product doctrine. The Court declines to require plaintiffs to edit the video so that portions are audible. Accordingly, defendants' motion is DENIED as to the silent video.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' motion (Docket No. 921).

**IT IS SO ORDERED.**

Dated: August 29, 2006

SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California