IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BOWOTO, et al., | No. C 99-02506 SI |
| Plaintiffs, | **ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL AND DENYING PLAINTIFFS' MOTION FOR SANCTIONS** |
| v. | |
| CHEVRON CORP., et al., | |
| Defendants. | |

Now before the Court is a motion to compel brought by plaintiffs in this matter. Pursuant to Local Rule 7-1(b), the Court finds this matter appropriate for submission without oral argument. Having considered the arguments in the papers presented, the Court GRANTS IN PART plaintiffs' motion.

**DISCUSSION**

Plaintiffs filed this action in 1999, seeking compensation for a string of brutal attacks that took place in Nigeria. Plaintiffs alleged that the attacks were orchestrated by Chevron's Nigerian subsidiary, Chevron Nigeria Limited ("CNL"), and have sought to recover from two of CNL's parent companies for the attacks. Discovery in this matter closed on December 16, 2005. Plaintiffs now move to compel additional discovery in the following areas.[1]

---

[1] The parties have represented to the Court that a number of disputes raised in plaintiffs' motion have been resolved. Accordingly, the Court will not discuss plaintiffs' motion as to the following discovery: 1) Margaret Irowarinu special interrogatories 19-23; 2) plaintiffs' requests for production 462-465; and 3) Bassey Jeje special interrogatory 1.

**1.     Discovery Concerning Opuekeba Incident**

Requests for production ("RFPs") 421-423 and Mary Irowarinu special interrogatories 20-23 seek information about a May 1994 incident near CNL's oil facilities in Opuekeba. According to an article produced by plaintiffs, in May 1994:

> protestors tied 16 boats together to block access to Chevron Nigeria Ltd's installations at Opuekeb[a] in Delta State. . . . After a Chevron request for police assistance, a self-propelled barge was sent in that rammed the blockade and sank all 16 boats. Three people drowned and many more were injured.

Teukolsky Decl., Exh. 6 at 2. The RFPs sought documents that related to the Opuekeba incident, while the special interrogatories requested that defendants identify those who they believed had information about the incident.

Defendants responded to the RFPs by stating that they have no responsive documents in their possession, custody, or control. In addition, defendants responded to the special interrogatories by directing plaintiffs to a stack of 1,102 pages of "Daily News Reports" that they believed "may contain responsive information." Teukolsky Decl., Exh. 2 at 24-26. These news reports, however, date only from 1996 to 2000, and do not include any reports from 1994. Thus, in essence, defendants produced no information about the Opuekeba incident.

Plaintiffs are highly skeptical of defendants' claims that they possess no responsive documents, and that they know of no individuals with knowledge of the Opuekeba incident. They ask the Court to compel defendants to perform another search for the documents and information. The Court, however, does not find defendants' response as implausible as plaintiffs contend. The incident occurred twelve years ago, in a developing country, in a time before email was widely used. While the incident involved conduct that was somewhat similar to the allegations in this litigation, it was separated in time by five years. In these circumstances, the Court finds defendants' assertions that they were unable to find any responsive documents or information credible.

Although plaintiffs clearly do not believe defendants' assertions, they have provided no reason for the Court to question defendants' representations that no responsive documents could be found. Accordingly, plaintiffs' motion is DENIED with respect to the Opuekeba incident.

### 2. Documents Concerning Opuama Incident

In a similar vein, RFPs 439-442 seek information about an incident in 1997 in which "a youth by the name of Gidikumo Sule was killed by Mobile Police in Opuama, Delta State in the course of a dispute with a Chevron contractor." Teukolsky Decl., Exh. 9 at B4084. Plaintiffs claim that documents produced by Chevron demonstrate that additional documents exist that defendants have not produced. For example, one email defendants produced references "minutes to the Security meeting that was held on Monday." Teukolsky Decl., Exh. 25. Plaintiffs argue that defendants should be compelled to conduct a more thorough search for documents related to this email.

As above, the Court disagrees. Defendants have represented that all responsive documents have been produced. Plaintiffs' speculative arguments over the existence of documents concerning an incident that occurred over eight years ago have not convinced the Court to question defendants' representations. Accordingly, plaintiffs' motion is DENIED as to the Opuama incident.

### 3. Discovery Concerning Chevron's Knowledge of the Human Rights Record of the Nigerian Government

Plaintiffs move to compel defendants to respond to five document requests that relate to the human rights record of the Nigerian government. In a previous order, the Court found that defendants' knowledge of the human rights record of the Nigerian government was relevant. The Court continues to believe that this ruling was correct. Accordingly, it GRANTS plaintiffs' motion as to RFP 519, which concerns the Nigeria Country Report on Human Rights Practices, a publication issued by the U.S. Department of State on January 30, 1998.

Four of plaintiffs' document requests, however, seek documents related to the potential imposition of sanctions on Nigeria by the United States and the Commonwealth of former British colonies. These requests are loosely related to Nigeria's human rights record because the sanctions plaintiffs identify resulted from human rights abuses by the Nigerian government. Any documents that discuss sanctions, however, are likely to focus on the effects those sanctions will have rather than on their cause. The Court does not believe that the benefit of the relatively few documents plaintiffs seek will outweigh the burden associated with producing them. Accordingly, plaintiffs' motion to compel

1   is DENIED with respect to RFPs 515, 516, 517, and 520.

**4.  Defendants' Use of Rule 33(d)**

Plaintiffs also object to defendants' use of Federal Rule of Civil Procedure 33(d) in a number of its interrogatory responses. Rule 33(d) reads:

> Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

Fed. R. Civ. P. 33(d). The advisory committee notes to the rule provide: "A respondent may not impose on an interrogating party a mass of records as to which research is feasible only for one familiar with the records." *Id.*, adv. comm. notes to 1970 amendments.

Plaintiffs argue that the defendants have abused Rule 33(d) by referring them to thousands of pages of technical documents. The Court largely agrees.

**A.   Bassey Jeje Special Interrogatories 15 and 16**

Jeje special interrogatories 15 and 16 request that defendants identify each refinery and terminal in the United States that received shipments of crude oil from CNL. Teukolsky Decl., Exh. 4 at 17-18. In response to this interrogatory, defendants referred plaintiffs to more than 53,000 pages of documents. Defendants justify their use of Rule 33(d) by arguing that they do not possess the information requested because they sell the oil in Nigeria and are not responsible for shipping it overseas. They argue that only a handful of the documents produced contain the requested information, and the rest were produced solely "to provide further details" of the transactions "in the event plaintiffs wished to cross-reference each entry." Def. Br. at 4 n.4.

The Court agrees with plaintiffs that defendants' response was insufficient. At a minimum, if defendants wish to rely on Rule 33(d) with such a voluminous production, they must explicitly describe

4

the content of the relatively few documents that contain the requested information, and must describe the content of the remaining documents. Defendants appear to have adequately described the handful of documents that contain the information requested. Defendants must correct, however, the lack of any information regarding the more than 52,000 pages remaining.

Thus, the Court GRANTS plaintiffs' motion as to the Jeje special interrogatories 15-16. Defendants must describe with more detail the documents they reference or must provide a substantive response to the interrogatory.

### B. Bassey Jeje Special Interrogatory 17

This interrogatory seeks a description of the services performed by Chevron Products Company for CNL from 1996 to 1999. Teukolsky Decl., Exh. 4 at 18. Defendants' response directs plaintiffs to "Defendants' Responses to Plaintiffs' Fifth Set of Requests for Production of Documents (Federal), Nos. 481-486." *Id.* In a letter, defendants later directed plaintiffs to a few agreements executed by Chevron Products Company and CNL.

The Court agrees with plaintiffs that defendants' cross-referencing of RFP responses was unnecessarily confusing and therefore GRANTS plaintiffs' request. Defendants shall correct their interrogatory response.

### C. Oyinbo Special Interrogatories 1 and 2

These interrogatories request information concerning performance evaluations of CNL's managing director from 1996 to 1999. In response, defendant referred plaintiffs to a number of documents about Chevron's long-term incentive plan. The Court agrees with plaintiffs that defendants' response did not answer these interrogatories. Accordingly, the Court GRANTS plaintiffs' motion with respect to Oyinbo special interrogatories 1 and 2.

### 5. Oyinbo Special Interrogatory 23

This interrogatory requests that defendants explain the meaning of the corporate relationships depicted on a number of organizational charts. Plaintiffs are concerned with one chart in particular,

5

which is titled "Nigeria Organization," and which depicts not only the ownership chain of CNL, but also Chevron U.S.A. ("CUSA"), a Chevron subsidiary with no ownership interest in CNL. Defendants have explained that CUSA has no ownership interest in CNL, but have not explained why it appears on the Nigeria Organization chart.

The Court agrees with defendants that this information is more specific than that contemplated by the interrogatory. The reason a subsidiary appears on a chart is not necessary to explain the "corporate relationships depicted" on the chart. Accordingly, plaintiffs' motion is DENIED with respect to Oyinbo special interrogatory 23.

### 6. Depositions of Emmanuel Ejakpomewhe and Benjamin Kperegbeyi

The final issue before the Court is whether plaintiffs should be allowed to depose the above two individuals, despite the fact that non-expert discovery closed on December 16, 2005. Plaintiffs argue that they learned only on the final day of discovery that Ejakpomewhe and Kperegbeyi had witnessed the Opia and Ikenyan attacks. Defendants argue that plaintiffs have known since 2004 that Ejakpomewhe and Kperegbeyi were on the sea trucks used that day. The Court agrees with plaintiffs and GRANTS their request.

Plaintiffs initially sought information regarding Ejakpomewhe and Kperegbeyi, among others, in interrogatories served on May 27, 2005. When defendants refused to respond, plaintiffs moved to compel. In response, defendants argued that they had already produced to plaintiffs all information known to them about Ejakpomewhe and Kperegbeyi. After the Court granted plaintiffs' motion to compel, and on the last day of discovery, defendants produced interrogatory responses that revealed that Ejakpomewhe and Kperegbeyi had witnessed the Opia and Ikenyan attacks.

Given defendants' failure to produce this information and their representation that all information about the witnesses had been produced, the Court GRANTS plaintiffs' request. Plaintiffs' request for sanctions, however, is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART plaintiffs' motion (Docket No. 905). The further responses hereby ordered shall be provided **on or before September 18, 2006.**

**IT IS SO ORDERED.**

Dated: August 29, 2006

SUSAN ILLSTON
United States District Judge