IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BOWOTO, et al., | No. C 99-02506 SI |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO COMPEL** |
| v. | |
| CHEVRON CORP., et al., | |
| Defendants. | |

Now before the court is a long-standing discovery dispute in this matter. Defendants seek to compel plaintiffs' counsel to answer interrogatories concerning a forged signature on a verification for one of the plaintiffs' interrogatory responses. Having carefully considered the arguments of the parties as well as the evidence submitted, the Court hereby DENIES defendants' motion.

**BACKGROUND**

In January 2005, plaintiffs' counsel served interrogatory responses purportedly on behalf of plaintiff Obele Ignoni with a verification dated December 22, 2004. The verification indicated that the content of the responses was based on Ignoni's personal knowledge and that the documentation was signed in Wirra, Nigeria. However, when defense counsel deposed Ignoni on May 6, 2005 and questioned him about the verification, Ignoni testified that the signature on the document was not his and that he had not been in Wirra on the date in question. He further stated that he had not authorized anyone to sign the document in his name. Plaintiffs' counsel later admitted that they discovered the forgery a day before the deposition, but did not notify the defendants. They claimed that up until the deposition, they were uncertain as to whether the verification had been served.

On May 10, 2005, defendants served plaintiffs' counsel with formal discovery concerning the forgery. In their June 8, 2005, response, plaintiffs' counsel objected to defendants' interrogatories to "the extent that they [the interrogatories] seek information that is protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine, as well as any other applicable privileges including the joint prosecution privilege and the privilege against self-incrimination." Plaintiffs' counsel further stated that they would only answer the interrogatories with information derived from "unprivileged" sources.

Plaintiffs later moved to be relieved from responding to defendants' interrogatories on the ground that securing authenticated responses from 20 individuals in Nigeria was an undue burden. The Court denied plaintiffs' motion, but attempted to ease the burden on plaintiffs by granting plaintiffs' request that plaintiffs' counsel, rather than plaintiffs themselves, be allowed to answer the interrogatories. Plaintiffs' counsel then asserted that they could not provide any additional information without violating California rules of ethics governing attorneys. The Court thereafter removed its limitation on defendants' discovery and ordered each of the plaintiffs to respond to the interrogatories. The interrogatory response for one plaintiff, John Ikenyan, stated that another plaintiff, Robinson Uroupa, had admitted to being the forger. By the time defendants received that interrogatory response, however, Uroupa had voluntarily dismissed his claims with prejudice, removing any obligation on his part to answer the interrogatories. Defendants attempted to reopen Uroupa's deposition, but, despite a number attempts, Uroupa either refused or failed to appear. Thus, defendants were never able to obtain any information from Uroupa about the forgery.

Because of the difficulty they have experienced in obtaining answers to their questions about the forgery, defendants have repeatedly requested that the Court order plaintiffs' counsel to state what they know about the forgery.[1] Plaintiffs' counsel argue that they may not ethically divulge the information defendants seek. The Court agrees with plaintiffs' counsel, and therefore DENIES defendants' motion.

---

[1] In one of their many letter briefs, defendants suggest that the court vacate its prior order dismissing Uroupa as a plaintiff and issue a new order of dismissal subject to the condition that Uroupa respond to the interrogatories. The Court DENIES this request.

## DISCUSSION

The initial question this Court must resolve is whether the information defendants seek is protected from disclosure. The Court finds that it is. It is undisputed that plaintiffs' counsel learned the information through communications with their clients. In California, such communications are "presumed to have been made in confidence." Cal. Evid. Code § 917. As the communications at issue were confidential and were made by the client to his attorney in the course of that attorney's representation of the client, the Court finds that the attorney-client privilege applies. *See, e.g.*, *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). It is perfectly appropriate for plaintiffs' counsel to raise the attorney-client privilege in refusing to answer a question. *Fisher v. United States*, 425 U.S. 391, 402 (1976) ("[I]t it is universally accepted that the attorney-client privilege may be raised by the attorney.").

Defendants argue that the privilege protects only the underlying communications and not the facts that they seek to discover. While it is true that information provided by a client to his attorney is not protected from disclosure just because it was the subject of an attorney-client communication, that is not the end of the matter. The issue here is not the clients' refusal to answer interrogatories – the current plaintiffs in this case have provided their responses. Rather, the issue is whether plaintiffs' counsel must provide interrogatory responses containing information derived from attorney-client communications.

California law is explicit about the ethical duties of lawyers to their clients. The California Evidence Code provides that "[t]he lawyer who received or made a communication subject to the privilege under this article *shall* claim the privilege whenever he is present when the communication is sought to be disclosed." Cal. Evid. Code § 955 (emphasis added). Similarly, the California Business and Professional Code requires attorneys "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Cal. Bus. & Prof. Code § 6068(e)(1). These provisions clearly prevent plaintiffs' counsel from disclosing information they learned from their clients. While their clients may be compelled to provide the information, compelling their attorney to provide the information is a wholly different matter.

Given the Court's finding that the privilege applies, defendants raise two arguments as to why

3

the information is discoverable: (1) the communications sought by defendants fall under the crime fraud exception to the privilege; and (2) plaintiffs implicitly waived the privilege.

### 1.     Crime Fraud Exception

First, defendants argue that the information they seek falls under the crime-fraud exception to the privilege. They assert that "any attorney-client communication in the process of preparing for or committing the forgery or passing it off as genuine falls within the crime-fraud exception to the privilege." However, in order for defendants to invoke this exception successfully, they must demonstrate more than just that plaintiffs engaged or intended to engage in the illicit act when seeking the advice of counsel. Instead, the information sought must be *in furtherance* of that act. *In re Grand Jury Proceedings (Corporation)*, 87 F.3d 377, 380 (9th Cir. 1996). While the crime-fraud exception applies whether or not counsel knew of their client's criminal purpose – the intent of the client controls – defendants have presented insufficient evidence to this Court that the communications at issue were used in furtherance of the forgery. Indeed, one would not expect a relatively uncomplicated crime like forgery to involve any legal advice before it was committed. More importantly, the communications at issue all appear to have been made after the forgery took place, meaning that they could not have been used in furtherance of the forgery. Accordingly, the Court finds that the communications in question do not fall under the crime-fraud exception.

### 2.     Waiver of the Attorney-Client Privilege

Defendants also argue that plaintiffs implicitly waived the privilege by placing the authenticity of the verifications and the veracity of the interrogatories at issue through the submission of the forgery. Their argument relies on two cases: *Chevron Corporation v. Pennzoil Company*, 974 F.2d 1156 (9th Cir. 1992); and *In re Southern and Eastern District Asbestos Litigation,* 730 F. Supp. 582 (S.D.N.Y. 1990).

In *Chevron*, a dispute arose concerning the basis upon which the defendants made a tax decision. *Chevron*, 974 F.2d at 1162. As part of their defense, the defendants maintained that they made the decision pursuant to the advice of counsel, but that documents relating to this advice, which plaintiff sought, were protected by attorney-client privilege. *Id.* The plaintiff responded that defendants

4

implicitly waived the privilege by placing the information contained in the documents at issue in its defense. *Id.* The *Chevron* court agreed, reasoning that the privilege "may not be used both as a sword and a shield." *Id.* at 1162. In other words, defendants could not invoke the attorney-client privilege to deny the plaintiff access to the very information that the plaintiff must refute in order to meet its burden. *Id.* at 1162-63.

The facts in the present case are not analogous to those in *Chevron*. The party asserting the privilege in *Chevron* used the information contained in the communications as an affirmative defense and in doing so put those communications at issue. The opposing party in that case could not have defeated the defense without access to the privileged documents. In contrast, plaintiffs here do not use the advice of counsel in any affirmative capacity and therefore do not use the privilege as a "sword." Since plaintiffs do not dispute that the signature on the verification was indeed forged, defendants do not have to obtain proof of forgery by accessing what otherwise would be privileged communications. The mere existence of the forgery coupled with the desire of defendants to probe for additional misrepresentations is insufficient for finding waiver.

In *Asbestos Litigation,* the defendants, who were asbestos manufacturers, argued that a memorandum was inadmissible because it was privileged. *Asbestos Litig.*, 730 F. Supp. at 582. The document at issue was comprised of an attorney's summary of a doctor's opinions concerning the hazards at one of defendant's plants. *Id.* at 584. Its contents, which indicated that the defendant's operations might constitute an "occupational hazard," became known to one witness who was instructed by the defendant's counsel to provide false testimony concerning the document. *Id.* at 584. In holding that the privilege for the memorandum had been waived, the court agreed with the reasoning from another case that "a failure to produce the document while allowing a witness to continue to give inaccurate testimony which can be easily corrected and explained by the document effectively distorts the search for truth and constitutes a fraud upon the parties, the witness, and the Court." *Id.* at 585 (internal citations omitted).

As with the *Chevron* case, the facts of the asbestos case differ significantly from those of the present case. The evidence at issue was not a communication between the defendants and counsel, but instead a document comprised of counsel's notes. Accordingly, the privilege at issue was not derived

from the attorney-client relationship, but instead from the work-product doctrine. Moreover, the defendants' counsel in the asbestos case instructed the witness to deny any knowledge of the memorandum, which would have proven his testimony false. In contrast, there is no indication here that plaintiffs' counsel instructed any witness to testify falsely and thus, no indiction that the plaintiffs abused the privilege. Again, plaintiffs do not dispute that the verification was forged.

The Court finds that the communications at issue constituted privileged communications between plaintiffs' attorneys and their clients. Accordingly, plaintiffs' counsel may not reveal the contents of those communications absent permission from their clients. Defendants' motion is therefore DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to compel.

**IT IS SO ORDERED.**

Dated: August 29, 2006

SUSAN ILLSTON
United States District Judge