IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LARRY BOWOTO, et al.,

    Plaintiffs,

v.

CHEVRON CORPORATION, et al.,

    Defendants.

No. C 99-02506 SI

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' TERTIARY LIABILITY THEORIES**

Defendants have filed a motion for summary judgment on plaintiffs' tertiary liability theories. Hearing on the motion is currently scheduled for June 8, 2007. Having considered the papers submitted, and pursuant to Civil Local Rule 7-1(b), the Court finds that defendants' motion is suitable for resolution without oral argument, and hereby VACATES the June 8, 2007 hearing. For the following reasons, the Court DENIES defendants' motion for summary judgment on plaintiffs' tertiary liability theories.

**BACKGROUND**

Plaintiffs filed this suit in 1999, seeking to recover for a series of brutal attacks on oil protestors that plaintiffs allege occurred in Nigeria in mid-1998 and early 1999. Plaintiffs allege that Chevron, acting through its Nigerian subsidiary, Chevron Nigeria Limited ("CNL"), aided and abetted the Nigerian Government Security Forces ("GSF") in carrying out the attacks.

Because of the complicated nature of plaintiffs' theories of liability, pretrial proceedings were early on divided into two phases. In Phase I, the parties took discovery on the issue of whether the United States-based defendants could be held liable for the wrongful actions allegedly committed by

their Nigeria-based subsidiary, CNL. At the end of Phase I, in 2003, defendants moved for summary judgment on this issue, which the defendants refer to as plaintiffs' "tertiary liability" theory. The Court issued an order[1] on March 22, 2004, denying defendants' motion for summary judgment on Phase I. The Court held that plaintiffs had presented sufficient facts from which a reasonable jury could find that an agency relationship existed between defendants and CNL, and that CNL's alleged actions during the incidents at issue were within the scope of that agency relationship. The Court also held that plaintiffs had raised a triable issue of fact as to whether defendants' ratification of CNL's actions created an agency relationship. The Court also ruled, however, that plaintiffs could not hold defendants liable under alter-ego theory or piercing the corporate veil theory.

On April 9, 2004, defendants moved for reconsideration or certification of the March 22, 2004 Order. A hearing on the motion was held on June 4, 2004, and on June 8, 2004, the Court denied the motion. The parties then proceeded to Phase II discovery and pretrial motions, addressing CNL's actions and its liability for the actions of the GSF. In recent months the Court has heard a series of summary judgment and other pre-trial motions, all of which address these Phase II issues. The instant motion, however, departs from the Phase II issues, and returns to the Phase I issue of tertiary liability. Because the Court, in 2004, already denied a motion by defendants for summary judgment on plaintiffs' tertiary liability theories, the Court will treat the instant motion as a renewed motion for leave to file a motion for reconsideration of the Court's March 22, 2004 Order.

## LEGAL STANDARD

In the Northern District of California, no motion for reconsideration may be brought without leave of court. *See* Civil L.R. 7-9(a). Civil Local Rule 7-9(b) provides, in pertinent part:

The moving party must specifically show:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which the reconsideration is sought. The party must also show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

---

[1] *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229 (N.D. Cal. 2004).

2

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

*See* Civil L.R. 7-9(b). Moreover, the motion may not repeat any oral or written argument made by the moving party in support of or opposition to the interlocutory order of which the party seeks reconsideration. *See* Civil L.R. 7-9(c).

**DISCUSSION**

For the following reasons, defendants' motion does not meet the prerequisites for reconsideration established in Civil Local Rule 7-9(b), and the Court therefore must DENY defendants' motion.

Defendants first suggest that the Supreme Court's decision in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), justifies revisiting the Phase I issues. The Court disagrees. Nothing in the March 22, 2004 Order conflicts with *Sosa*. In fact, recent authoritative case law bolsters the Court's findings in the March 22, 2004 Order. *See Sarei v. Rio Tinto, PLC*, – F.3d –, 2007 WL 1079901, at *5 (9th Cir. 2007) ("Courts applying the ATCA draw on federal common law, and there are well-settled theories of vicarious liability under common law. Authorities contemporaneous to the ATCA's passage also suggest that the law of nations has long incorporated principles of vicarious liability.") (citations omitted).

Defendants next argue that "[r]evisiting these issues is also justified by the evidence adduced since the May 2004 order." Mot. at 3:11-12. Defendants point to four specific categories of newly-adduced evidence. First, defendants argue that recently-adduced evidence undercuts "a centerpiece of plaintiffs' Phase 1 agency argument," "that a California defendant supposedly approved payments to the soldiers who conducted the 'attacks' at issue here." *Id.* at 3:13-14. While plaintiffs may have relied heavily on such evidence during Phase I, the Court did not. *See* March 22, 2004 Order at 19:26-20:5. Any change in evidence on this issue is therefore irrelevant.

Second, defendants argue that newly-adduced evidence undercuts the Court's reliance on "a sharp increase in communications between CNL and the United States on the third day of the Parabe siege." Mot. at 3:27-28. Defendants contend that "[a] further analysis of the telephone records reveals

3

. . . that many of those calls were 18 seconds in duration, which is approximately how long it takes for a phone to ring three times before hanging-up. When such calls are removed from all the data or when the total duration rather than just the number of the calls is considered, the third day of Parabe becomes an ordinary day for telephone communications." *Id.* at 3:28-4:5. This argument fails for several reasons. First, defendants do not establish, as required by Local Rule 7-9(b), that "in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order." Defendants do not explain why they could not have made this argument in 2003. Furthermore, defendants' argument incorrectly presumes that the number of 18-second-long calls is irrelevant. On the contrary, the fact that defendants were making abnormally frequent *attempts* to contact Nigeria on the third day of the Parabe incident is probative of defendants' involvement in the incident, regardless of whether the calls went through.[2]

Third, defendants argue that the Phase II depositions of employees who communicated with the media about the incidents at issue "demolish plaintiffs' ratification-by-public statement theory." Mot. at 4:7-8. Again, however, defendants fail to meet their burden of explaining whether and why this newly-adduced evidence was not available to them in 2003. Furthermore, defendants' argument appears to be based on legal theories that they did not present to the Court prior to March 22, 2004. Finally, even if defendants' employees represented during the Phase II depositions that they did not believe "there was any wrongdoing to ratify and believed [their] statements to be true," Mot. at 4:9-10, plaintiffs appear to have presented conflicting evidence regarding the information that was available to defendants at the time of the statements at issue. *See generally* Oppo. at 38-39. A jury must weigh this evidence.

Fourth, defendants contend that "CNL does not exist simply to provide crude oil to be refined in Chevron refineries. In fact, none of CNL's crude is used in Chevron refineries; it is sold FOB Nigeria." Mot. at 4:19-20. As with defendants' other arguments, they do not explain why evidence supporting this argument was not presented to the Court in 2003. Moreover, this fact would not alter the Court's findings. The March 22, 2004 Order did not rely on an assumption that CNL's crude was sold directly to defendants; instead, the Order found significant that "[d]efendants' annual reports

---

[2] Moreover, defendants present no evidence that the 18-second-long phone calls necessarily went unanswered. They could also represent very brief communications.

4

describe the expansion of Chevron's international production as its main area of focus," and that "[m]ore than 20 percent of defendants' earnings were accounted for by CNL's production." Order at 18:8-10. Whether CNL sells its crude directly to defendants was therefore of little relevance to the Court's March 22, 2004 Order.

## CONCLUSION

Defendants have not met the requirements of Civil Local Rule 7-9(b), and the Court therefore must deny what is essentially a renewed motion for leave to file a motion for reconsideration of the Court's March 22, 2004 Order. For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' corrected motion for summary judgment on plaintiffs' tertiary liability theories. [Docket No. 1385]

**IT IS SO ORDERED.**

Dated: June 5, 2007

SUSAN ILLSTON
United States District Judge