IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BOWOTO, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CHEVRON CORPORATION, et al.,<br><br>    Defendants.<br>                                                  / | No. C 99-02506 SI<br><br>**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS AND STRIKE PORTIONS OF THE EIGHTH AMENDED COMPLAINT; PLAINTIFFS' MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION** |

On February 23, 2007, the Court heard argument on defendants' motions to dismiss and strike portions of the Eighth Amended Complaint, and plaintiffs' motion for reconsideration of this Court's August 19, 2002 Order. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby rules as follows.

**BACKGROUND**

Plaintiffs filed an Eighth Amended Complaint ("EAC") on September 21, 2006. Defendants have now brought a motion to dismiss, and a motion to strike, portions of the EAC. Also before the Court is plaintiffs motion for reconsideration of a 2002 order that bears on which claims may be brought in the EAC. The three motions all involve issues arising out of two orders issued by the Court on August 22, 2006.[1]

In one of the August 22, 2006 orders at issue, Order 1206, the Court granted plaintiffs' motion

---
[1] The Court provides a detailed summary of the factual allegations giving rise to this case in the concurrently issued Order Re: Defendants' Motion for Summary Judgment on Plaintiffs' Claims 10 through 17.

for leave to file an Eighth Amended Complaint ("EAC"), in order to name CUSA as a defendant in certain claims. *See* Order Granting in Part Plaintiffs' Motion for Leave to File Eighth Amended Complaint, August 22, 2006 (Docket No. 1206). Order 1206 granted plaintiffs leave to name CUSA as a defendant for "those claims . . . that were not time-barred as of June 28, 2002." *Id.* at 16:7-8. In the instant motions, the parties dispute which claims, of which plaintiffs, meet this requirement.

In the other relevant order issued on August 22, 2006, Order 1204, the Court granted in part defendants' motion to dismiss portions of plaintiffs' Seventh Amended Complaint, and granted plaintiffs leave to cure through amendment. *See* Order Granting in Part Defendants' Motion to Dismiss and Determining Applicable Law, August 22, 2006 (Docket No. 1204). As its title suggests, Order 1204 determined which set of law would apply to the various claims at issue in this action. In the instant motions, the parties dispute the effects of the Court's choice-of-law determinations.

The three motions now before the Court cover inextricably interwoven issues, and the Court will therefore address them together.

**LEGAL STANDARDS**

**I.    Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request

2

to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## II.    Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because of the limited importance of pleadings in federal matters, motions to strike are generally disfavored. *See Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Where the motion involves background or historical material, it should not be granted unless the material is prejudicial to the opponent. *See LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 n.34 (C.D. Cal. 1996).

## DISCUSSION

## I.    Standing and Capacity

### A.    Spouses and children

The first dispute between the parties is whether, under the applicable law, spouses and children of the decedents are appropriate plaintiffs.

Capacity to sue is governed by Federal Rule of Civil Procedure 17(b), which provides that, for an individual acting in a representative capacity, "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Fed. R. Civ. P. 17(b). Under California law, only a decedent's personal representative or successor in interest may bring an action on the decedent's behalf. Cal. Civ. Proc. § 377.30.

"[S]uccessor in interest" is defined by California Code of Civil Procedure Section 377.11, as "the

3

beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Cal. Civ. P. § 377.11. When a person dies intestate, as the decedents here, "beneficiary of the decedent's estate" means "the sole person or all of the persons who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under Sections 6401 and 6402 of the Probate Code or, if the law of a sister state or foreign nation governs succession to the cause of action or particular item of property, under the law of the sister state or foreign nation." Cal. Civ. P. § 377.10. Thus, because the intestate succession in this case is governed by Nigerian law, "successor in interest" signifies those persons who succeed to the decedent's causes of action or a particular item of property under Nigerian law.

Defendants argue that under Nigerian law, only the "personal representative" of the estate is authorized to bring a survival cause of action on behalf of the estate. In response, plaintiffs argue that section 377.10 does not mandate inquiry into who can bring a survival cause of action under foreign law. Instead, section 377.10 is concerned only with determining the beneficiaries of the estate under foreign law. Sections 6401 and 6402 of the California Probate Code, they point out, define to whom an intestate decedent's estate is distributed. Those sections do not discuss who has the right to bring an action on behalf of the estate or the decedent. The Court, they contend, should therefore look to analogous provisions of Nigerian intestacy law. The Court agrees, and finds that under Nigerian law, surviving spouses and children are "beneficiaries of the decedent's estate," and are therefore successors in interest for purposes of California Code of Civil Procedure Section 377.11. *See* Babalakin Decl., Exs. 10 & 11, at 30 (Ondo and Bendel State Administration of Estates Laws).

Moreover, the Court is not convinced by defendants' assertion that under Nigerian law, only the "personal representative" can bring a survival cause of action benefitting the estate. As the Court reads them, the sections of the Ondo and Bendel State Administrations of Estates laws pointed to by defendants, *see* Babalakin Decl., Exs. 10 & 11 at 12, do not establish that "only the personal representative of the estate may bring or defend a survival action," Babalakin Decl. ¶ 22. Section 15 of Part 3 of those laws states in pertinent part that "[s]ubject to the provisions of this section, on the death of any person after the commencement of this Law all causes of action subsisting against or vested in him shall survive against or, as the case may be, for the benefit of his estate . . . ." *Id.*, Ex. 10 at 12.

4

Section 15 says nothing of who has the right or obligation to bring or defend such an action, and certainly does not invest such right or obligation exclusively in a "personal representative." *See id.*

The Court therefore finds that spouses and children are "beneficiaries of the decedent's estate" under Nigerian law, and are successors in interest for purposes of California Code of Civil Procedure Section 377.11.

Defendants also argue that the spouses and children of the decedents may not proceed as successors in interest because they have not complied with section 377.32 of the California Code of Civil Procedure by providing death certificates.[2] The Court previously found that a § 377.32 declaration is not required under Federal Rule of Civil Procedure 17(b). Since that ruling, as defendants point out, the Ninth Circuit has suggested that the § 377.32 formalities do apply in cases governed by Rule 17(b). *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1093-94 n.2 (9th Cir. 2006). *Tatum* does not alter the Court's alternative finding, however, that

> Regardless of whether § 377.32 applies, the Court finds that the declarations plaintiffs have submitted are sufficient. Defendants' primary challenge to the declarations is based upon plaintiffs' failure to attach death certificates, as required by § 377.32(c). Plaintiffs' conduct, however, is explained by the fact that death certificates are rarely issued in Nigeria when a person dies in a rural area. *See* Sondheimer Decl., Exh. 10 ("If a person dies in a hospital, definitely there will be a death certificate. Outside the hospital it's very rare. Someone dying at home, for example, in the rural areas, hardly that."). Although defendants argue that the death certificate requirement should be strictly enforced, the Court cannot agree that strict enforcement is appropriate in this case. In essence, defendants would have the Court decide now that the decedents at issue did not actually die, *see* Def. Br. at 17, even when this is a disputed issue of material fact. Plaintiffs have submitted evidence sufficient to create an issue of fact regarding whether the decedents were killed in the attacks. The Court finds that sufficient.

---

[2]Section 377.32 requires, among other things, a declaration stating:

(1) The decedent's name.

(2) The date and place of the decedent's death.

(3) "No proceeding is now pending in California for administration of the decedent's estate."

. . .

(6) "No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding."

Cal. Code Civ. P. § 377.32(a).

**United States District Court**
For the Northern District of California

Order 1204 at 21 n. 19.[3]

The Court therefore DENIES defendants' motion to dismiss the survival claims of the spouses and children.

**B.     The Irowarinuns**

Defendants next argue that the claims of the Irowarinuns are governed by the Death on the High Seas Act ("DOHSA"), and that under DOHSA, only a personal representative may bring a survival action. The Irowarinuns are not personal representatives. The Irowarinuns bring claims on behalf of Arolika Irowarinun, who was killed on the CBL-101 barge. Defendants argue that although Nigerian law provides the substantive law for their wrongful death claim, DOHSA provides the procedural law. The Court is unconvinced. Defendants cite no case law that directly supports their argument. The only directly relevant authority cited by the parties is the Restatement (Second) of Conflict of Laws, Section 179, which is entitled "Actions for death: Person to bring suit," and states: "A person, other than a personal representative, designated in the wrongful death statute of the state selected by application of the rule of § 175 as the one to sue upon the claim, may sue thereon in any state." The Restatement thus supports determining who may sue based on the laws of the state supplying the substantive law. Applying the principles outlined in Section 175, this Court has already determined that Nigerian law supplies the substantive law for plaintiffs' wrongful death claims. The Court therefore finds that DOHSA's personal representative rule does not apply to this case, and the Irowarinuns are proper plaintiffs. The Court therefore DENIES defendants' motion to dismiss the claims of the Irowarinun plaintiffs.

---

[3]Moreover, defendants described and cited *Tatum*, for the first time, in their Reply brief. Though the Court has granted plaintiffs the opportunity to respond via surreply to this and other late-raised arguments, the Court looks with strong disfavor on legal arguments and facts raised for the first time in reply.

Subsequent to the hearing on this motion, defendants submitted a letter to the Court describing three recent unpublished district court cases – *Stephens v. Stanislaus County Sheriff*, 2007 WL 963277 (E.D. Cal. Mar. 29, 2007); *Sutton v. Sokotowski*, 2007 WL 1113950 (N.D. Cal. Apr. 13, 2007); and *Arias v. Mercy Hospital*, 2007 WL 1574941 (E.D. Cal. May 30, 2007) – that also address section 377.32. As with *Tatum*, none of these cases compel the Court to alter its previous findings.

### C. Claims of the newly identified real parties

In Order 1204, the Court allowed plaintiffs to "remedy their defective standing and capacity by amending their complaint to name the real parties in interest," with respect to the survival and wrongful death actions. Order 1204 at 22:21-22. Defendants now complain that it is not clear from the face of the EAC which claims the newly identified real parties in interest assert. It appears, according to defendants, that the newly identified plaintiffs may be attempting to assert claims other than the survival and wrongful death claims. In an attempt to clarify, plaintiffs state in opposition that they "are happy to clear up any confusion: the newly-identified real parties are not asserting personal claims other than those arising directly out of the death of the decedents, such as wrongful death and loss of consortium." Opp. at 8:13-15. As defendants correctly suggest, however, nothing in the Court's prior orders permitted plaintiffs to name new parties to the loss of consortium claims. Plaintiffs argue in a footnote that they should be allowed to do so because "[l]oss of consortium claims are similar" to wrongful death actions. Regardless of whether this is true, the Court did not grant plaintiffs permission to name additional plaintiffs to the loss of consortium claim. The Court therefore DISMISSES all claims of the newly-identified real parties in interest, other than wrongful death or survival claims.

## II. Civil conspiracy claim

The parties next dispute whether it is appropriate to state a separate claim for "civil conspiracy" under California law (claim 16). Under California law, "a civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed. The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006). Thus as long as plaintiffs' 16th claim, for "civil conspiracy," is based on "an independent civil wrong," plaintiffs have stated a valid cause of action. It appears from the face of the EAC that plaintiffs' civil conspiracy claim is based on several independent civil wrongs that are actionable under California law. *See* EAC ¶¶ 188-194. The Court therefore DENIES defendants' motion to dismiss plaintiffs' "civil conspiracy" claim.

**III.    Plaintiffs' land-based (Opia and Ikenyan) survival IIED and NIED claims**

Defendants argue that under California law, claims for intentional and negligent infliction of emotional distress may not be brought as survival actions. In support of their argument, defendants point to California Code of Civil Procedure Section 377.34, which provides:

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement.

Cal. Code. Civ. P. § 377.34. The Court agrees with plaintiffs that, while Section 377.34 bars recovery of damages for emotional distress, it does not bar recovery of damages for economic loss, and it explicitly allows for recovery of "punitive or exemplary damages." Under state law, economic and punitive damages may be recovered in an IIED or NIED action. *See, e.g., Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 404 (Cal. Ct. App. 1970); *Agarwal v. Johnson*, 25 Cal. 3d 932, 952-53 (Cal. 1979). Thus section 377.34 does not categorically bar IIED and NIED actions.[4]

Therefore, to the extent that plaintiffs' IIED and NIED survival claims seek only to recover for economic losses and/or punitive damages, the Court DENIES defendants' motion to dismiss these claims.[5]

**IV.    Timeliness issues**

In the August 22, 2006 Order granting leave to file the EAC, the Court stated that it "will only allow plaintiffs to bring those claims against CUSA," a prior "Moe" defendant, "that were not time-

---

[4] A recent unpublished decision by the California Court of Appeal reached the same result, allowing amendment of a complaint to add a survival IIED claim, stating:

> Code of Civil Procedure section 377.34 provides that the plaintiff must be alive at the time of judgment in order to recover pain and suffering damages; this type of damages does not survive the decedent's death. However, this section does not preclude recovery of other types of damages based upon the decedent's pre-death injuries, such as punitive damages.

*Pagarigan v. Greater Valley Med. Grp., Inc.*, 2006 WL 2425298, at *11 (Cal. Ct. App. Aug. 23, 2006); *but see Moore v. County of Kern*, No. Civ. F 05-1115, 2006 WL 2190753, at *6 (E.D. Cal. Aug. 1, 2006) (reaching opposite conclusion).

[5] The Court expresses no view on whether plaintiffs will be able to prove economic losses on the part of any of the decedents.

barred as of June 28, 2002." The parties now dispute which claims were "time-barred as of June 28, 2002."

### A. Motion for reconsideration

The Court must first address plaintiffs' motion for reconsideration, which questions the Court's analysis of the rules governing timeliness of substitution of a named defendant for a "Moe" defendant. Under California law, a plaintiff has three years from "the time the complaint is filed" to serve a "Moe" or "Doe" defendant. Cal. Code Civ. P. § 583.210(a). As mentioned, the Court stated in the August 22, 2006 Order granting leave to file the EAC that it "will only allow plaintiffs to bring those claims against CUSA," a prior "Moe" defendant, "that were not time-barred as of June 28, 2002." Docket No. 1206 at 16:7-8. In an August 16, 2002 Order (Docket No. 204), the Court concluded that plaintiffs could not substitute new defendants on their state law claims after May 27, 2002; that is, three years after the filing of the original complaint. In Order 1206, the Court also concluded that new defendants could not be substituted on plaintiffs' RICO claims after the May 27, 2002 date. The combined effect of these rulings was to prevent plaintiffs from bringing RICO and state law tort claims against CUSA in the EAC. To avoid this effect, plaintiffs now seek reconsideration of the Court's determination in Order 204 that plaintiffs' state law claims were time-barred as of May 27, 2002. Specifically, plaintiffs contend that the Opia and Ikenyan plaintiffs' state law claims were not time-barred until September 23, 2002, three years after the filing of the First Amended Complaint ("FAC").

In the Northern District of California, no motion for reconsideration may be brought without leave of court. *See* Civil L.R. 7-9(a). Civil Local Rule 7-9(b) provides, in pertinent part:

> The moving party must specifically show:
>
> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which the reconsideration is sought. The party must also show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

9

*See* Civil L.R. 7-9(b).

Plaintiffs bring this motion under subsection (3), arguing that the Court manifestly failed to consider a dispositive legal argument presented by plaintiffs in relation with Order 204. Specifically, plaintiffs argue that the Court failed to consider the controlling rule under California law that the three-year period for substituting a "Moe" defendant commences, for any particular plaintiff, from the date that plaintiff is added to the action, if that plaintiff's claims are distinct from the claims brought in the original complaint. In other words, if a newly added plaintiff's claims do not "relate back" to the original complaint, then the three year period does not begin running until the plaintiff's claims are added. The California Supreme Court announced this rule in *Barrington v. A.H. Robins Co.*, 39 Cal. 3d 146 (Cal. 1985). The Court does not question the validity of this rule, nor does it here decide its applicability to this case. However, the Court finds that the *Barrington* rule was not "presented to the Court" prior to issuing Order 204, as required by Local Rule 7-9(b).

In the motion considered by the Court in Order 204, plaintiffs argued as follows with respect to this issue:

> 4.  The three-year period for service has not run with respect to the state common law claims of those plaintiffs who were not named plaintiffs in the original complaint.
>
> CTOP's §§ 474 and 583.210 argument is utterly inapplicable to most of the plaintiffs. The only named plaintiffs in the original complaint filed on May 27, 1999 were Larry Bowoto, Bola Oyinbo, Bassey Jeje and Sunday Johnbull Irowarinun, and the Estate of Arolika Irowarinun. None of the other plaintiffs, including those for whom Sunday Johnbull Irowarinun now serves as guardian *ad litem*, became named plaintiffs until September 23, 1999 at the earliest, when the First Amended Complaint was filed. Therefore, even if the four original plaintiffs could not avail themselves of the three year extension provided by sections 474 and 583.210, all of the other plaintiffs may name CROP as a "Moe" defendant under those provisions.

*See* Mot., Docket No. 189 (Wallach Decl., Ex. 1), at 17. Plaintiffs did not cite *Barrington* or any other authority, other than the California code sections. Furthermore, plaintiffs did not argue that the claims of the newly named plaintiffs did not relate back to the original complaint, as required by *Barrington*. The brevity, generality, and lack of legal authority evident in this passage suggest that plaintiffs were not even aware of the *Barrington* rule at the time they drafted it. *Compare id. with* Mot. for Reconsideration at 5-8. Plaintiffs virtually concede this fact in their motion, explaining that during the

course of preparing the EAC, "[a]fter further research, plaintiffs also concluded that the Court's original [Order 204] was at least partly erroneous, in that it concluded that the Opia and Ikenyan plaintiffs' lawsuit 'commenced' with the filing of the original complaint, not when their claims were first asserted in the FAC." Mot. at 4:2-5. This statement, and the fact that plaintiffs waited over four years to bring this motion for reconsideration, strongly support the Court's conclusion that plaintiffs were not aware of the *Barrington* rule prior to Order 204. If plaintiffs were not aware of the rule, they could not possibly have "presented" the rule to the Court, as required by Local Rule 7-9(b).

The rationale underlying Local Rule 7-9(b)(3) is clear: in our system it is the job of the advocates, not the court, to find and apply relevant law to the facts of a particular case. If an advocate fails to do so, the court cannot be faulted for reaching an erroneous conclusion, and the advocate should not be given a "second bite at the apple." Plaintiffs fail to meet the requirements of Local Rule 7-9(b), and the Court therefore DENIES their motion for leave to file a motion for reconsideration. Accordingly, as the Court ruled in Order 1206, plaintiffs are precluded from bringing claims that were time-barred as of June 28, 2002 against CUSA in the EAC. This includes the plaintiffs' state law survival claims, and the wrongful death claims (with the exception of the barge-based Parabe claims, and the Opia and Ikenyan minor plaintiffs, discussed below).

### B. Statute of limitations for the barge-based Parabe claims

Plaintiffs contend that the barge-based Parabe claims are governed by Nigerian law, under which the statute of limitations is six years. Under a six year statute of limitations, the barge-based Parabe claims would have been timely as of June 28, 2002, as required by Order 1206. Defendants contend that the Uniform Statute of Limitations for Maritime Torts applies to the barge-based Parabe claims, and provides a three year limitations period.

The *Erie* doctrine requires federal courts, in diversity actions and when deciding supplemental state law claims in federal questions cases, to apply the procedural law of the forum. *See* Schwarzer, et al., Federal Civil Procedure Before Trial 1:42 (The Rutter Group 2006) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); 28 U.S.C. § 1652.); *see also Bournias v. Atl. Mar. Co.*, 220 F.2d 152, 154 (2d Cir. 1955) ("In actions where the rights of the parties are grounded upon the law of jurisdictions

11

other than the forum, it is a well-settled conflict-of-laws rule that the forum will apply the foreign substantive law, but will follow its own rules of procedure."). This principle applies in admiralty cases as well, where the court is applying the substantive law of a foreign nation. *See Black Diamond Steamship Corp. v. Robert Stewart & Sons, Ltd.*, 336 U.S. 386 (1949) (in an admiralty law case, citing "the settled principle that, in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the law of the place where the tort occurred," and "the equally well settled principle that the forum is not governed by foreign rules of procedure." (citing cases)); *see also Bournias*, 220 F.2d at 154; *Garcia v. M/V Kubbar*, 4 F. Supp. 2d 99, 103 (N.D.N.Y. 1998) (In a maritime case, "[s]ubstantive law, unlike procedural law, must be applied according to choice-of-law principles. [citation] These principles require a court to apply the substantive law of a foreign forum where that foreign jurisdiction has the greatest interests in the litigation. [citation]").

Defendants here contend that "[u]nder general maritime law, statutes of limitations are 'generally classified as procedural.'" MTD at 13:13-14. In support of this proposition, they cite American Jurisprudence on Admiralty, 2 Am. Jur. 2d Admiralty § 104. American Jurisprudence, in turn, relies solely on one case, *Bournias v. Atl. Mar. Co., Ltd.*, 220 F.2d 152 (2d Cir. 1955), for this proposition. Since 1955, the time of the *Bournias* decision, courts have generally moved away from considering statutes of limitations to be procedural. The comments to the Restatement (Second) of Conflicts of Laws, section 149 (1989), describe this shift as follows:

> e. Rationale. At the time of the appearance of this Restatement in 1971, the courts usually characterized statutes of limitations as procedural. Accordingly, a claim would not be maintained if it was barred by the forum's statute of limitations, . . . .
>
> Many subsequent cases have taken a different view. They no longer characterize the issue of limitations as ipso facto procedural and hence governed by the law of the forum. Instead, the courts select the state whose law will be applied to the issue of limitations by a process essentially similar to that used in the case of other issues of choice of law. These cases represent the emerging trend. They stand for the proposition that a claim will not be maintained if it is barred by the statute of limitations of the state which, with respect to the issue of limitations, is the state of most significant relationship to the occurrence and the parties under the principles stated in § 6.

*See also Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482 (9th Cir. 1987) (applying the choice-of-law test used for conflicting substantive laws to conflicting statutes of limitations). Also since the time

12

of *Bournais*, Congress has established a uniform federal statute of limitations for maritime torts. *See* Pub. L. 96-382 (1980). Courts, including the Ninth Circuit, have uniformly held that this federal maritime statute of limitations is part of "substantive maritime law." *See Alderman v. Pacific Northern Victor, Inc.*, 95 F.3d 1061, 1065-66 (11th Cir. 1996) ("With admiralty jurisdiction comes the application of substantive admiralty law. Therefore, this is a maritime tort, and the cause of action is time barred under the applicable three year statute of limitations.") (quoting case); *Mendez v. Ishikawajima-Harima Heavy Industries Co.*, 52 F.3d 799, 801 (9th Cir. 1995) ("Mendez's claim is clearly for a maritime tort. Although she brought suit in diversity, her claim is governed by substantive maritime law. Accordingly, the district court . . . should have applied the admiralty three year statute of limitations for maritime torts."); *Mink v. Genmar Industries, Inc.*, 29 F.3d 1543, 1547 (11th Cir. 1994) ("[S]ubstantive admiralty law applies. [citations] Accordingly, the three-year statute of limitations for maritime torts, prescribed in 46 U.S.C. app. § 763a, applies"); *Butler v. American Trawler Co.*, 707 F. Supp. 29, 35 (D. Maine 1989) ("The Court finds that the statute of limitations for maritime torts under 46 U.S.C. § 763a is substantive in nature"). These cases directly conflict with *Bournais*-era maritime cases, in which courts applied the statutes of limitations of the forum state. *See, e.g., Redman v. United States*, 176 F.2d 713, 715 (2d Cir. 1949) (applying New York statute of limitations to a maritime tort action); *LeGate v. The Panamolga*, 221 F.2d 689, 690 (2d Cir. 1955) (applying New York statute of limitations to a maritime tort).

Unlike the instant case, all of the cases discussed above were diversity cases involving torts occurring in the waters of the United States. Nonetheless, the modern, overwhelming shift towards treating statutes of limitations in the maritime tort context as substantive, rather than procedural, compels this Court to do the same. In Order 1204, the Court determined that the torts occurring on the Parabe barge constituted maritime torts subject to the Court's admiralty jurisdiction, and that Nigerian substantive law applies to those torts. *See* Order 1204 at 5-6. Accordingly, the applicable Nigerian statute of limitations applies to the torts occurring on the Parabe barge. The applicable Nigerian statute of limitations is provided by the Ondo State Limitations Law, which states that "actions to recover any sum recoverable by virtue of any enactment" "shall not be brought after the expiration of six years from the date on which the cause of action accrued . . . ." Simons Decl., Ex. 10, Cap. 61 § 4(1). Accordingly,

13

the Court DENIES defendants' motion to dismiss Claims 11-17 of the Parabe plaintiffs.

### C.     Statute of limitations for the Opia and Ikenyan children

The land-based state law claims in this case are governed by California law. Plaintiffs argue that under California law, the statutes of limitations for the claims of the minor plaintiffs are tolled until they are 18, and therefore the minor plaintiffs' survival claims were timely as of June 28, 2002. Defendants counter that the California minor tolling statute does not apply to survival actions.

The minority tolling provision, Section 352 of the California Civil Procedure Code, provides, in pertinent part:

> (a) If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action.

The survival action limitations provision, Section 366.1 of the Code (chapter 6), provides:

> If a person entitled to bring an action dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced before the expiration of the later of the following times:
>
> (a) Six months after the person's death.
>
> (b) The limitations period that would have been applicable if the person had not died.

The parties dispute whether Section 352 tolls the limitations described in Section 366.1. No court has addressed this issue.

For purposes of Section 352, the children are "entitled to bring an action" on behalf of the decedents, pursuant to California and Nigerian law. *See supra* Section I(A). The principal dispute between the parties is whether the actions being brought by the children are "mentioned in Chapter 3 (commencing with Section 335)." Plaintiffs contend that the children are bringing personal injury actions (on behalf of decedents), which are "mentioned" in Chapter 3 of the Code. *See, e.g.*, former Cal. Code Civ. P. § 340.3 ("mentioning" "assault, battery, or injury to, or . . . death of, and individual caused by the wrongful act or neglect of another."). Defendants counter that the children are bringing survival actions, which are nowhere mentioned in Chapter 3. In response, plaintiffs argue that survival actions are not separate causes of action, but instead are simply a mechanism to "prevent the abatement of the

14

cause of action of the injured person, and provide for its enforcement by" the successor in interest, in this case the children. *Grant v. McAuliffe*, 41 Cal. 2d 859, 864 (Cal. 1953).

Absent any contrary controlling authority, and in light of "the strong public policy in California for preserving causes of actions throughout periods of a plaintiff's minority," *Jessica H. v. Allstate Ins. Co.*, 155 Cal. App. 3d 590, 592 (1984), the Court agrees with plaintiffs' interpretation of the statutes. The children are "entitled to bring an action, mentioned in Chapter 3." They are entitled by Nigerian and California law to bring tort actions on behalf of the decedents. Those tort actions are "mentioned" in Chapter 3.

Defendants argued at hearing that plaintiffs' interpretation would lead to unjust results: where there are multiple successors in interest, all but one can sleep on his or her rights as long as that one is a minor successor whose claim is being tolled. The Court agrees that the legislature likely did not intend such a result. It would be equally unjust, however, to prevent tolling of the limitations period where the only successors in interest are minors at the time of death. The Court will therefore defer to California's public policy in favor of minority tolling, and find that the children's state law survival claims were not time-barred as of June 28, 2002.

## V. Common law tort claims by Ola Oyinbo, Smart Iteimor, Benson Edekou, Anthony Lawuru and Henry Pabulogda against all defendants

Defendants next seek to dismiss the personal common law tort claims of five plaintiffs, Ola Oyinbo, Smart Iteimor, Benson Edekou, Anthony Lawuru and Henry Pabulogda, who are, and always have been, described as administrators of five decedents.[6] Plaintiffs filed the original complaint in this case on May 27, 1999, as a class action with named plaintiffs Larry Bowoto, Bola Oyinbo, Bassey Jeje and Sunday Johnbull Irowarinun. Plaintiffs filed the First Amended Complaint ("FAC") on September 23, 1999. The FAC dropped the class action allegations, and added as plaintiffs the "administrators of the estates" of Shadrack, Timi Okoru, Kekedu Lawruru and Bright Pabulogba; the FAC did not name the administrators.

---

[6]In their Reply, defendants also seek to add John Ikenyan to this list. *See* Reply 13:6-8. Because defendants did not raise this argument with respect to John Ikenyan until the Reply, the Court will not consider it.

15

Plaintiffs sought leave to file the Third Amended Complaint ("TAC") on February 15, 2000. The proposed TAC named Benson Edekou as the administrator of the estate of Timi Okoru; Anthony Lawruru as the administrator of the estate of Kekedu Lawruru; Menekiei Job (aka Smart Iteimor) as the administrator of the estate of Shadrack Oloko; and Henry Pabulogba as the administrator of the estate of Bright Pabulogba. *See* Docket No. 62, Ex. A. The caption of the proposed TAC stated that the named administrators brought their claims "individually." *Id.* The TAC was filed on July 11, 2000, and did not include Menekiei Job or Henry Pabulogba. The omission of Job and Pabulogba was, according to plaintiffs, inadvertent. Menekiei Job and Henry Pabulogba were ultimately reinserted in the Fourth Amended Complaint ("Fourth AC"), which plaintiffs filed on August 30, 2002. Also in the Fourth AC, plaintiffs substituted Bola Oyinbo's wife, Ola Oyinbo, as a plaintiff, because Bola Oyinbo had passed away, and Ola represented his estate.

Defendants now argue that, "[t]o the extent that Ola Oyinbo, Smart Iteimor, Henry Pabulogba, Anthony Lawuru and Benson Edekou assert any personal common law torts (Claims 11-17) rather than survival actions, these claims are time-barred." Mot. at 19:5-7. The parties appear to agree that California's one year statute of limitations applies to the land-based tort claims of the Opia and Ikenyan adults, including the individuals at issue here. The parties also appear to agree that the Opia and Ikenyan common law tort claims accrued on January 4, 1999, the day of the attacks. Defendants argue that because these plaintiffs were not named in the complaints, and were not described as bringing claims on an "individual" basis, until after January 4, 2000, their individual tort claims should be dismissed. Plaintiffs counter that the unnamed "administrators" listed in the FAC stated claims for personal torts. Therefore, the claims of these plaintiffs, who were substituted in for the unnamed administrators in subsequent complaints, related back to the FAC.[7]

The Court is unconvinced by plaintiffs' theory. The FAC did not adequately state individual tort

---

[7] Plaintiffs concede that Ola Oyinbo is not asserting any personal claims. Oppo. at 19 n.14. Plaintiffs also argue that defendants should have brought this motion long ago, as it attacks the sufficiency of pleadings filed more than four years ago. The Court agrees that addressing pleadings first filed so long ago creates some frustrating difficulties, and feels rather retrogressive considering that this case has moved far beyond the discovery stage and well into the summary judgment stage. However, defendants are fully within their rights to bring a 12(b)(6) motion attacking the pleadings, even at this late stage, since the EAC was filed in September, 2006.

claims for the unnamed administrators. The FAC described 22 plaintiffs. The FAC describes most of these plaintiffs as "bring[ing] this action individually." *See* Simmons Decl., Ex. 2 ¶¶ 11-24. The FAC describes five of the plaintiffs as follows: "The Administrator of the estates of [decedent] is a resident and citizen of Nigeria. [Decedent], now deceased, was a resident and citizen of Nigeria." *See id.* ¶¶ 25-29. The fact that the FAC explicitly described most of the plaintiffs as "bring[ing] this action individually," but did not do so for the five unnamed administrators, strongly suggests that plaintiffs did not intend to indicate, and defendants were not put on notice, that the five administrators were alleging individual claims. The FAC therefore did not adequately state a claim for individual tort actions by the five administrators. The relation back doctrine is therefore of no use to plaintiffs.[8] The Court therefore GRANTS defendants' motion to dismiss any personal tort claims of Ola Oyinbo, Smart Iteimor, Henry Pabulogba, Anthony Lawuru and Benson Edekou, brought on their own behalf.

### VI. RICO Claims

In light of Order 1601 issued on March 14, 2007, granting defendants' motion for summary judgment on plaintiffs' RICO claims, defendants' motion to dismiss plaintiffs' RICO claims is denied as moot.

### VII. The Parabe plaintiffs' claims for IIED, NIED, civil conspiracy, and loss of consortium

The events on the Parabe barge are governed by Nigerian substantive law. In Order 1204, in the course of the choice-of-law and conflicts of law analysis, the Court determined that Nigerian law does not recognize causes of action for IIED, NIED, loss of consortium, or civil conspiracy. *See* Order 1204 at 12-13. Nonetheless, plaintiffs have asserted these claims in the EAC on behalf of the Parabe

---

[8] Furthermore, as to Anthony Lawuru, the EAC does not appear to state individual claims on his behalf. The EAC states, with respect to Anthony Lawuru: "Plaintiff Anthony Lawuru is a resident and citizen of Nigeria. He brings this action on behalf of his deceased brother Kekedu Lawuru, including as a successor in interest to Kekedu Lawuru, and as attorney-in-fact for Helen Lawuru, individually and as the mother of Ebi Lawuru, Francis Lawuru, and Peter Lawuru." EAC ¶ 39. Thus, in contrast to most of the other plaintiffs, including the other four at issue here, who the EAC describe as "bring[ing] this action individually . . . ," the EAC does not allege that Anthony Lawuru brings any individual claims on his own behalf. Plaintiffs thus fail to state individual claims on behalf of Anthony Lawuru in the EAC.

17

plaintiffs. Defendants therefore move to strike these claims.

In opposition to defendants' motion to strike, plaintiffs contend that the Court's conclusion in Order 1204 was merely *dicta*, and therefore is not the controlling law of the case. The Court disagrees. "A dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding – that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *Sarnoff v. Am. Home Prod. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986). The Court's conclusion regarding the existence of these claims under Nigerian law was not dicta; it was a critical step in making the choice of law determination. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (As the second step in the choice-of-law analysis, "if the laws do differ, the court must determine whether a 'true conflict' exists . . . ."). As they are well aware, if plaintiffs disagree with the Court's conclusion, the appropriate course is to file a motion for leave to file a motion for reconsideration. The Court therefore GRANTS defendants' motion to strike the IIED, NIED, loss of consortium, and civil conspiracy claims of the Parabe plaintiffs.

**VIII. Whether the Irowarinun minors are in fact minors**

In various pleadings prior to the EAC, plaintiffs alleged that six of the eleven children of decedent Arolika Irowarinun were 18 years of age or older. *See, e.g.*, SAC ¶¶ 15-24. In the EAC, plaintiffs no longer state the ages of the Irowarinun children, but they allege that all eleven are minors.[9] Plaintiffs did not seek leave to amend their complaint to alter the ages of the Irowarinun children. Defendants move to strike the new allegations.

The Court agrees with defendants that if plaintiffs wanted to amend their complaint to change the ages of the children, they should have sought leave of the Court to do so. *See* Fed. R. Civ. P. 15(a). Though the age of a plaintiff might sometimes be an insignificant detail, in this case whether a plaintiff is a minor bears on several important issues. This case is complicated enough without the parties cutting

---

[9]This issue is potentially important because plaintiffs allege that plaintiff Sunday Johnbull Irowarinun "brings this action as Guardian Ad Litem" for all 11 children. EAC ¶ 13. Under Federal Rule of Civil Procedure 17, a guardian ad litem is permitted only for infants and incompetents, as defined by the law of the individual's domicile. The parties appear to agree that for purposes of this dispute, under Nigerian law, 18 is the age of majority.

18

procedural corners. The Court therefore GRANTS defendants' motion to strike paragraphs 20, 22, 23, 24, 26, and 27 of the EAC. Should plaintiffs wish to seek leave to amend to state the proper ages of the Irowarinun children, they may do so.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiffs' motion for leave to file a motion for reconsideration (Docket No. 1446), and GRANTS IN PART defendants' motions to dismiss and strike. (Docket Nos. 1276 & 1272).

**IT IS SO ORDERED.**

Dated: August 13, 2007

SUSAN ILLSTON
United States District Judge