IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LARRY BOWOTO, et al.                    No. C 99-02506 SI

        Plaintiffs,

  v.

CHEVRONTEXACO CORP., et al.,

        Defendants.
_____/

**INSTRUCTIONS TO JURY**


**(DRAFT – 9/2/08)**

# GENERAL INSTRUCTIONS

**United States District Court**
For the Northern District of California

**Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Burden of Proof – Beyond a Reasonable Doubt**

On some claims in this case, a party has the burden of proving certain facts beyond a reasonable doubt.  Proof beyond a reasonable doubt is proof that leaves you firmly convinced that a party has proved its claim or defense.  It is not required that the party prove the claim or defense beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.  It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

I will instruct you later about which specific claims and defenses must be proved beyond a reasonable doubt.  If after a careful and impartial consideration of all the evidence relating to a claim or defense that is subject to this burden, you are not convinced beyond a reasonable doubt that the party with this burden has met it, it is your duty to find against the party on that claim or defense.  On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt of the party's claim or defense, it is your duty to find for the party on that claim or defense.

**United States District Court**
For the Northern District of California

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

> (1) the opportunity and ability of the witness to see or hear or know the things testified to;
>
> (2) the witness's memory;
>
> (3) the witness's manner while testifying;
>
> (4) the witness's interest in the outcome of the case and any bias or prejudice;
>
> (5) whether other evidence contradicted the witness's testimony;
>
> (6) the reasonableness of the witness's testimony in light of all the evidence; and
>
> (7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Charts and Summaries in Evidence**

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Fair Treatment**

All parties are equal before the law.  Corporations are entitled to the same fair and conscientious consideration by you as any party.  Citizens of another country are entitled to the same fair and conscientious consideration by you as any party.

**United States District Court**
For the Northern District of California

**Parties**

The parties to this case are the plaintiffs and the defendants.

The plaintiffs are:

> Larry Bowoto
>
> Bassey Jeje
>
> The family of Arolika Irowarinun, who is deceased.  The family includes Margaret Irowarinun, Roseline Irowarinun, and Mary Irowarinun, Bosuwo Sebi Irowarinun, Caleb Irowarinun, Orioye Laltu Irowarinun, Temilola Irowarinun, Adegorye Oloruntimjehum Irowarinun, Aminora James Irowarinun, Eniesoro Irowarinun, Gbenga Irowarinun, Ibimisan Irowarinun, Monotutegha Irowarinun, and Olamisbode Irowarinun; and
>
> The family of Bola Oyinbo, who is deceased.  The family include Ola Oyinbo, Bayo Oyinbo and Deji Oyinbo.

The defendants are:

> - Chevron Corporation
> - Chevron U.S.A. Inc. (CUSA); and
> - Chevron Investments Inc. (CII).

**No Claim Relating to the Environment**

To the extent that I have permitted any witnesses to speak about environmental matters in Nigeria, or obligations of oil companies operating in Nigeria, it is purely background information for you to place the events in context. Plaintiffs are not making any claim based on harm to the environment or damage to their communities. Plaintiffs are not seeking and you shall not award any damages of any kind to compensate for alleged environmental damages. .

**INSTRUCTIONS FOR ALIEN TORT STATUTE CLAIMS FOR TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT**

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**Alien Tort Statute**

Plaintiffs' claims for torture and for cruel, inhuman or degrading treatment are brought under a law known as the Alien Tort Statute, a U.S. law that governs the application of international law in the United States.

International law prohibits torture and prohibits cruel, inhuman or degrading treatment. Any person who is injured by any of these international law violations may sue in a United States court under the Alien Tort Statute.  This is true even if the international law violations occur in another country such as Nigeria.

The plaintiffs allege that the defendants violated their rights under the Alien Tort Statute to be free from torture and to be free from cruel, inhuman, or degrading treatment.  If you find that the plaintiffs have established that their rights protected by the Alien Tort Statute were violated, and if you find that the defendants are liable under any one of the theories of liability presented in this case, then the defendants are liable for the Alien Tort Statute violations.  If you find that plaintiffs' rights were not violated, or that defendants are not liable for any violation that may have occurred, then defendants are not liable.

**United States District Court**
For the Northern District of California

**Torture**

Plaintiffs contend that Bola Oyinbo, Larry Bowoto, and Bassey Jeje suffered torture in violation of international law, United States law, and Nigerian law. This claim must be proved separately as to each individual plaintiff. To establish this claim, plaintiffs must prove, as to each individual:

1.      That he was subjected to severe pain or suffering, whether physical or mental;

2.      That this pain or suffering was inflicted on him intentionally for the purpose of obtaining information or a confession; for punishment, intimidation, or coercion; or for any reason based on discrimination; and

3.      That this pain or suffering was inflicted on him by, or with the consent of, a public official or other person acting in an official capacity and while he was in the official's custody or under the official's control.

In this context, the Nigerian security forces are considered public officials.

Torture may include mental pain and suffering. In order to constitute torture, mental pain or suffering must be prolonged mental harm caused by or resulting from the intentional infliction or threatened infliction of severe physical pain or suffering, or the threat of imminent death.

Plaintiffs must prove torture as to each individual by a preponderance of the evidence.

If you find that one or more of these individuals suffered torture at the hands of the Nigerian security forces, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**United States District Court**

For the Northern District of California

### Cruel, Inhuman, or Degrading Treatment

Plaintiffs contend that Bola Oyinbo, Larry Bowoto, and Bassey Jeje suffered cruel, inhuman, and degrading treatment in violation of international law, United States law, and Nigerian law.  This claim must be proved separately as to each individual plaintiff.  To establish this claim, plaintiffs must prove, as to each individual:

    1.    That he was subjected to mental or physical suffering, anguish, humiliation, fear or debasement;

    2.    That this suffering, anguish, humiliation, fear or debasement was inflicted on him by, or with the consent of, a public official or other person acting in an official capacity;

    3.    That this suffering, anguish, humiliation, fear or debasement was either cruel, inhuman, or degrading.

In this context, the Nigerian security forces are considered public officials.

Cruel, inhuman or degrading treatment includes acts that fall short of torture.  Plaintiffs contend that the use of force by the Nigerian security forces against  was cruel or inhuman.  In order to be cruel or inhuman, these acts must meet the three numbered criteria listed above, and must also:

    (a)    cause serious mental or physical suffering or injury or constitute a serious attack on human dignity;

    (b)    be deliberate; and

    (c)    be objectively unreasonable under all of the circumstances.

Plaintiffs also contend that the conditions in which Bola Oyinbo and Larry Bowoto were detained, including the alleged denial of medical care to Larry Bowoto, were cruel, inhuman or degrading.  In order to show that these conditions were cruel, inhuman or degrading, plaintiffs must show that they meet the three numbered criteria listed above, and also that:

    (a)    Bola Oyinbo or Larry Bowoto faced a substantial risk of serious harm or a serious medical need; and

    (b)    the Nigerian security forces knew of this risk or this medical need and disregarded it.

You must consider the totality of the circumstances in determining whether any individual plaintiff was subjected to cruel or inhuman or degrading treatment which caused lasting psychological harm.  Whether treatment is cruel, inhuman, or degrading depends upon an

assessment of all the particularities of the evidence before you, including the specific conditions at issue, duration of the measures imposed, the objectives pursued by the perpetrators, and the physical or mental effects on the person(s) involved.

If you find that any of these individuals suffered cruel, inhuman, or degrading treatment at the hands of the Nigerian security forces, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

United States District Court

For the Northern District of California

**INSTRUCTIONS FOR CLAIMS OF ASSAULT AND BATTERY**

**United States District Court**
For the Northern District of California

**<u>Assault and Battery</u>**

Plaintiffs bear the burden of proving the elements of the following claims beyond a reasonable doubt:

> Arolika Irowarinun's and Larry Bowoto's claims of assault and battery.
>
> Bola Oyinbo's claims of assault and battery for any conduct that occurred before he was taken onto land.
>
> Bassey Jeje's claims of assault and battery for any conduct that occurred on the CBL-101 barge, as opposed to the Parabe platform.

Likewise, defendants bear the burden to prove beyond a reasonable doubt any affirmative defense they assert against these claims, if that affirmative defense requires defendants to establish the commission of a crime under Nigerian law..

**Assault – While in Custody of GSF**

This instruction applies to events relating to Arolika Irowarinum, Larry Bowoto and Bassa Jeje, and to Bola Oyinbo prior to being turned over to the custody of the police in Akure.

Plaintiffs claim that Nigerian Government Security Force personnel assaulted these individuals. To establish assault as to any individual, plaintiffs must prove all of the following as to such individual:

1.    That the Nigerian Government Security Force personnel acted, intending to cause harmful contact, or threatened to touch him in a harmful of offensive manner;

2.    That he reasonably believed that he was about to be touched in a harmful manner, or that the Nigerian Security Force personnel were about to carry out the threat;

3.    That he did not consent to the Nigerian government security force personnel's conduct; and

4.    That the Nigerian Government Security Force personnel's conduct was a substantial factor in causing him harm.

A touching is offensive if it offends a reasonable sense of personal dignity.

Words alone do not amount to an assault.

If you find that plaintiffs have proved that the Nigerian Security Force personnel assaulted any of these individuals as set out in this instruction, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in this case, as those theories will be explained later in these instructions.

**United States District Court**
For the Northern District of California

**Assault/Ayinbo - While in Custody of Akure Police**

This instruction applies to events relating to Bola Oyinbo while he was on land after being turned over to the custody of the police in Akure.

The Oyinbos claim that the Akure police personnel assaulted Bola Oyinbo. To establish assault, the Oyinbos must prove all of the following:

1. That the Akure police acted, intending to cause harmful contact, or threatened to touch Bola Oyinbo in a harmful or offensive manner;

2. That Bola Oyinbo reasonably believed that he was about to be touched in a harmful manner, or that the Akure police personnel were about to carry out the threat;

3. That Bola Oyinbo did not consent to the Akure police's conduct; and

4. That the Akure police's conduct was a substantial factor in causing Oyinbo's harm.

A touching is offensive if it offends a reasonable sense of personal dignity.

Words alone do not amount to an assault.

If you find that the Oyinbos have proved that the Akure police assaulted Bola Oyinbo on land as set out in this instruction, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in this case, as those theories will be explained later in these instructions.

**United States District Court**
For the Northern District of California

## Battery

All plaintiffs bring claims of battery, contending that the Nigerian security forces used unreasonable force in shooting, beating, or otherwise physically harming Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, and Bassey Jeje.  To establish this claim as to any such individual, plaintiffs must prove all of the following as to such individual:

1. That the Nigerian security forces intentionally touched him or caused him to be touched;

2. That the Nigerian security forces used unreasonable force against him;

3. That he did not consent to the use of that force;

4. That he was harmed; and

5. That the Nigerian security forces' use of unreasonable force was a substantial factor in causing harm to him.

The Nigerian security forces may use reasonable force to arrest or detain a person when they have reasonable cause to believe that that person has committed a crime.  Even if the Nigerian security force officers are mistaken, a person being arrested or detained has a duty not to use force to resist arrest unless the Nigerian security forces were using unreasonable force.  If the Nigerian security forces were using unreasonable force, then Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, and Bassey Jeje had a right to use force in self-defense.

In deciding whether the Nigerian security forces used unreasonable force, you must determine the amount of force that would have appeared reasonable to Nigerian security forces officers in their position under the same or similar circumstances.  You should consider, among other factors, the following:

(a) The seriousness of the crime at issue, if any;

(b) Whether Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje reasonably appeared to pose an immediate threat to the safety of any of the Nigerian security forces or others; and

(c) Whether such individual was actively resisting arrest or attempting to evade arrest.

In this context, "touch" includes to shoot, to beat, or to cause other physical contact.

16

If you find that the Nigerian security forces committed battery, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**Intent**

In determining whether the Nigerian security forces intended to commit assault or battery, you should presume that the Nigerian security forces intended to accomplish the natural and probable consequences of their actions.  In other words, the Nigerian security forces acted intentionally if they intended to assault or commit a battery against Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, or if they were substantially certain that such an assault or battery would result from their conduct.

In determining whether the Nigerian security forces were aware of the likely consequences of their actions, you should consider what reasonable people in the same situation would contemplate as the probable result of their acts.

# INSTRUCTIONS ON NEGLIGENCE CLAIMS

**Negligence of Nigerian security forces**

Plaintiffs claim that Arolika Irowarinun, Larry Bowoto, Bola Oyinbo, and Bassey Jeje were harmed by the negligence of the Nigerian security forces in their conduct during the Parabe incident. To establish this claim as to any of these individuals, plaintiffs must prove all of the following, as to such individual:

1.      That the Nigerian security forces were negligent;

2.      That the individual was harmed; and

3.      That the  negligence of the Nigerian security forces was a substantial factor in causing the individual's harm.

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.  A person can be negligent by acting or by failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.  You must decide how a reasonably careful person in the situation of the Nigerian security forces would have acted.

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.  Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.  A person's negligence may combine with another factor to cause harm.  If you find that the negligence of the Nigerian security forces was a substantial factor in causing the individual's harm, then the Nigerian security forces are responsible for the harm.

Plaintiffs must prove negligence by a preponderance of the evidence.  If you find that the Nigerian security forces are responsible for negligence, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**United States District Court**
For the Northern District of California

**Negligence of CNL in calling in/assisting Nigerian security forces**

Plaintiffs contend that Arolika Irowarinun, Larry Bowoto, Bola Oyinbo and Bassey Jeje were harmed by the negligence of CNL itself in its conduct during the Parabe incident, including calling in the Nigerian security forces during the Parabe incident, providing assistance to the Nigerian security forces during the Parabe incident and failing properly to train and supervise the Nigerian security forces.

To establish that CNL was negligent in its own conduct toward any individual during the Parabe incident, plaintiffs must prove all of the following, as to such individual:

1.      That CNL was negligent;

2.      That the individual was harmed; and

3.      That CNL's negligence was a substantial factor in causing the individual's harm.

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation. You must decide how a reasonably careful person in the situation of CNL would have acted.

Every person has a right to expect that every other person will use reasonable care and will not violate the law, unless he or she knows, or should know, that the other person will not use reasonable care or will violate the law.

A "substantial factor" in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct. A person's negligence may combine with another factor to cause harm.

Plaintiffs must prove negligence by a preponderance of the evidence. If you find that CNL is responsible for negligence, you will have to decide whether one or more of the defendants are

liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**Negligence – Negligent Hiring**

Ola Oyinbo, Bayo Oyinbo and Deji Oyinbo also claim that Bola Oyinbo was harmed by CNL's negligent hiring of the Nigerian Government Security Forces and the Akure Police for the activity that occurred in Akure. To establish this claim, the Oyinbos must prove all of the following:

1.  That the Nigerian Government Security Forces or the Akure Police were negligent;

2.  That CNL employed the individual members Nigerian Government Security Force or the Akure Police that were negligent;

3.  A reasonably careful person in CNL's situation would not have employed the individual members Nigerian Government Security Force or the Akure Police who were negligent;

4.  That Bola Oyinbo suffered economic damages as a result of the negligence; and

5.  That CNL's employment of the individual Nigerian Government Security Forces or the Akure police who were negligent was a substantial factor in causing Bola Oyinbo's harm.

If you find that the Oyinbos have proved that CNL's employment of the individual Nigerian Government Security Forces or the Akure Police was a substantial factor in causing Bola Oyinbo's economic damages, you will also have to determine whether defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

22

**United States District Court**

For the Northern District of California

**Negligence – Basic Standard of Care**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in the same situations as the persons alleged to have engaged in negligence.

**<u>Negligence Nigerian Law– Custom or Practice</u>**

You may consider customs or practices in the community in deciding whether a person acted reasonably.  Customs and practices do not necessarily determine what a reasonable person would have done in a similar situation.  They are only factors for you to consider.

Following a custom or practice does not excuse conduct that is unreasonable.  You should consider whether the custom or practice itself is reasonable.

**Partial Affirmative Defense to Negligence (Contributory Negligence)**

Defendants contend that any liability that they may have for CNL's negligence or the negligence of the Nigerian security forces should be reduced because Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, and Bassey Jeje were also negligent, and their negligence contributed to their harm.

To prove contributory negligence as to any of these individuals, defendants must prove both of the following by a preponderance of the evidence as to such individual:

     1.     That the individual was negligent; and

     2.     That his negligence was a substantial factor in causing his harm.

If defendants prove contributory negligence, then you should determine the percentage of responsibility for Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje.  I will use this percentage to reduce the damages that defendants are liable.

United States District Court
For the Northern District of California

**Negligence – Intoxication** <mark>(Wait for evidence at trial)</mark>

A person is not necessarily negligent just because he or she used alcohol or drugs.  However, people who drink alcohol or take drugs must act just as carefully as those who do not.

24

**INSTRUCTIONS FOR WRONGFUL DEATH CLAIMS**

## Nigerian Law – Wrongful Death Liability

The Irowarinun plaintiffs contend that defendant Chevron Corporation is liable for the wrongful death of Arolika Irowarinun.  To establish this claim, the Irowarinun plaintiffs must prove each of the following:

      1.      That Arolika Irowarinun died;

      2.      That Arolika Irowarinun's death was caused by a battery or negligent act by Chevron Nigeria Ltd. and/or the Nigerian Government Security Forces;

      3.      That the Irowarinun plaintiff suffered economic loss as a result of Arolika Irowarinun's death (i.e., was dependent on Arolika Irowarinun); and

      4.      That the Irowarinun plaintiff is a wife or child of Arolika Irowarinun.

If you find that the Irowarinun plaintiffs have proved that Chevron Nigeria Ltd. and/or the Nigerian Government Security Forces caused the wrongful death of Arolika Irowarinun, you will also have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in this case, as those theories will be explained later in these instructions.

## Nigerian Law –Wrongful Death – Contributory Negligence

As to the Irowarinuns' wrongful death claims based on negligence, defendants claim that Arolika Irowarinun's death was caused in whole or in part by his own negligence.  To succeed on this claim, defendants must prove both of the following:

      1.      That Arolika Irowarinun was negligent; and

      2.      That Arolika Irowarinun's negligence was a proximate cause of his death.

If defendants prove the above, the damages you find are reduced by your determination of the percentage of Arolika Irowarinun's responsibility.  I will calculate the actual reduction.

1  **INSTRUCTIONS FOR CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL**

2  **DISTRESS**

**United States District Court**
For the Northern District of California

**Intentional Infliction of Emotional Distress—Nigerian security forces**

Plaintiffs claim that the Nigerian security forces committed intentional infliction of emotional distress against Bola Oyinbo.  To establish this claim, plaintiffs must prove all of the following:

1.  That the Nigerian security forces' conduct was outrageous;

2.  That the Nigerian security forces either intended to cause Bola Oyinbo emotional distress or that the Nigerian security forces acted with reckless disregard of the probability that Bola Oyinbo would suffer emotional distress, knowing that they were present when the conduct occurred;

3.  That Bola Oyinbo suffered severe emotional distress; and

4.  That the Nigerian security forces' conduct was a substantial factor in causing Bola Oyinbo's severe emotional distress.

In this context, "outrageous conduct" means conduct so extreme that it goes beyond all possible bounds of decency.  Conduct is outrageous if a reasonable person would regard the conduct as intolerable in a civilized community.  Outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure.

In deciding whether the Nigerian security forces' conduct was outrageous, you may consider, among other factors, the following: whether the Nigerian security forces abused a position of authority or a relationship that gave them real or apparent power to affect Bola Oyinbo's interests; whether the Nigerian security forces knew that Bola Oyinbo was particularly vulnerable to emotional distress; and whether the Nigerian security forces knew that their conduct would likely result in harm due to mental distress.

The Nigerian security forces acted with reckless disregard in causing Bola Oyinbo emotional distress if:

1.  The Nigerian security forces knew that emotional distress would probably result from their conduct; or

2.  The Nigerian security forces gave little or no thought to the probable effects of their conduct.

Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.  "Severe emotional distress" is not mild or brief; it must be so

substantial or long lasting that no reasonable person in a civilized society should be expected to bear it.  Plaintiffs are not required to prove that Bola Oyinbo suffered physical injury to recover damages for severe emotional distress.

Plaintiffs must prove intentional infliction of emotional distress by a preponderance of the evidence.  If you find that the Nigerian security forces committed intentional infliction of emotional distress, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**United States District Court**
For the Northern District of California

**Intentional Infliction of Emotional Distress—CNL**

To establish their claim that CNL committed intentional infliction of emotional distress against Bola Oyinbo, plaintiffs must prove all of the following:

1.      That CNL's conduct was outrageous;

2.      That CNL either intended to cause Bola Oyinbo emotional distress or that CNL acted with reckless disregard of the probability that Bola Oyinbo would suffer emotional distress, knowing that they were present when the conduct occurred;

3.      That Bola Oyinbo suffered severe emotional distress; and

4.      That CNL's conduct was a substantial factor in causing Bola Oyinbo's severe emotional distress.

In this context, "outrageous conduct" means conduct so extreme that it goes beyond all possible bounds of decency.  Conduct is outrageous if a reasonable person would regard the conduct as intolerable in a civilized community.  Outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure.

CNL acted with reckless disregard in causing Bola Oyinbo emotional distress if:

1.      CNL knew that emotional distress would probably result from its conduct; or

2.      CNL gave little or no thought to the probable effects of its  conduct.

Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.  "Severe emotional distress" is not mild or brief; it must be so substantial or long lasting that no reasonable person in a civilized society should be expected to bear it.  Plaintiffs are not required to prove that Bola Oyinbo or Bassey Jeje suffered physical injury to recover damages for severe emotional distress.

Plaintiffs must prove intentional infliction of emotional distress by a preponderance of the evidence.  If you find that CNL committed intentional infliction of emotional distress, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**United States District Court**

For the Northern District of California

**California Law – Intentional Infliction of Emotional Distress – Privileged Conduct**

Defendants contend that they are not liable for Bola Oyinbo's harm, if any, because Chevron Nigeria Limited's conduct in contacting the Nigerian Government Security Forces was permissible.  To succeed, defendants must prove all of the following:

    1.      That Chevron Nigeria Ltd. was exercising its legal rights to protect its economic interests;

    2.      That Chevron Nigeria Ltd.'s conduct was lawful and consistent with community standards; and

    3.      That Chevron Nigeria Ltd. had a good faith belief that it had a legal right to engage in the conduct.

If you find all of the above, then defendants are not liable on this claim.

**INSTRUCTIONS FOR DEFENDANTS' LIABILITY FOR CNL'S CONDUCT**

**United States District Court**
For the Northern District of California

### Overview of Responsibility of Defendants for CNL

Plaintiffs contend that one or more defendants are liable for CNL's conduct under one or more of the following theories of liability: 1) CNL was an agent of one or more defendants, 2) one or more defendants ratified CNL's actions, 3) one or more defendants aided and abetted CNL's actions, or 4) one or more defendants conspired with CNL.

### Corporation is a person under law

Defendants are all corporations. Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is liable for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

### Direct Liability

I have already determined that defendants Chevron Corporation, Chevron Investments Inc. and Chevron U.S.A. Inc. are not directly liable for the injuries plaintiffs allege they suffered. You are being asked to determine if any of these defendants is indirectly, or vicariously, liable to any of the plaintiffs for the alleged wrongful acts of CNL and, through CNL, the Nigerian Government Security Forces and the Nigerian Akure police. I will give you instructions on how to determine whether indirect or vicarious liability exists.

### Corporate Parents and Subsidiaries

Plaintiffs do not contend that any of the defendants are liable for CNL's actions and liabilities simply because of their ownership relationship with CNL. The law allows corporations to organize for the purpose of isolating liability of related corporate entities, such as a parent and a subsidiary, or for other reasons. At the same time, however, one corporation may act as the agent of another corporation, or it may ratify that corporation's actions, or it may aid and abet that corporation, regardless of whether the corporations are a parent and a subsidiary, affiliated

companies, or completely separate entities.  An ownership relationship between two corporations

neither establishes nor precludes liability between them on the basis of agency, ratification, or

aiding and abetting.

**United States District Court**
For the Northern District of California

## Liability of Defendants For Acts of CNL—Agency

Plaintiffs contend that each defendant is liable for CNL's conduct because CNL was acting as the agent of each defendant. Defendants deny that CNL was their agent.

The law allows corporations to organize for the purpose of limiting the liability of related corporations. Despite the legal arrangements between related corporations, a subsidiary may under certain circumstances be considered an agent of its parent or another affiliated corporation; if so, the parent or affiliate may be held liable for the agent's acts based on the real relationship between the corporations.

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. One may be an agent without receiving compensation for services. Each defendant is sued as a principal, and plaintiffs contend that CNL was acting as the agent of one or more of the defendants.

In performing services for a parent or affiliate as an agent, the subsidiary must be carrying out the business of the parent or affiliate. An agency relationship may arise where the subsidiary is acting both for the benefit of its own business and that of its parent or affiliate, as where they have similar or overlapping kinds of business. No agency may be found where the subsidiary is acting solely to advance its own business and that business is entirely different from the business of the parent or affiliate.

To show that one or more of the defendants are liable for CNL's conduct based on agency, plaintiffs must prove:

    1.     That CNL acted as an agent of that defendant or defendants; and

    2.     That CNL was acting within the scope of its authority during the Parabe incident.

You should assess the relationship between CNL and the defendants as it relates to this case, rather than whether any sort of agency relationship generally existed between CNL and the defendants. The arrangement must be relevant to the plaintiff's claim of wrongdoing.

In considering whether CNL acted as the agent of one or more of the defendants, you should consider a variety of factors, including:

A.    Whether CNL was functioning as an incorporated arm of one or more defendants;

B.    Whether CNL was involved in activities that, but for CNL's presence in Nigeria, one or more of the defendants would have been forced to undertake themselves;

C.    The degree and content of communications between CNL and any of the defendants, particularly during the Parabe incident and other security incidents;

D.    The degree to which one or more of the defendants set or participated in setting policy, particularly security policy, for CNL;

E.    The nature and degree of overlap between the officers, directors and managers of the defendants and CNL. The fact that some directors and officers of the parent corporation also serve as directors of the subsidiary will not alone support a finding of agency.

F.    The extent to which CNL officers, managers and employees were selected, supervised or controlled by any of the defendants;

G.    The importance of the subsidiary to the defendants' overall operations, including the amount of revenue the subsidiary produces for defendants and the level of the defendants' involvement in the budget, financial affairs, and production activities of the subsidiary. The fact of a parent's ownership of the subsidiary alone will not support a finding of agency.

H.    Whether the parent exercised more than the usual degree of direction and control that a parent exercises over a subsidiary. The usual level of parental involvement includes the monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget, and articulation of general policies and procedures.

Conduct is within the scope of authority if:

a.    It is reasonably related to the kinds of tasks that the agent was employed to perform; or

b.    It is reasonably foreseeable in light of the principal's business or the agent's job responsibilities.

CNL's conduct need not be authorized by defendants to be within the scope of authority. An agent's unauthorized conduct may be within the scope of authority if the conduct was committed in the course of a series of acts authorized by the principal or the conduct arose from a risk inherent in or created by the enterprise. An agent's wrongful or criminal conduct may be within the scope of employment even if it violates a company policy or does not benefit the principal.

If CNL is the agent of one or more of the defendants, any act or omission of CNL within the scope of authority is considered the act or omission of such defendants.

You must separately consider whether CNL has an agency relationship with each of the defendants.

Each theory of liability is independent, such that if you reject agency for any one defendant, you must also consider whether any other theory of liability applies to that defendant.

**Liability of Defendants For Acts of CNL—Agency (Factors not considered or not dispositive)**

In considering whether CNL acted as the agent of one or more of the defendants, bear in mind that some acts should not be considered as evidence of agency.  These include the preparation and filing of audited consolidated financial statements or annual reports that include information about subsidiaries of Chevron Corp.; the adoption of internal accounting controls governing payments to foreign officials; and the issuance of collective media releases that include information about subsidiaries of Chevron Corp.

Other factors may be considered, but are not, in and of themselves, determinative of an agency relationship.  These factors include whether one or more defendants referred to CNL as a part, division, unit, or department of that defendant; and whether one or more defendants shared a corporate logo or brand with CNL.

**United States District Court**
For the Northern District of California

**<u>Liability of Defendants For Acts of CNL— Ratification</u>**

Plaintiffs contend that each defendant is liable for the acts of CNL because each defendant ratified or approved that conduct after it occurred. Defendants deny that they ratified CNL's conduct.

To show ratification, plaintiffs must prove:

 1. That one or more defendants knew or should have known of all material facts related to CNL's conduct, and

 2. That the defendant or defendants ratified, adopted, or approved of this conduct.

Ratification means to treat the act as if originally authorized. Defendants are liable for CNL's conduct if, after the fact, they ratified, adopted, or approved that conduct, even if it was originally unauthorized.

Approval or ratification can be shown through defendants' statements or it can be inferred from defendants' conduct that implies an intent to consent to or adopt the act. A variety of different types of conduct permit you to infer approval. Ratification of an unauthorized act may be demonstrated through knowing acceptance after the fact of CNL's actions. Defending CNL's actions or covering up its misdeeds may also constitute ratification. Failure to disavow CNL's acts may constitute ratification, even if the acts were not within the scope of the agency relationship. Ratification also exists if the defendants, after knowledge of or opportunity to learn of the misconduct, continued to use CNL's services. Failure to take adequate steps to investigate or remedy CNL's misconduct also constitutes ratification. In considering whether defendants ratified the acts of CNL, you may consider, among other things, whether defendants have made statements to the media that evidence ratification, including false or conflicting statements about CNL's involvement in the Parabe incident and false or conflicting statements about CNL's ownership of the boats and helicopters used to transport the Nigerian security forces.

A defendant's "knowing" ratification can be shown by circumstantial evidence including through evidence of the nature of the acts done, the relation of the parties, the interests of the alleged agent and ratifier, and other circumstances.

If you find that one defendant did not ratify CNL's conduct, you must still consider whether each of the other defendants ratified CNL's conduct.

Each theory of liability is independent, such that if you reject ratification for any defendant, you must also consider whether any other theory of liability applies to that defendant.

**United States District Court**
For the Northern District of California

1

**INSTRUCTIONS FOR CNL'S RESPONSIBILITY FOR GSF'S CONDUCT**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Overview of Responsibility of Defendants for CNL and the Nigerian security force**

If you find that the Nigerian security forces committed any wrong that harmed plaintiffs under any of the theories on which you were instructed (such as torture, cruel, inhuman, or degrading treatment, wrongful death, assault, battery, intentional infliction of emotional distress, or negligence), then you must determine whether defendants are also liable for that harm. Plaintiffs contend that defendants are liable for the conduct of the Nigerian security forces because defendants are liable for CNL's conduct, and because CNL is liable for the conduct of the Nigerian security forces.

Plaintiffs contend that CNL is liable for the conduct of the Nigerian security forces under one or more of the following theories of liability:

    1)      the Nigerian security forces were CNL's agents;

    2)      CNL ratified the conduct of the Nigerian security forces;

    3)      CNL aided and abetted the Nigerian security forces;

    4)      CNL conspired with the Nigerian security forces to attack the Parabe protestors;

    5)      CNL engaged in a joint venture with the Nigerian government, including the Nigerian security forces;

    6)      CNL engaged in a joint enterprise with the Nigerian security forces;

    7)      CNL instigated or induced the Nigerian security forces; or

    8)      CNL hired the Nigerian security forces to do work that involved a special risk of harm.

If you find for the plaintiffs on any one of these theories of liability, this is sufficient to find CNL liable for the conduct of the Nigerian security forces.

Each of these is a separate theory of liability. You only need to find in plaintiffs' favor on one such theory to hold CNL liable for the conduct of the Nigerian security forces. If you find against plaintiffs on any one such theory, such a finding does not affect any other theory. You must still individually consider plaintiffs' other theories of liability.

**United States District Court**
For the Northern District of California

**Responsibility of CNL for acts of Nigerian security forces—Agency**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because the Nigerian security forces were acting as CNL's agent during the Parabe incident.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether the Nigerian security forces were acting as CNL's agent.  Defendants deny that the Nigerian security forces were CNL's agent.

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services.  The other person is called a principal.  One may be an agent without receiving compensation for services.  Plaintiffs contend that CNL was the principal, and the Nigerian security forces were CNL's agent.

To show that CNL is responsible for the Nigerian security forces' conduct based on agency, plaintiffs must prove:

>    1.    That the Nigerian security forces were an agent of CNL; and
>
>    2.    That the Nigerian security forces were acting within the scope of their authority during the Parabe incident.

In considering whether the Nigerian security forces acted as the agent of CNL, you may consider a variety of factors, including whether CNL determined the work schedules or assignments of the Nigerian security forces; whether CNL had the authority to decide if, when, or how the Nigerian security forces would participate in security operations, including deciding whether or when the Nigerian security forces would respond to the Parabe platform; whether CNL had control over the manner in which the Nigerian security forces performed their duties in general or at Parabe; or whether CNL paid, fed, or housed the Nigerian security forces.

Conduct is within the scope of authority if:

>    a.    It is reasonably related to the kinds of tasks that the agent was employed to perform; or
>
>    b.    It is reasonably foreseeable in light of the principal's business or the agent's job responsibilities.

The Nigerian security forces' conduct need not be authorized by CNL to be within the scope of authority.  An agent's unauthorized conduct may be within the scope of authority if the conduct was committed in the course of a series of acts authorized by the principal or the conduct arose from a risk inherent in or created by the enterprise.  An agent or employee's wrongful or criminal conduct may be within the scope of employment even if it violates a company policy or does not benefit the principal.

If the Nigerian security forces are the agent of CNL, any act or omission of the Nigerian security forces within the scope of authority is considered the act or omission of CNL.

Each theory of liability is independent, such that if you reject agency, you must still consider whether any other theory of liability applies to CNL.

 **Responsibility of CNL for acts of Nigerian security forces—Special Risk of Harm**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because the Nigerian security forces were performing work for CNL that involved a special risk of harm.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether the Nigerian security forces were performing work for CNL that involved a special risk of harm.  Defendants deny that the Nigerian security forces were performing work for CNL that involved a special risk of harm.

If you find that the Nigerian security forces were performing work for CNL, but were not CNL's agent, then CNL is responsible for the conduct of the Nigerian security forces if they were performing work that involved a special risk of harm.  This is a separate theory of liability from agency, which also asks whether the security forces were performing services for CNL, but which does not require any special risk of harm.

A special risk of harm is a recognizable danger that arises out of the nature of the work or the place where it is done and requires specific safety measures appropriate to the danger. A special risk of harm may also arise out of a planned but unsafe method of doing the work. A special risk

of harm does not include a risk that is unusual, abnormal, or not related to the normal or expected risks associated with the work.

To establish this claim, plaintiffs must prove each of the following:

1. That the work done by the Nigerian security forces was likely to involve a special risk of harm to others;

2. That CNL knew or should have known that the work was likely to involve this risk;

3. That the Nigerian security forces failed to use reasonable care to take specific safety measures appropriate to the danger to avoid this risk; and

4. That the Nigerian security forces' failure to use reasonable care was a cause of harm to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje.

In deciding whether CNL should have known the risk, you should consider its knowledge and experience in the field of work to be done.

Each theory of liability is independent, such that if you reject responsibility for a special risk of harm, you must still consider whether any other theory of liability applies to CNL.

### Responsibility of CNL for acts of Nigerian security forces—Ratification

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because CNL ratified or approved that conduct after it occurred.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether CNL approved the Nigerian security forces' conduct.  Defendants deny that CNL ratified the Nigerian security forces' conduct.

To show that CNL is responsible for the Nigerian security forces' conduct on the basis of ratification, plaintiffs must prove:

1. That CNL knew or should have known of all material facts related to the Nigerian security forces' wrongful conduct, and

2. That CNL ratified, adopted, or approved of this conduct.

Ratification means to treat the act as if originally authorized.  CNL is responsible for the Nigerian security forces' conduct if, after the fact, CNL ratified, adopted, or approved that conduct, even if it was originally unauthorized.

Approval or ratification can be shown through CNL's statements or it can be inferred from defendants' conduct that implies an intent to consent to or adopt the act.  A variety of different types of conduct permit you to infer approval.  Ratification of an unauthorized act may be demonstrated through knowing acceptance after the fact of the Nigerian security forces' actions.  Defending the Nigerian security forces' actions or covering up their misdeeds may also constitute ratification.  Failure to disavow the Nigerian security forces' acts may constitute ratification, even if the acts were not within the scope of the agency relationship.  Ratification also exists if CNL, after knowledge of or opportunity to learn of the misconduct, continued to use the Nigerian security forces' services.  Failure to take adequate steps to investigate or remedy the Nigerian security forces' misconduct also constitutes ratification.

Each theory of liability is independent, such that if you reject ratification, you must still consider whether any other theory of liability applies to CNL.


**Responsibility of CNL for acts of Nigerian security forces—Joint Venture**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because CNL was engaged in a joint venture with the Nigerian government, including the Nigerian security forces.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether CNL was engaged in a joint venture with the Nigerian government, including the Nigerians security forces.  Defendants deny that CNL was engaged in a joint venture with the Nigerian government, including the Nigerian security forces.

A joint venture is an association of two or more persons, including corporations, to carry on a business as co-owners. The members of a joint venture are called joint venturers or partners.  An act or omission of a partner within the scope of the joint venture business is considered the act or

omission of all partners.  Therefore each of the members of a joint venture is liable for the wrongful conduct of another member acting within the scope of his or her authority.

To show that CNL is responsible for the Nigerian security forces' conduct on the basis of joint venture liability, plaintiffs must prove:

> 1.    That CNL was engaged in a joint venture with the Nigerian government, including the Nigerian security forces, and
>
> 2.    That the Nigerian security forces were acting within the scope of the joint venture business during the Parabe incident.

In considering whether CNL was engaged in a joint venture with the Nigerian government, you may consider, among other things, whether CNL or defendants made statements that CNL was a member of such a joint venture.

A joint venturer is acting within the scope of the joint venture business when doing anything which is either expressly or impliedly authorized by the joint venture or which is in furtherance of the joint venture business.

If you find that CNL and the Nigerian government were joint venturers and that the Nigerian soldiers CNL brought to Parabe were acting within the scope of the joint venture business, and if you find those soldiers committed wrongful acts against the plaintiffs, then you must find CNL responsible for those wrongful acts.

Each theory of liability is independent, such that if you reject joint venture, you must still consider whether any other theory of liability applies to CNL.


**Responsibility of CNL for acts of Nigerian security forces—Joint Enterprise**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because CNL was engaged in a joint enterprise with the Nigerian security forces.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether CNL was engaged in a joint enterprise with the Nigerian security forces.  Defendants deny that CNL was engaged in a joint enterprise with the Nigerian security forces.

United States District Court

For the Northern District of California

To show that CNL is responsible for the conduct of the Nigerian security forces on the basis of joint enterprise, plaintiffs must prove:

1.   That CNL was engaged in concerted action with the Nigerian security forces with a common end or joint purpose; and

2.   That the Nigerian security forces committed wrongful acts in the course of executing that common end or joint purpose.

The common end or joint purpose need not be wrongful or illegal.  A joint enterprise need not be a business venture.

Each theory of liability is independent, such that if you reject joint enterprise, you must still consider whether any other theory of liability applies to CNL.


**Responsibility of CNL for acts of Nigerian security forces—Instigation or Inducement**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because CNL instigated or induced the actions of the Nigerian security forces.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether CNL instigated or induced the wrongful actions of the Nigerian security forces. Defendants deny that CNL instigated or induced the wrongful actions of the Nigerian security forces.

To show that CNL is responsible for the conduct of the Nigerian security forces on the basis of instigation or inducement, plaintiffs must prove:

1.   That CNL instigated, induced, or invited the Nigerian security forces to commit wrongful acts;

2.   That it was foreseeable that these wrongful acts would cause harm to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje; and

3.   These wrongful acts caused harm to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje.

Each theory of liability is independent, such that if you reject instigation or inducement, you must still consider whether any other theory of liability applies to CNL.

United States District Court
For the Northern District of California

**PRIVILEGES, DUTIES AND DEFENSES**

**United States District Court**

For the Northern District of California

## General – Explanation for Subsequent Instructions

Defendants contend that Chevron Nigerian Ltd. had a duty to call law enforcement or the Nigerian Government Security Forces to seek assistance in ending what defendants contend to be an unlawful occupation of the barge, platform and tugboat.  I am providing you with the following instructions on United States and Nigerian law relating to such duties.

## Law Enforcement Reporting Privilege

When a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication cannot be the basis for imposing liability on the citizen.  For this rule to apply, defendants have the burden of showing that their report would trigger proceedings governed by adequate procedural safeguards.  If no such safeguards existed, the rule applies only if defendants prove that they made their report to the police in good faith and without malice.

## Duty to Report Crime

Citizens and residents of Nigeria have a legal duty to report crime to the Nigerian authorities, and to assist them in stopping and preventing crime and apprehending perpetrators.  If you find that Chevron Nigeria Ltd. reasonably believed that plaintiffs were committing any crime, then defendants cannot be liable merely for Chevron Nigeria Ltd.'s reporting such activity to the Nigerian authorities.

## Duty to Assist Police

Citizens have a duty to assist the police in maintaining the peace and suppressing criminal activity.

**Safe Working Environment**

An employer has a legal duty under Nigerian law to provide a safe work environment for workers and contractors while working at the direction of the employer.

**No Legal Duty Exists to Negotiate with Persons Who Have Seized a Facility and Held Hostages**

No one has a legal duty to negotiate with persons who have seized a facility and held hostages.

United States District Court

For the Northern District of California

**Explanation for Subsequent Instructions**   <mark>Pending consideration</mark>

My preceding instructions addressed the laws creating duties to call law enforcement or the Nigerian Government Security Forces.  Defendants contend that such duties existed because  the Ilaje who were on the Parabe platform, barge and tugboat were committing offenses under Nigerian, international and United States law or because Chevron Nigeria Ltd. had a reasonable belief that such offenses were occurring.  I am providing you with the following instructions on those laws so you may determine whether plaintiffs were committing offenses thereby triggering Chevron Nigeria Ltd.s' duty to call law enforcement or the Nigerian Government Security Forces.

Even if you determine that the Ilaje were not committing a criminal offense and that Chevron Nigeria Ltd. did not have a reasonable belief that such offenses were occurring, you still must determine whether the Nigerian Government Security Forces and/or CNL's conduct was reasonable under the circumstances.

**<u>Criminal Acts – Hostage Taking</u>**

Under United States law and international law, any person that seizes, detains or threatens to injure or detain persons in order to compel CNL, defendants, the Nigerian government, or anyone else, to do or abstain from doing any act as a condition for releasing the detained persons, is guilty of a felony.

**<u>Criminal Acts – Unlawful Seizure of Platform</u>**

Under Nigerian law, any person who does anything with intent to obstruct or prevent the production or distribution of petroleum products in any part of Nigeria which causes or contributes to any interruption in the production or distribution of petroleum products is guilty of a felony.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Criminal Acts – Unlawful Seizure of Ship**

If you find that plaintiffs seized or exercised control over a ship by force or threat of force, or any other form of intimidation, or if they performed any act of violence against a person on board a ship, or placed any object on board a ship that is likely to endanger its safe navigation, then they are guilty of a crime under United States law, international law and Nigerian law.

**Nigerian Law – Assault in Pursuance of Conspiracy**

Under Nigerian law, any person who assaults any person in pursuance of any unlawful conspiracy respecting any manufacture, trade, business, or occupation, or respecting any person or persons concerned or employed in any manufacture, trade, business, or occupation, or the wages of any such person or persons, is guilt of a felony punishable by three years' imprisonment.

 **Nigerian Law – Criminal Assault**

Under Nigerian law, any person who touches the person of another, either directly or indirectly, without his consent, or who by any bodily act or gesture attempts or threatens to apply force of any kind to the person of another without his consent, is guilty of a misdemeanor or felony.  Any person who assaults another person causing harm is guilty of a felony punishable by three years' imprisonment.

**Assaults on Persons Protecting Vessel in Distress**

Under Nigerian law, any person who unlawfully assaults and uses actual violence to a police officer or any other person which acting in the execution of his duty concerning the preservation of a vessel in distress is guilty of a felony, and is liable to imprisonment for seven years.

**United States District Court**
For the Northern District of California

**<u>Nigerian Law – Serious Assault</u>**

Under Nigerian law, any person who

    (1)    assaults another with intent to commit a felony, or with intent to resist or prevent the lawful arrest or detention of himself or another person; or

    (2)    assaults, resists, or willfully obstructs a police officer while acting in the execution of his duty, or a person acting in aid of the police officer while so acting;

    (3)    assaults any person on account of any act done by him in the execution of any duty imposed by law; or

    (4)    assaults any person in pursuance of any unlawful conspiracy respecting any manufacture, trade, business or occupation, or respecting any person or persons concerned or employed in any manufacture, trade, business or occupation, or the wages of any such person or persons,

is guilty of a felony, and is liable to imprisonment for three years.

**<u>Nigerian Law – Attempting to Injure  by Explosive Substances</u>**

Under Nigerian law, any person who unlawfully, and with intent to do any harm to another, puts any explosive substance in any place, is guilty of a felony punishable by fourteen years imprisonment.

**<u>Nigerian Law – Attempted Arson</u>**

Under Nigerian law, any person who attempts unlawfully to set fire to a building, structure or vessel is guilty of a felony punishable by fourteen years imprisonment.

**<u>Nigerian Law – Crime of Riot</u>**

Under Nigerian law, any person who takes part in a riot is guilty of a felony punishable by three years' imprisonment.

**<u>Nigerian Law – Riot Defined</u>**

When an unlawful assembly has begun to act in so tumultuous a manner as to disturb the peace, the assembly is called a riot, and the persons assembled are said to be riotously assembled.

53

**United States District Court**
For the Northern District of California

1

**<u>Nigerian Law – Interference with Oil Operations</u>**

2

Under Nigerian law, any person who interferes with or obstructs the holder of an oil exploration,

3

oil prospecting, or oil mining lease or license (or his servants or agents) in the exercise of any

4

rights, power or liberty conferred by the license or lease is guilty of an offense punishable by

5

imprisonment, a fine, or both.

6

7

**<u>Nigerian Law – Attempts to Commit Offenses</u>**

8

Under Nigerian law, any person who attempts to commit a misdemeanor or felony is guilty of a

9

misdemeanor or felony.

10

11

**<u>Nigerian Law – Definition of Attempt to Commit an Offense</u>**

12

Under Nigerian law, an attempt to commit an offense occurs when a person, intending to commit

13

an offense, begins to put his intention into execution by some overt act but does not fulfill his or

14

her intention to such an extent as to commit the offense.

15

16

**<u>Nigerian Law – Deprivation of Liberty</u>**

17

Under Nigerian law, any person who unlawfully confines or detains another in any place against

18

his will, or otherwise unlawfully deprives another of his personal liberty, is guilty of a

19

misdemeanor punishable by two years imprisonment.

20

21

**<u>Nigerian Law – Going Armed so as to Cause Fear</u>**

22

Under Nigerian law, any person who goes armed in public without lawful occasion in such a

23

manner as to cause terror to any person is guilty of a misdemeanor punishable by two years

24

imprisonment.

25

26

27

28

**Nigerian Law – Reckless and Negligent Acts**

Under Nigerian law, any person who in a manner so rash or negligent as to endanger human life or to be likely to cause harm to any other person does any act with fire or any combustible matter, or omits to take precautions against any probable danger from any fire or any combustible matter in his or her possession is guilty of a misdemeanor punishable by one year imprisonment.

**Nigerian Law – Unlawful Acts Regarding Property**

Under Nigerian law, an act which causes injury to the property of another, and which is done without his consent, is unlawful.

**Nigerian Law – Crime of Unlawful Assembly**

Under Nigerian law, any person who takes part in an unlawful assembly is guilty of a misdemeanor punishable by one year imprisonment.

**Nigerian Law – Unlawful Assembly Defined**

When three or more persons, with intent to carry out some common purpose, assemble in such a manner or being assembled, conduct themselves in such a manner as to cause persons, in the neighborhood to fear on reasonable grounds that the persons so assembled will tumultuously disturb the peace, or will by such assembly needlessly and without any reasonable occasion provoke other persons tumultuously to disturb the peace, they are unlawfully assembled.

**Nigerian Law – Conspiracy to Commit Offenses**

Under Nigerian law, any person who conspires with another to commit any misdemeanor or felony is guilty of a misdemeanor or felony.

**Nigerian Law – Accomplice Liability**

Under Nigerian law, when two or more persons form a common intention to prosecute an unlawful purpose in conjunction with one another, and in the prosecution of such purpose an

offense is committed of such a nature that its commission was a probable consequence of the prosecution of such purpose, each of them is deemed to have committed the offense.

**Nigerian Law – Procuring a Crime**

Under Nigerian law, any person who attempts to procure another to do an act or make an omission of such a nature that if he himself were to do the act or make the omission he would be guilty of an offense, is himself to be deemed guilty of attempting to commit such offense.

United States District Court

For the Northern District of California

**General – Explanation for Subsequent Instructions** (Pending consideration)

The Nigerian Government Security Forces have the right to use force under some circumstances, so long as the use of force was reasonably necessary and the amount of force used was reasonable and not excessive under the circumstances.  I am providing you the following instructions on Nigerian law so you may determine whether the use of force by the Nigerian Government Security Forces or military was reasonable and not excessive under the circumstances.

**Use of Force – Privilege**

The Nigerian Government Security Forces and Nigerian Police are legally entitled to use force as may be reasonably necessary to overcome any force used in resisting arrest, and cannot be found to have engaged in wrongful conduct for doing so.

**Nigerian Law – Use of Force to Preserve Order on Board a Vessel**

Under Nigerian law, the master of a vessel, or any person acting by his order, may justify the use of any such force against any person on board the vessel as is necessary for suppressing any mutiny or disorder on board the vessel whereby the safety of the vessel or of any person on the vessel, is likely to be endangered, or the master is threatened to be subjected to the commands of any other person.  It is lawful to kill any person who is guilty of or abets such mutiny or disorder if the safety of the vessel or any person on the vessel cannot otherwise be secured.

**Nigerian Law – Dispersion of Riot and Apprehension of Rioters**

Under Nigerian law, any police officer or member of the military in whose view a riot is being committed, or who believes that a riot is about to be committed by persons assembled within his view, may make or cause to be made a proclamation in such form as he or she thinks fit, commanding the rioters or assembled persons to disperse peaceably.  If, after a reasonable time

United States District Court

For the Northern District of California

after such proclamation, or if the making of such proclamation has been prevented by force, twelve or more persons continue riotously assembled together, any police officer or member of the military, or any person acting in aid of such person, may do all things necessary for dispersing the persons or apprehending any of them.  If any person resists dispersion or apprehension, the police officer, member of the military, or person acting in aid of such person, may use all such force as is reasonably necessary for overcoming such resistance, and shall not be liable in any criminal or civil proceeding for having, by the use of such force, caused harm or death to any person.

If a proclamation is made, commanding persons engaged in a riot or assembled with the purpose of committing a riot, to disperse, every person who, a reasonable time thereafter, continues to take part in the riot or assembly, is guilty of a felony punishable by five years' imprisonment.

### Nigerian Law – Resisting Public Officers

Under Nigerian law, any person who in any manner obstructs or resists any public officer while engaged in the discharge or attempted discharge of the duties of his or her office under any order, act, law, or statute, or obstructs or resists any person while engaged in the discharge or attempted discharge of any duty imposed on him by an order, act, law, or statute, is guilty of a misdemeanor punishable by two years imprisonment.

### Nigerian Law – Acts to Prevent Arrest

Under Nigerian law, any person who, with intent to prevent the lawful arrest or detention of any person, does any of the following, is guilty of a felony punishable by life imprisonment:

    (a)    unlawfully wounds or does any grievous harm to any person;

    (b)    unlawfully attempts to strike any person with any kind of object or weapon;

    (c)    puts any corrosive fluid or destructive or explosive substance in any place.

**United States District Court**
For the Northern District of California

**Criminality of Excessive Force/Right of Self Defense**

The Nigerian security forces are authorized to use reasonable force to enforce the law.  However, it is a crime for anyone authorized to use force to use excessive force.  Where an officer seeks to effectuate an arrest or detention and uses excessive force, the individual has a right of self-defense.

Force is not excessive if it is reasonably necessary under the circumstances to detain or make a lawful arrest. In deciding whether force is reasonably necessary or excessive, you should determine what force a reasonable law enforcement officer would have used under the same or similar circumstances. You should consider, among other factors, the following:

> (a)    The seriousness of the crime at issue;
>
> (b)    Whether the detainee or arrestee reasonably appeared to pose an immediate threat to the safety of the Nigerian Government Security Forces or police or others; and
>
> (c)    Whether the detainee or arrestee was actively resisting or attempting to avoid detention or arrest.

**Negligence – Nigerian Law - Duty to Trespassers**

The owner or occupant of a premises owes no duty to a trespasser other than to not injure a trespasser by a deliberate or reckless act.

**Negligence – Nigerian Law - Trespasser Defined**

A trespasser is a person who enters or remains upon the premises of another without permission or invitation either expressed or implied.

A person becomes a trespasser if he stays on a premises after being asked to leave or if he remains on the premises after the expiration of a reasonable time within which to accomplish the purpose for which he was invited or permitted to enter or remain.

**Negligence – Nigerian Law - Burden of Proof for Trespassers**

The person claiming to be an invitee has the burden to prove he is not a trespasser.

**Negligence – Reliance on Good Conduct of Others**

Every person has a right to expect that every other person will use reasonable care and will not violate the law, unless he knows, or should know, that the other person will not use reasonable care or will violate the law.

United States District Court

For the Northern District of California

1   **INSTRUCTIONS FOR COMPENSATORY DAMAGES**

**Compensatory Damages**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for any of the plaintiffs, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence, except that punitive damages for certain claims must be proved by clear and convincing evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Compensatory Damages for Torture and Cruel, Inhuman or Degrading Treatment (Individual Claims)**

If you find for Larry Bowoto or Bassey Jeje for torture or for cruel, inhuman or degrading treatment, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

In determining the measure of damages for the claims for torture and cruel, inhuman or degrading treatment for Larry Bowoto or Bassey Jeje, you should consider:

1.   The nature and extent of the injuries;

2.   The disability, disfigurement, and loss of enjoyment of life experienced and which with reasonable probability will be experienced in the future;

3.   The mental, physical, and emotional pain and suffering experienced and which with reasonable probability will be experienced in the future, including injury to feelings, humiliation, shame, degradation, loss of social position or injury to credit or to reputation;

4.   The reasonable value of necessary medical care, treatment, and services received to the present time;

5.   The reasonable value of necessary medical care, treatment, and services which with reasonable probability will be required in the future;

6.   The reasonable value of wages, earnings and earning capacity lost to the present time;

7.   The reasonable value of wages, earnings and earning capacity which with reasonable probability will be lost in the future;

8.   The reasonable value of necessary household help, services other than medical and expenses required to the present time;

9.   The reasonable value of necessary household help, services other than medical and expenses which with reasonable probability will be required in the future;

10.     The lesser of the following:

1.      the reasonable cost of necessary repairs to any property which was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired; or

2.      the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

11.     Such sum as will reasonably compensate for any loss of use of any damaged property during the time reasonably required for its repair or replacement;

12.     The reasonable value of any property that was lost or destroyed.

## Compensatory Damages for Torture and Cruel, Inhuman or Degrading Treatment (Survival Claims)

If you find for the Oyinbo family for torture or for cruel, inhuman or degrading treatment, you must determine their damages. The plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiffs for any injury you find was caused by the defendant.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

In determining the measure of damages for the claims for torture and cruel, inhuman or degrading treatment for the Oyinbo family, you should consider:

1.  The nature and extent of the injuries suffered by the deceased;

2.  The disability, disfigurement, and loss of enjoyment of life experienced during the period between injury and death;

3.  The mental, physical, and emotional pain and suffering experienced, including injury to feelings, humiliation, shame, degradation, loss of social position or injury to credit or to reputation, experienced during the period between injury and death;

4.  The reasonable value of necessary medical care, treatment, and services received during the period between injury and death;

5.  The reasonable value of wages, earnings and earning capacity lost during the period between injury and death;

6.  The reasonable value of necessary household help, services other than medical and expenses required during the period between injury and death.

7.   The lesser of the following:

    1.  the reasonable cost of necessary repairs to any property which was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired; or

    2.  the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

8.  Such sum as will reasonably compensate for any loss of use of any damaged property during the time reasonably required for its repair or replacement, during the period between injury and death;

9.    The reasonable value of any property that was lost or destroyed.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

 **Compensatory Damages for Assault, Battery, Negligence, and Intentional Infliction of Emotional Distress (Individual Claims)**

In determining the measure of damages for Larry Bowoto's and Bassey Jeje's claims for assault, battery, negligence and intentional infliction of emotional distress, you should consider:

1.   The nature and extent of the injuries;

2.   The disability, disfigurement, and loss of enjoyment of life experienced and which with reasonable probability will be experienced in the future;

3.   The mental, physical, and emotional pain and suffering experienced and which with reasonable probability will be experienced in the future;

4.   The reasonable value of necessary medical care, treatment, and services received to the present time;

5.   The reasonable value of necessary medical care, treatment, and services which with reasonable probability will be required in the future;

6.   The reasonable value of wages, earnings and earning capacity lost to the present time;

7.   The reasonable value of wages, earnings and earning capacity which with reasonable probability will be lost in the future;

8.   The reasonable value of necessary household help, services other than medical and expenses required to the present time;

9.   The reasonable value of necessary household help, services other than medical and expenses which with reasonable probability will be required in the future;

10.   The lesser of the following:

1.   the reasonable cost of necessary repairs to any property which was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired; or

2.   the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

11.   Such sum as will reasonably compensate for any loss of use of any damaged property during the time reasonably required for its repair or replacement;

12.   The reasonable value of any property which was lost or destroyed.

**Compensatory Damages for Assault, Battery and Negligence (Survival Claims Under Nigerian Law)**

In determining the measure of damages for the claims of assault, battery, and negligence made by the Irowarinun family and by the Oyinbo family for any injuries that Bola Oyinbo suffered before he was taken on land, you should consider:

1.   The nature and extent of the injuries;

2.   The reasonable value of wages, earnings and earning capacity lost during the period between injury and death;

3.   The mental, physical, and emotional pain and suffering experienced during the period between injury and death;

4.   The reasonable value of necessary medical care, treatment, and services received during the period between injury and death;

5.   The reasonable value of necessary household help, services other than medical and expenses required during the period between injury and death.

6.   The lesser of the following:

   1.   the reasonable cost of necessary repairs to any property which was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired; or

   2.   the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

7.   Such sum as will reasonably compensate for any loss of use of any damaged property during the time reasonably required for its repair or replacement, during the period between injury and death;

8.   The reasonable value of any property that was lost or destroyed.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

### California Law – Compensatory Damages

If you find that Bola Oyinbo's heirs have proved Bola Oyinbo's claims against any defendant for injuries incurred on land in Nigeria, then you must determine what damages he is entitled to as compensation, if any. The purpose of damages for these claims is to award to plaintiff that sum of money which will put him in the same position that he would have been in if he had not sustained the wrong for which he is being compensated. Bola Oyinbo may recover only economic damages. He may not recover for any pain and suffering that he may have incurred. Bola Oyinbo's heirs do not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of economic damages claimed by plaintiff:

1. Past medical expenses. To recover damages for past medical expenses, Oyinbo must prove the reasonable cost of reasonably necessary medical care that he received as a result of any injury he suffered on land for which you hold defendants liable and that caused him to incur the medical expenses.

2. Past lost earnings. To recover damages for past lost earnings, Oyinbo must prove the amount of income that he has lost to date as a result of any injuries that he incurred on land for which you hold defendants liable and that caused him to incur the lost earnings.

3. Property Damage. For any property damage proximately caused by the incident, the difference between the value of the property before the incident and its value immediately after the incident, as well as reasonable compensation for the loss of use of the property during the time reasonably required to repair or replace it.

**United States District Court**
For the Northern District of California

**Compensatory Damages for Wrongful Death**

If you decide that the Irowarinun family has proved their claim against any defendant for the wrongful death of Arolika Irowarinun, you must determine their damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the Irowarinun family for the death of Arolika Irowarinun.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

The Irowarinun family claims the following damages:

1.    The financial support that Arolika Irowarinun would have contributed to the family;

2.    The loss of gifts or benefits that the Irowarinun family would have expected to receive from Arolika Irowarinun;

3.    Funeral and burial expenses; and

4.    The reasonable value of household services that Arolika Irowarinun would have provided.

Your award of any future damages must be reduced to present cash value. In determining the financial support that Arolika Irowarinun would have provided to his children, you may consider the period in which those children were likely to be dependent on Arolika Irowarinun.

Roseline Irowarinun, Mary Irowarinun, and Margaret Irowarinun also claim the following damages:

1.    The loss of Arolika Irowarinun's love, companionship, comfort, care, assistance, protection, affection, society, moral support; and

2.    The loss of the enjoyment of sexual relations.

In calculating these damages, you must calculate the monetary value of these injuries; you should not consider grief, sorrow, or mental anguish.

Bosuwo Sebi Irowarinun, Caleb Irowarinun, Orioye Laltu Irowarinun, Temilola Irowarinun, Adegorye Oloruntimjehum Irowarinun, Aminora James Irowarinun, Eniesoro Irowarinun, Gbenga Irowarinun, Ibimisan Irowarinun, Monotutegha Irowarinun, and Olamisbode Irowarinun

also claim the following damages:

1.      The loss of Arolika Irowarinun's love, companionship, comfort, care, assistance, protection, affection, society, moral support; and

2.      The loss of Arolika Irowarinun's training and guidance.

In calculating these damages, you must calculate the monetary value of these injuries; you should not consider grief, sorrow, or mental anguish.


In determining the Irowarinun family's loss, do not consider:

1.      Arolika Irowarinun's pain and suffering; or

2.      The poverty or wealth of the Irowarinun family.

In computing these damages, consider the losses suffered by all plaintiffs in the Irowarinun family and return a verdict of a single amount for the Irowarinun family. I will divide the amount among the plaintiffs in the Irowarinun family.

United States District Court
For the Northern District of California

**Federal Claims – Mitigation**

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

    1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

    2.      the amount by which damages would have been mitigated.

**California Law – Mitigation**

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

    1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

    2.      the amount by which damages would have been mitigated.

**Nigerian Law – Mitigation**

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

    1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

    2.      the amount by which damages would have been mitigated.