

The Honorable Susan Illston
United States District Court
for the Northern District of California
450 Golden Gate Avenue, 19th Floor
San Francisco, CA 94102

October 23, 2008

RE:   Length of Trial in *Bowoto v. Chevron Corp.*, No. C 99-2506 SI
       Order requested by Monday, October 27th, 2008

Dear Judge Illston,

Plaintiffs would like to raise several issues regarding the time for trial in *Bowoto v. Chevron Corp.*, including the total length of the trial, the possibility that trial may need to be extended, the allocation of time, and measures that may be necessary to save time under the circumstances.  We respectfully request that the court reconsider its earlier decisions and either increase the length of the trial for both parites, adjust the allocation of time in a way that is more fair, reconsider motions *in limine* aimed at streamlining the trial, and consider other mechanisms to allow a more efficient focus on the disputed issues of fact before the jury.

  I.    **The total length of the trial is insufficient.**

Now that the Court has formally set trial for 85 hours of testimony, with 42.5 hours per side, plaintiffs object to this as insufficient for a case of this complexity; it is simply not enough time to put on the witnesses required to present plaintiffs' case.  Plaintiffs have identified 48 live witnesses to testify at trial—38 fact witnesses and ten experts.  *See* Corrected Joint Pretrial Conference Statement (Docket No. 1978) at 109–15, 122–30.  Even without accounting for the time necessary to swear in witnesses, let alone time for cross-examination of defendants' witnesses, the trial schedule allows less than one hour of direct testimony per live witness.  If plaintiffs reserve 14 hours— approximately 1/3 of their time—cross-examining defendants' witnesses and presenting rebuttal testimony, this leaves them with 28.5 hours for direct testimony, or less than 40 minutes per witness.  (A few of the witnesses identified may not actually testify live—for example, some were not able to travel from Nigeria—they will still likely be presented by deposition.)

Nor have plaintiffs been overinclusive with their identification of live witnesses.  Indeed, not even every plaintiff is testifying live; Bassey Jeje's case will be presented by deposition.  Nine plaintiffs who are children of decedent Arolika Irowarinun, all of whom would be entitled to testify about their loss of their father's services and guidance, will not be testifying.  Numerous critical third-party witnesses will be presented by deposition, including Arolika's brother Taiwo

U.S. Office
1612 K Street NW, Suite 401
Washington, DC 20006
Tel: (202) 466-5188
Fax: (202) 466-5189
email: infousa@earthrights.org

Southeast Asia Office
P.O. Box 123
Chiang Mai University
Chiang Mai 50202 Thailand
Tel/Fax: 66 1 531 1256
email: infoasia@earthrights.org

w w w . e a r t h r i g h t s . o r g

Irowarinun; Dr. Ajewole, the pathologist who examined Arolika's body; Eric Madl, one of the pilots who flew soldiers to Parabe; and many of defendants' staff and contractors in Nigeria. Indeed, there are 22 witnesses whose depositions have been designated by *both* plaintiffs and defendants, in addition to 15 witnesses designated only by defendants and 33 designated only by plaintiffs. While plaintiffs will certainly confine their presentation to the minimum necessary to prove their case, even if plaintiffs drop 45 witnesses completely their time to present their case will still be less than 30 minutes per witness. Many of these witnesses, such as Larry Bowoto himself, expert witnesses such as Michael Watts, and important Chevron witnesses such as CNL Chairman George Kirkland, will take much longer than that. Even for witnesses whose testimony is not central to the case, the briefest of examinations will take at least 10-15 minutes. Plaintiffs simply do not have sufficient time for a fair presentation of the evidence.

This is compounded by the fact that many of plaintiffs' live witnesses will be testifying in translation. Many of plaintiffs' live witnesses—including Larry Bowoto, Ola Oyinbo, Margaret Irowarinun, Mary Irowarinun, Roseline Irowarinun, Orioye Irowarinun, Eniesoro Irowarinun, Sunday Johnbull Irowarinun, Adebisi Atemise, Yemi Ifiriyele, and Nicholas Omomowo—do not speak sufficient English to testify without an interpreter. This interpretation will approximately double the length of their examinations, including such lengthy presentations as Mr. Bowoto's. These plaintiffs and witnesses have traveled from Nigeria to present their case and give their testimony, and they will be limited to only a small fraction of the relevant evidence.

Although the Court has "discretion to place reasonable limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence," the Ninth Circuit has noted that "[c]ourts have . . . disapproved of rigid hour limits on trials." *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450–51 (9th Cir. 1994) (internal quotation marks omitted). A limitation on trial time may be reasonable where it is based "on the parties' estimates of trial length." *Amarel v. Connell*, 102 F.3d 1494, 1513 (9th Cir. 1996); *see also Daly v. Far Eastern Shipping Co. PLC*, 238 F. Supp. 2d 1231, 1236 (W.D. Wash. 2004) (noting that the Ninth Circuit "has approved of time limits based upon parties' own estimates"). Here, plaintiffs originally estimated, at the November 30th, 2007, case management conference, that trial would take approximately six weeks. Plaintiffs were assuming five days of trial per week at approximately six hours of testimony per day, or a total of 180 hours of testimony—90 hours per side with an even split. This 30-day estimate was cut down to 17 days of testimony at five hours per day, such that plaintiffs have less than half their original estimated time to present their case.

Plaintiffs do not believe that, given the volume of relevant evidence in this case, the current time limits are reasonably necessary to prevent undue delay or waste of time, and the Court cannot yet have made any ruling regarding cumulative evidence. Plaintiffs believe that the effect of the Court's ruling will be to deprive them of a fair opportunity to present their case, and for that reason plaintiffs respectfully object to being limited to 42.5 hours of trial testimony. Plaintiffs request that the Court consider a time limit closer to plaintiffs' original estimate, and grant plaintiffs an additional 20 hours of testimony time.

**II.     The time for trial must be flexible and extended if necessary.**

Even if the Court sets an initial estimate of the trial time at 42.5 hours per side, this must be flexible rather than "rigid." *See id.*; *see also Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1509 (9th Cir. 1995) (noting that trial courts "must not adhere so rigidly to time limits as to sacrifice justice in the name of efficiency"); *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 473 (7th Cir. 1984) ("[W]e disapprove of the practice of placing rigid hour limits on a trial."). For example, in *Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001), the Ninth Circuit reviewed a trial in which the plaintiffs had originally requested 10–12 days for their case but were given only eight (while defendants were given six). The Court of Appeals found no abuse of discretion, however, because "[t]hese pretrial limits were adjusted during trial and [the plaintiffs] ultimately received a total of eleven days within which to present their case—an amount entirely consistent with [their] original request." *Id.* at 942.

If the Court retains the 42.5 hour time limitation, plaintiffs will attempt to confine their presentation to this period. Nonetheless, plaintiffs will also need to prove their case, and if the necessary witness testimony expands beyond the time limit, the Court needs to take a flexible approach to extending the time. Setting up a system in which the time limits are rigid would be an abuse of discretion.

**III.    Time should allocated according the parties' reasonable needs.**

The Court has allocated 42.5 hours of time evenly to both sides. Even in a case without an extensive translation burden on one party, however, courts have approved of unequal distribution of time, recognizing that the plaintiff has the burden of persuasion. *See, e.g.*, *Navellier*, 262 F.3d at 941 (noting that the district court had initially allotted eight days to the plaintiff and six to the defendant). Additional time for plaintiffs here is especially appropriate given the interpretation issues. Based on the witness lists in the pretrial conference statement, plaintiffs are calling eight more witnesses than defendants that require translation, and the only non-English-speaking witnesses being called by defendants are also being called by plaintiffs.

Given the number of claims at issue in this case, the number of elements that plaintiffs need to prove, and the amount of translation necessary, it is reasonable in this case to grant plaintiffs more time than defendants. Plaintiffs respectfully object to the even distribution of time and request that, if the total amount of time is set at 85 hours, plaintiffs be given 51 hours (60%), and defendants 34 (40%).

**IV.    Under the current time constraints, measures need to be taken to conserve trial time.**

If the Court overrules plaintiffs objections to the time limits and rejects plaintiffs' requests outlined above, plaintiffs respectfully submit that the following measures should be taken to allow plaintiffs to present their case in the time alloted:

### A.  Interpretation time should not be counted against the parties.

If the time distribution remains equal, then it would only be fair to proceed without counting the time taken to interpret questions and answers against the questioning party. Otherwise, the Court would essentially be penalizing non-English-speakers or those whose English is poor, by attaching a detriment to the choice to use an interpreter. This would be contrary to the spirit of the Court Interpreters Act, 28 U.S.C. § 1827, which generally provides for access to interpreters for those who need them. It would improperly discourage the use of interpreters if courts were to count interpretation time against a party in determining time used.

### B.  The Court should reconsider motions *in limine* that would narrow the scope of the trial.

The time limitations that the Court has imposed might be reasonable if the trial were to focus narrowly on a few essential issues—such as what Chevron knew when it decided to send in the Nigerian security forces, what happened when the victims were shot, Chevron's relationship with the Nigerian military, and the defendants' relationship with Chevron Nigeria. The Court generally denied the parties' motions *in limine* that sought to narrow the scope of the trial, however, such that issues such as any "good works" conducted by Chevron anywhere in the world, what happened days after the Parabe protest in events involving none of the plaintiffs, and even the purported meaning of Nigerian spiritual practices may be introduced at trial. In short, there is a fundamental mismatch between the approach of limiting the parties' time at trial and the approach of allowing in all evidence that may be even tangentially related to the events. Even if some of this evidence is ultimately excluded at trial, defense counsel can refer to all of it in their opening statement, leaving plaintiffs in the untenable position of either spending precious testimony time rebutting scandalous allegations of peripheral relevance or ignoring these allegations in order to focus on establishing the elements of their claims, and hoping the jury will notice that the defendants ultimately did not prove them.

For this reason, plaintiffs respectfully request that this Court revisit the motions *in limine* that seek to substantially narrow the issues before the jury, to allow the parties to reasonably present their case in the time given. These include especially plaintiffs' motions *in limine* No. 1 (concerning facts that Chevron Nigeria was not aware of when they called in the Nigerian military), No. 2 (concerning the events on the tug that happened after Arolika Irowarinun and Larry Bowoto were both shot, after Bassey Jeje was beaten, and after Bola Oyinbo was already detained), No. 6 (concerning other acts of violence in the Niger Delta that do not involve the plaintiffs and have nothing to do with the Parabe incident), and No. 9 (concerning Chevron's purported benevolent activities in Nigeria, especially those that occurred after the Parabe incident or were not directed at the Ilaje).

### C.  The Court should take an approach to evidence that saves testimony time.

If the Court adheres to its rigid time limits, plaintiffs respectfully request that its approach to the evidence reflect the limited time available. For example, plaintiffs believe that the following

measures can be taken:

<u>Foundational questions:</u> Especially for witnesses that need translation, plaintiffs request that the Court take a lenient approach to the use of leading questions to establish foundational matters. This would save precious time that would be wasted in a lengthy back-and-forth over undisputed issues, simply to get to the real questions.

<u>Rule 1006 summaries:</u> Defendants will be deposing the individuals whom plaintiffs have identified as establishing the foundation for, and authenticating, their summaries of evidence under Federal Rule of Evidence 1006. (Some of these summaries are identical to those considered by the Court at the summary judgment stage.) However, plaintiffs do not believe it is necessary to use trial testimony to admit these summaries. Defendants can call the authenticating witnesses in their case if they believe there is a problem that needs to be addressed, but unless there is a real question whether the underlying documents say what the summaries represent them to say, the summaries should be admitted upon the submission of the authenticating deposition testimony or declarations to the Court.

There is no serious dispute here about the admissibility of the summaries; plaintiffs have corrected any errors identified by defendants and have repeatedly offered to confer with defendants to address any other perceived mischaracterization of the underlying documents. Nonetheless, defendants have indicated that they will not stipulate to the admissibility of the summaries or even to their foundation. This is an effort to force plaintiffs to waste valuable trial time to establish what is essentially undisputed: that the summaries represent the underlying documents. (Indeed, with respect to the phone record summaries previously examined by this Court, defendants' own expert already stated that he reproduced plaintiffs' results.) Because nothing in Rule 1006 requires that foundational testimony be given to the jury, plaintiffs request that the Court allow these summaries to be admitted in their case-in-chief without the need for foundational testimony. Alternatively, if defendants persist in refusing to stipulate to the foundation for these summaries without adequate basis, the Court should charge any time spent on presenting that testimony to defendants, not plaintiffs.

Plaintiffs respectfully request rulings on the above matters by Monday, October 27, 2008.

Respectfully submitted,

EARTHRIGHTS INTERNATIONAL
/s/
Marco Simons
Attorneys for all Plaintiffs