Barbara Enloe Hadsell, Esq. [S.B. #086021]
bhadsell@hadsellstormer.com
Dan Stormer, Esq. [S.B. #101967]
dstormer@hadsellstormer.com
Lauren Teukolsky Esq. [S.B. #211381]
lauren@hskrr.com
HADSELL STORMER KEENY
    RICHARDSON & RENICK LLP
128 North Fair Oaks Avenue
Pasadena, California 91103-3645
Telephone:  (626) 585-9600
Facsimile:  (626) 577-7079

[Counsel For Plaintiffs Continued On Next Page]

Attorneys for All Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BOWOTO, et. al.,<br><br>                         Plaintiffs,<br><br>          v.<br><br>CHEVRON CORPORATION, et al.<br><br>                    Defendants. | Case No: C 99-02506 SI<br><br>[Assigned to the Honorable Susan Illston, Courtroom 10, 19th floor]<br><br>**PLAINTIFFS' BENCH BRIEF RE: ANTICIPATING QUESTIONING OF WATTS BY DEFENDANTS; DECLARATION AND EXHIBIT IN SUPPORT THEREOF**<br><br>Trial Date: October 27, 2008<br>Time: 10:00 a.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Counsel for Plaintiffs
(continued from first page)

THERESA TRABER, ESQ. [S.B.#116305]
tmt@tvlegal.com
BERT VOORHEES, ESQ. [S.B. #137623]
bv@tvlegal.com
LAURA FAER, ESQ. [S.B. # 233846]
lf@tvlegal.com
TRABER & VOORHEES
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone:  (626) 585-9611
Facsimile:  (626) 577-7079

CINDY A. COHN, ESQ. [S.B.#145997]
cindy@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell St.
San Francisco, California 94110
Telephone:  (415) 436-9333, Ext. 108
Facsimile:  (415) 436-9993

RICHARD HERZ, ESQ.
rick@earthrights.org
MARCO SIMONS, ESQ. [S.B. #237314]
marco@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street N.W., Suite 401
Washington, DC 20006
Telephone:  (202) 466-5188
Facsimile:  (202) 466-5189

MICHAEL S. SORGEN, ESQ. [S.B. #43107]
msorgen@sorgen.net
LAW OFFICES OF MICHAEL S. SORGEN
240 Stockton Street, 9th Floor
San Francisco, California 94108
Tel:  (415) 956-1360 Fax:  (415) 956-6342

JOSE LUIS FUENTES, ESQ. [S.B.#192236]
jlf499@sbcglobal.net
SIEGEL & YEE
499 14th Street, Suite 220
Oakland, CA 94612
Tel: (510) 839-1200Fax: (510) 444-6698

JUDITH BROWN CHOMSKY, ESQ.
jchomsky@igc.org
LAW OFFICES OF JUDITH BROWN
CHOMSKY
Post Office Box 29726
Elkins Park, PA 19027
Telephone:  (215) 782-8367
Facsimile:  (215) 782-8368

JENNIFER M. GREEN, ESQ.
jgreen@ccr-ny.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Telephone:  (212) 614-6431
Facsimile:  (212) 614-6499

PAUL HOFFMAN, ESQ. [S.B.# 71244]
hoffpaul@ix.netcom.com
SCHONBRUN, DESIMONE, SEPLOW,
HARRIS & HOFFMAN LLP
723 Ocean Front Walk
Venice, California 90210
Telephone:  (310) 396-0731
Facsimile:  (310) 399-7040

ROBERT D. NEWMAN, ESQ.
[S.B. #086534]
rnewman@wclp.org
LAW OFFICE OF ROBERT D. NEWMAN
3701 Wilshire Blvd., Suite 208
Los Angeles, California 90010
Telephone:  (213) 487-4727
Facsimile:  (213) 487-0242

ANTHONY DICAPRIO, ESQ.
ad@humanrightslawyers.com
RATNER, DICAPRIO & CHOMSKY, LLP
110 E. 59th Street
New York, NY 10022
Telephone:  (212) 604 9466
Facsimile:  (212) 604 9467

RICHARD R. WIEBE [S.B. #121156]
wiebe@pacbell.net
LAW OFFICE OF RICHARD R WIEBE
425 California Street, #2025
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

1        **POINTS AND AUTHORITIES**

2  I.    **FACTUAL STATEMENT**

3        Plaintiffs' claims in this lawsuit arise out of violent attacks on them by the Nigerian military on

4  the Parabe oil platform in May 1998.  Plaintiffs have designated as one of their experts Michael Watts,

5  whose deposition was taken by defendants in 2005.  Mr. Watts is a Professor of Geography at the

6  University of California, Berkeley, and has been designated by plaintiffs to testify regarding the

7  background of the Niger Delta area, including joint ventures with petroleum companies, oil operations,

8  and their effects on the communities in the Delta.

9        Based on questioning during his deposition, plaintiffs anticipate that Defendants will attempt to

10 elicit testimony from Professor Watts regarding areas that are completely irrelevant to the issues at hand,

11 including violence by other tribes occurring after the Parabe incident.  Defendants' counsel Robert

12 Mittelstaedt asked Professor Watts such questions during the vast majority of the deposition.  For

13 example, Mr. Mittelstaedt asked him:

14       Q: Are you familiar with any occasions when people in the Niger Delta held oil co-workers

15          hostage?

16 Mr. Watts responded:

17       A: A specific instance occurred when I was in  Nigeria in the summer of 2004 -- this must have

18          been at the end of July -- on a platform near Sangana.

19 (Watts Depo. Vol 1 at 44:6-18, attached as Exhibit A to Richardson Declaration).  Mr. Watts testified

20 that the persons involved in that incident were Ijaw.  (*Id.* at 49:15-22).

21       Another topic on which Mittelstaedt questioned Professor Watts at length (over 35 pages of the

22 transcript) was the occupation by the Ijaw from a town called Nembe of a Shell platform.  (*See, e.g., Id.*

23 at 43:11- 44:4).  However, that incident took place in 2000.

24       Mr. Mittelstaedt also elicited testimony that the Ijaws in the Niger Delta are armed with AK-47's.

25 (*Id.* at 53:23 - 54:1).  The questioning regarding the Ijaws continued on for many hours, was quite

26 extensive and went over many different incidents.

27       This questioning is designed, plaintiffs believe, to prejudice and mislead the jury into attributing

28 to the plaintiffs acts that occurred after the fact and by other people.  Such questioning would raise issues

1   that have nothing to do with the state of mind of individuals at the time of the incident, since these

2   incidents occurred <u>after</u> the incident.   Moreover, since they involve largely the Ijaw peoples and not the

3   Ilaje, this testimony would confuse the jury and invite them to condemn the Ilaje for acts which were not

4   committed by them.[1]

5   **II.    ARGUMENT**

6           The Court should exclude and disallow the anticipated questioning for the following reasons: (1)

7   it is not relevant under Federal Rules 401 and 402; (2) it will not elicit admissible testimony because

8   evidence of prior bad acts is not admissible to show actions in conformity therewith pursuant to Federal

9   Rules 404(b); and (3) such questioning would be highly prejudicial under Federal Rules of Evidence

10  403.

11          **A.    These Alleged Incidents Are Not Relevant To Issues In This Case Pursuant To**

12                  **Federal Rules Of Evidence 401 and 402**

13          Incidents of alleged kidnapping, takeovers or other acts of violence in years post-dating the

14  Parabe incident and having to do with the Ijaw people are not relevant to the issues in this case.  Under

15  Federal Rules of Evidence 401, "'relevant evidence' means evidence having any tendency to make the

16  existence of any fact that is of consequence to the determination of the action more probable or less

17  probable than it would be without the evidence."  Fed. R. Evid. 401.  Under Federal Rule of Evidence

18  402, "[e]vidence which is not relevant is not admissible."  Fed. R. Evid. 402.  The alleged violent acts

19  committed by the Ijaw and post-dating the Parabe incident have no relationship to the incident at issue in

20  this case and therefore have no relevance.

21          **B.    These Alleged Incidents Are Not Admissible As "Other Acts" To Show Actions  In**

22                  **Conformity Therewith Pursuant to Federal Rule of Evidence 404(b)**

23          Defendants may attempt to argue that these incidents should be admitted under Rule 404(b),

24  which provides that evidence of "other crimes, wrongs, or acts," which are not admissible to show

25  character or propensity, may be admitted for other purposes, such as motive or intent.  However,

26  evidence of incidents that happened <u>subsequent to</u> the May 1998 Parabe incident, and by <u>other people</u>

27

28          [1] Plaintiffs have included with this motion some of the evidence reflecting defendants' repeated inquiry at the deposition into  violence subsequent to May of 1998 and involving the Ijaw.  Both days of Professor Watts' deposition contained extensive questioning on the subject.

**PLAINTIFFS' BENCH BRIEF RE: ANTICIPATED QUESTIONING OF WATTS BY DEFENDANTS**

1   can by definition have nothing to do with the motive or intent of any of the parties involved in the 1998

2   Parabe incident.  As clearly stated in Rule 404(b), "Evidence of other crimes, wrongs, or acts is not

3   admissible to prove the character of a person in order to show action in conformity therewith."  *See also*

4   *United States v. McCourt*, 925 F.2d 1229, 1238 (9th Cir. 1991).  Therefore, such evidence is

5   inadmissible under Rule 404(b).

6   **C.     Allowing Testimony about Unrelated, Subsequent Events involving Allegations of**

7   **Tribal Violence Into Evidence Would Be Highly Prejudicial Under Federal Rule of**

8   **Evidence 403**

9    Finally, the introduction of this evidence would be highly prejudicial.  Even relevant evidence

10   may "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

11   confusion of the issues, or misleading to the jury, or by considerations of undue delay, waste of time, or

12   needless presentation of cumulative evidence."  Fed. R. Evid. 403.  "'Unfair prejudice" means an undue

13   tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional

14   one.'"  *Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir. 1981) (quoting Advisory Committee's Notes to

15   Federal Rule of Evidence 403).

16   The only purpose that could be served by the introduction of this evidence would be to attempt to

17   depict the Plaintiffs as having a propensity toward violent behavior and thus, to convince the jury to

18   apply more lenient standards to the military's attacks on them.  The risk of prejudice in introducing this

19   evidence is great.  The jury could be misled and confused by the presentation of irrelevant evidence of

20   incidents having to do with Ijaw people unrelated to the plaintiffs and occurring after the incidents which

21   gave rise to this case.  Plaintiffs would be forced to put on responsive evidence demonstrating that the

22   alleged incidents had nothing to do with them, occurred well after the May 1998 Parabe incident.  This

23   evidence could also serve to inflame the passions of the jury against the plaintiffs and the plaintiffs'

24   communities, or at least, to confuse them.  The introduction of such evidence presents the risk that the

25   jury will draw conclusions about the appropriateness of the military's conduct that are unfairly

26   prejudicial and contrary to law.

27   / / /

28   / / /

1  **III.    CONCLUSION**

2          For the foregoing reasons, the Plaintiffs respectfully request that the Court preclude defendants'

3  counsel from questioning expert Michael Watts regarding incidents of violence having to do with people

4  unrelated to the plaintiffs, and occurring well after the May 1998 Parabe incident.

5

6  Dated: October 26, 2008                              Respectfully Submitted,

7

8                                                       HADSELL STORMER KEENY
                                                        RICHARDSON & RENICK LLP
9

10                                                      By _____/s/_____

11                                                              Barbara Hadsell
                                                        Attorneys for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Richardson Declaration

**DECLARATION OF ANNE RICHARDSON**

I, Anne Richardson, declare as follows:

1.     I am a partner at the law firm of Hadsell Stormer Keeny Richardson & Renick, LLP, counsel for plaintiffs in this matter.  I am admitted to the Northern District of California.  I have personal knowledge of the facts stated herein and if called upon to do so could and would competently testify thereto.

2.     Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the deposition of Michael Watts taken on November 18, 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed this 24th day of October, 2008, in Pasadena, California.


                                                              /s/
                                                        Anne Richardson

PLAINTIFFS' BENCH BRIEF RE: ANTICIPATED
QUESTIONING OF WATTS BY DEFENDANTS

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LARRY BOWOTO, et al.,                    )

       Plaintiffs,                        )

        vs.                               )   No. C-99-2506-SI

CHEVRONTEXACO CORPORATION, et al.,       )

       Defendants.                        )   VOLUME 1

_____ )   PAGES 1 - 237


     Videotaped deposition of MICHAEL J. WATTS,
taken on behalf of the defendants, at 555 California
Street, 26th Floor, San Francisco, California,
commencing at 8:59 a.m., Friday, November 18, 2005,
before Deirdre F. Cram, C.S.R. 9339.

d813e511-8bc8-4d8b-a33f-24ac353862b9

Page 43

1    occupying?

2              MS. TEUKOLSKY:  Objection.  Overbroad.

3    Compound.  Lacks foundation.  Vague.

4              THE WITNESS:  That is not clear to me.

5    Many of these youth groups were paid what were          10:06:20

6    locally called standby payments by the company.  This

7    has nothing to do with occupations.  I would have to

8    go and check my notes to determine whether the

9    occupations produced payments as a condition for

10   their exiting the installation.  I don't recall.       10:06:47

11   BY MR. MITTELSTAEDT:

12        Q.  Do you have any information as to how many

13   Nembe Ijaws took over the Shell facilities?  The

14   number?

15        A.  I do not --                                    10:07:02

16             MS. TEUKOLSKY:  Objection.  Overbroad.

17   Compound.

18             THE WITNESS:  I do not have that

19   information.  It may be in my notes, but I do not

20   have it right now.                                      10:07:10

21   BY MR. MITTELSTAEDT:

22        Q.  Do you have any information on whether

23   there were any Shell workers at the installations,

24   that were held hostage?

25             MS. TEUKOLSKY:  Objection.  Argumentative.    10:07:20

d813e511-8bc8-4d8b-a33f-24ac353862b9

Page 44

1   Overbroad.  Lacks foundation.  Vague.  Object to the

2   use of the word "hostage."

3          THE WITNESS:  I do not have any

4   information.

5   BY MR. MITTELSTAEDT:                                10:07:31

6      Q.  Are you familiar with any occasions when

7   people in the Niger Delta held oil co-workers

8   hostage?

9          MS. TEUKOLSKY:  Objection.  Lacks

10  foundation.  Vague.                                 10:07:42

11         THE WITNESS:  I have read reports in the

12  Nigerian press documenting -- in which they document

13  such instances.

14  BY MR. MITTELSTAEDT:

15     Q.  Can you remember any specific instances?    10:07:55

16     A.  A specific instance occurred when I was in

17  Nigeria in the summer of 2004 -- this must have been

18  at the end of July -- on a platform near Sangana.

19     Q.  Tell me what happened at that time.

20         MS. TEUKOLSKY:  Objection.  Lacks           10:08:28

21  foundation.  Calls for speculation.  Calls for a

22  narrative.

23         THE WITNESS:  I was informed that a

24  number -- I do not know the number -- of people from

25  the immediate communities occupied a platform and    10:08:44

Page 49

1          A.   The materials?

2          Q.   Yes.

3          A.   These are simply Xerox copies or, in some

4    cases, newspaper clippings that I clipped, myself,

5    from local newspapers in Nigeria when I was making my          10:15:09

6    trips there.

7          Q.   And some of those materials, you believe

8    refer to occupations and hostage-taking?

9          A.   They do.

10         Q.   And are you planning to make those              10:15:22

11   available, or should I ask you now to make them

12   available?

13         A.   If you wish, I will make them available.

14         Q.   Thank you.

15              What ethnic group was involved in the July     10:15:31

16   2004 occupation and hostage-taking?

17              MS. TEUKOLSKY:   Objection to the use of

18   the phrase "hostage-taking."  Assumes facts not in

19   evidence.  Lacks foundation.

20              THE WITNESS:   The people involved in the      10:15:58

21   Sangana case were, to the best of my knowledge, all

22   Ijaw.

23   BY MR. MITTELSTAEDT:

24         Q.   And was there what you consider

25   hostage-taking in that incident?                         10:16:07

d813e511-8bc8-4d8b-a33f-24ac353862b9

Page 53

1   available in the Niger Delta are accurate?

2           MS. TEUKOLSKY:  Objection.  Lacks

3   foundation.

4           THE WITNESS:  The reports that I'm

5   thinking of, one set were produced by a civic group,   10:20:25

6   a nonprofit organization, and I frankly cannot speak

7   to its research capacity.  A second is that some

8   reports by the human rights organizations have

9   referred to the widespread availability of arms

10  without, per se, being detailed case studies of them,   10:20:53

11  which seemed to me to be quite respectable.

12  BY MR. MITTELSTAEDT:

13      Q.  When you were interviewing the Nembe

14  Ijaws, did you ask them whether they were armed?

15      A.  I do not recall asking that question.        10:21:14

16      Q.  Have you ever talked with Patterson Ogon

17  as to whether he has any information about the Ijaws

18  in the Niger Delta being armed?

19          MS. TEUKOLSKY:  Objection.  Vague.

20          THE WITNESS:  I have not talked to         10:21:34

21  Mr. Ogon about that issue.

22  BY MR. MITTELSTAEDT:

23      Q.  Have you ever read or heard that the Ijaws

24  in the Niger Delta have AK-47s in their armories?

25      A.  I believe that some of the reports I refer   10:21:59

d813e511-8bc8-4d8b-a33f-24ac353862b9

Page 54

1    to refer to those weapons.

2         Q.  Do you think that kidnapping of oil

3    workers for ransom is a favored tactic of militants

4    in the Niger Delta?

5              MS. TEUKOLSKY:  Objection.  Vague.  Lacks      10:22:21

6    foundation.  Goes beyond the scope of this witness's

7    designation as an expert in this action.

8              THE WITNESS:  That's not an arena on which

9    I have expert knowledge, per se.

10   BY MR. MITTELSTAEDT:                                     10:22:34

11        Q.  Do you think Oronto Douglas has expert

12   knowledge on that subject?

13             MS. TEUKOLSKY:  Objection.  Lacks

14   foundation.  Calls for speculation.

15             THE WITNESS:  I do not know.                   10:22:43

16   BY MR. MITTELSTAEDT:

17        Q.  Or Von Kemedi?

18             MS. TEUKOLSKY:  Same objections.

19             THE WITNESS:  I do not believe so.

20   BY MR. MITTELSTAEDT:                                     10:22:53

21        Q.  Do you have any information, whether

22   you're an expert in it or not, that kidnapping of oil

23   workers for ransom is a favored tactic of militants

24   in the Niger Delta?

25             MS. TEUKOLSKY:  Objection.  Vague.             10:23:09

d813e511-8bc8-4d8b-a33f-24ac353862b9

Page 235

1    STATE OF CALIFORNIA                    )

2                                           )      ss

3    CITY AND COUNTY OF SAN FRANCISCO       )

4

5                 I, DEIRDRE F. CRAM, CSR NO. 9339, a

6    Certified shorthand Reporter of the State of

7    California, do hereby certify:

8                 That the foregoing proceedings were

9    taken before me at the time and place herein set

10   forth; that any witnesses in the foregoing

11   proceedings, prior to testifying, stated that they

12   would tell the truth under penalty of perjury; that a

13   verbatim record of the proceedings was made by me

14   using machine shorthand which was transcribed under

15   my direction; further, that the foregoing is an

16   accurate transcription thereof.

17                 I further certify that I am neither

18   financially interested in the outcome of the action,

19   nor a relative or employee of any attorney or of any

20   parties.

21                 IN WITNESS WHEREOF, I have this date

22   subscribed my name.

23   Dated:

24

25                      DEIRDRE F. CRAM, C.S.R. 9339

d813e511-8bc8-4d8b-a33f-24ac353862b9