United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LARRY BOWOTO, et al.                              No. C 99-02506 SI

        Plaintiffs,

  v.

CHEVRONTEXACO CORP., et al.,

        Defendants.
                                                      /

**INSTRUCTIONS TO JURY**


**(FINAL – 11/24/08)**

GENERAL INSTRUCTIONS
    Duty of Jury ............ 3
    What is Evidence ............ 3
    What is Not Evidence ............ 3
    Direct and Circumstantial Evidence ............ 4
    Charts and Summaries in Evidence ............ 4
    Burden of Proof - Preponderance of the Evidence ............ 5
    Burden of Proof - Clear and Convincing Evidence ............ 5
    Burden of Proof - Beyond a Reasonable Doubt ............ 5
    Credibility of Witnesses ............ 5
    Parties ............ 6
    Fair Treatment ............ 7
    No Claim Relating to the Environment ............ 7

ALIEN TORT STATUTE – CLAIMS FOR TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT
    Alien Tort Statute ............ 9
    Torture ............ 10
    Cruel, Inhuman or Degrading Treatment ............ 11

CLAIMS FOR ASSAULT AND BATTERY
    Assault and Battery ............ 14
    Assault – While in Custody of GSF ............ 14
    Assault/Ayinbo – While in Custody of Akure Police ............ 15
    Battery ............ 16
    Intent ............ 17

NEGLIGENCE
    Negligence of Nigerian Security Forces ............ 19
    Negligence of CNL in Calling In/Assisting/Supervising
    Nigerian Security Forces and Akure Police ............ 19
    Negligence – Basic Standard of Care ............ 20
    Substantial factor – defined ............ 20
    Partial Affirmative Defense to Negligence (Contributory Negligence) ............ 21

WRONGFUL DEATH CLAIMS
    Nigerian Law – Wrongful Death Liability ............ 23
    Nigerian Law – Wrongful Death – Contributory Negligence ............ 23

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS
    Intentional Infliction of Emotional Distress – CNL, the Nigerian security
    forces and the Akure police ............ 25
    Intentional Infliction of Emotional Distress – Privileged Conduct ............ 26

DEFENDANTS' LIABILITY FOR CNL'S CONDUCT
    Overview of Responsibility of Defendants for CNL ............ 28
    Corporation is a Person Under Law ............ 28
    Direct Liability ............ 28
    Corporate Parents and Subsidiaries ............ 28
    Liability of Defendants for Acts of CNL – Agency ............ 29
    Liability of Defendants for Acts of CNL – Agency (Factors not considered or not dispositive) ............ 31
    Liability of Defendants for Acts of CNL – Ratification ............ 32
    Liability of Defendants for Acts of CNL – Aiding and Abetting ............ 33
    Liability of Defendants for Acts of CNL – Conspiracy ............ 34

United States District Court
For the Northern District of California

CNL'S RESPONSIBILITY FOR GSF'S CONDUCT
Overview of Responsibility of Defendants for CNL
and the Nigerian Security Force                                          36
Responsibility of CNL for Acts of Nigerian Security Forces – Agency      37
Responsibility of CNL for Acts of Nigerian Security Forces – Ratification 38
Responsibility of CNL for Acts of Nigerian Security Forces –
Aiding and Abetting                                                      39
Responsibility of CNL for Acts of Nigerian Security Forces – Conspiracy  40
Responsibility of CNL for Acts of Nigerian Security Forces – Joint Venture 40
Responsibility of CNL for Acts of Nigerian Security Forces – Joint Enterprise 41
Responsibility of CNL for Acts of Nigerian Security Forces -
Instigation or Inducement                                                42
Responsibility of CNL for Acts of Nigerian Security Forces –
Special Risk of Harm                                                     42

PRIVILEGES, DUTIES AND DEFENSES
General - Explanation for Subsequent Instructions                        45
Law Enforcement Reporting Privilege                                      45
Duty to Report Crime                                                     45
Duty to Assist Police                                                    46
Safe Working Environment                                                 46
No Legal Duty Exists to Negotiate with Persons Who Have
Seized a Facility and Held Hostages                                      46
Criminal Acts – Hostage Taking                                           46
Criminal Acts – Unlawful Seizure of Platform                             46
Criminal Acts – Unlawful Seizure of Ship                                 46
Nigerian Law – Assault in Pursuance of Conspiracy                        47
Nigerian Law – Interference with Oil Operations                          47
Use of Force – Privilege                                                 47

INSTRUCTIONS FOR COMPENSATORY DAMAGES
Compensatory Damages                                                     49
Compensatory Damages – Larry Bowoto and Bassey Jeje (Individual Claims)  49
Compensatory Damages – Oyinbo Family – Certain Claims                    50
Compensatory Damages – Oyinbo Family – Other Land-Based Claims           50
Compensatory Damages – Irowarinun Family – for Wrongful Death            51

Punitive Damages                                                         52

Duty to Deliberate                                                       54
Communication with Court                                                 54
Return of Verdict                                                        55

United States District Court
For the Northern District of California

**GENERAL INSTRUCTIONS**

**United States District Court**
For the Northern District of California

**Duty of Jury**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.  Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

**What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

> (1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

3

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Some evidence was admitted for a limited purpose only. When I instructed you that an item of evidence was admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Charts and Summaries in Evidence**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

4

**Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Burden of proof—clear and convincing evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

**Burden of Proof – Beyond a Reasonable Doubt**

On some claims in this case, a party has the burden of proving certain facts beyond a reasonable doubt.  Proof beyond a reasonable doubt is proof that leaves you firmly convinced that a party has proved its claim or defense.  It is not required that the party prove the claim or defense beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.  It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

5

United States District Court
For the Northern District of California

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Parties**

The parties to this case are the plaintiffs and the defendants.

The plaintiffs are:

Larry Bowoto

Bassey Jeje

The family of Arolika Irowarinun, who is deceased.  The family includes Margaret Irowarinun, Roseline Irowarinun, and Mary Irowarinun, Bosuwo Sebi Irowarinun, Caleb Irowarinun, Orioye Laltu Irowarinun, Temilola Irowarinun, Adegorye Oloruntimjehum Irowarinun, Aminora James Irowarinun, Eniesoro Irowarinun, Gbenga Irowarinun, Ibimisan Irowarinun, Monotutegha Irowarinun, and Olamisbode Irowarinun; and

The family of Bola Oyinbo, who is deceased.  The family include Ola Oyinbo, Bayo Oyinbo and Deji Oyinbo.

The defendants are:

- Chevron Corporation

- Chevron U.S.A. Inc. (CUSA); and

- Chevron Investments Inc. (CII).

**Fair Treatment**

All parties are equal before the law.  Corporations are entitled to the same fair and conscientious consideration by you as any party.  Citizens of another country are entitled to the same fair and conscientious consideration by you as any party.

**No Claim Relating to the Environment**

To the extent that I have permitted any witnesses to speak about environmental matters in Nigeria, or obligations of oil companies operating in Nigeria, it is purely background information for you to place the events in context.  Plaintiffs are not making any claim based on harm to the environment or damage to their communities.  Plaintiffs are not seeking and you shall not award any damages of any kind to compensate for alleged environmental damages.

1    **INSTRUCTIONS UNDER ALIEN TORT STATUTE  – CLAIMS FOR TORTURE AND**

2    **CRUEL, INHUMAN OR DEGRADING TREATMENT**

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**Alien Tort Statute**

Plaintiffs' claims for torture and for cruel, inhuman or degrading treatment are brought under a law known as the Alien Tort Statute, a U.S. law that governs the application of international law in the United States.

International law prohibits torture and prohibits cruel, inhuman or degrading treatment. Any person who is injured by any of these international law violations may sue in a United States court under the Alien Tort Statute.  This is true even if the international law violations occur in another country such as Nigeria.

The plaintiffs allege that the defendants violated their rights under the Alien Tort Statute to be free from torture and to be free from cruel, inhuman, or degrading treatment.  If you find that the plaintiffs have established that their rights protected by the Alien Tort Statute were violated, and if you find that the defendants are liable under any one of the theories of liability presented in this case, then the defendants are liable for the Alien Tort Statute violations.  If you find that plaintiffs' rights were not violated, or that defendants are not liable for any violation that may have occurred, then defendants are not liable.

United States District Court
For the Northern District of California

**Torture**

Plaintiffs contend that Bola Oyinbo, Larry Bowoto, and Bassey Jeje suffered torture in violation of international law, United States law, and Nigerian law.  This claim must be proved separately as to each individual plaintiff.  To establish this claim, plaintiffs must prove, as to each individual:

1.      That he was subjected to severe pain or suffering, whether physical or mental;

2.      That this pain or suffering was inflicted on him intentionally for the purpose of obtaining information or a confession; for punishment, intimidation, or coercion; or for any reason based on discrimination; and

3.      That this pain or suffering was inflicted on him by, or with the consent of, a public official or other person acting in an official capacity and while he was in the official's custody or under the official's control.

In this context, the Nigerian security forces are considered public officials.

Torture may include mental pain and suffering.  In order to constitute torture, mental pain or suffering must be prolonged mental harm caused by or resulting from the intentional infliction or threatened infliction of severe physical pain or suffering, or the threat of imminent death.

Plaintiffs must prove torture as to each individual by a preponderance of the evidence.

If you find that one or more of these individuals suffered torture at the hands of the Nigerian security forces, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**United States District Court**
For the Northern District of California

**Cruel, Inhuman, or Degrading Treatment**

Plaintiffs contend that Bola Oyinbo, Larry Bowoto, and Bassey Jeje suffered cruel, inhuman, and degrading treatment in violation of international law, United States law, and Nigerian law. This claim must be proved separately as to each individual plaintiff. To establish this claim, plaintiffs must prove, as to each individual:

1.  That he was subjected to mental or physical suffering, anguish, humiliation, fear or debasement;

2.  That this suffering, anguish, humiliation, fear or debasement was inflicted on him by, or with the consent of, a public official or other person acting in an official capacity;

3.  That this suffering, anguish, humiliation, fear or debasement was either cruel, inhuman, or degrading.

In this context, the Nigerian security forces are considered public officials.

Cruel, inhuman or degrading treatment includes acts that fall short of torture. Plaintiffs contend that the use of force by the Nigerian security forces against  was cruel or inhuman. In order to be cruel or inhuman, these acts must meet the three numbered criteria listed above, and must also:

(a)  cause serious mental or physical suffering or injury or constitute a serious attack on human dignity;

(b)  be deliberate; and

(c)  be objectively unreasonable under all of the circumstances.

Plaintiffs also contend that the conditions in which Bola Oyinbo and Larry Bowoto were detained, including the alleged denial of medical care to Larry Bowoto, were cruel, inhuman or degrading. In order to show that these conditions were cruel, inhuman or degrading, plaintiffs must show that they meet the three numbered criteria listed above, and also that:

(a)  Bola Oyinbo or Larry Bowoto faced a substantial risk of serious harm or a serious medical need; and

11

(b)     the Nigerian security forces knew of this risk or this medical need and disregarded it.

You must consider the totality of the circumstances in determining whether any individual plaintiff was subjected to cruel or inhuman or degrading treatment which caused lasting psychological harm. Whether treatment is cruel, inhuman, or degrading depends upon an assessment of all the particularities of the evidence before you, including the specific conditions at issue, duration of the measures imposed, the objectives pursued by the perpetrators, and the physical or mental effects on the person(s) involved.

Plaintiffs must prove torture as to each individual by a preponderance of the evidence.

If you find that any of these individuals suffered cruel, inhuman, or degrading treatment at the hands of the Nigerian security forces, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

1

**INSTRUCTIONS FOR CLAIMS OF ASSAULT AND BATTERY**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

**Assault and Battery**

Because the following claims are being brought under Nigerian law, plaintiffs bear the burden of proving the elements of the following claims beyond a reasonable doubt:

> Arolika Irowarinun's, Larry Bowoto's and Bassey Jeje's claims of assault and battery.

> Bola Oyinbo's claims of assault and battery for any conduct that occurred before he was taken onto land.

Likewise, defendants bear the burden to prove beyond a reasonable doubt any affirmative defense they assert against these claims, if that affirmative defense requires defendants to establish the commission of a crime under Nigerian law.

**Assault – While in Custody of GSF**

This instruction applies to events relating to Arolika Irowarinun, Larry Bowoto and Bassey Jeje, and to Bola Oyinbo prior to his being turned over to the custody of the police in Akure.

Plaintiffs claim that Nigerian Government Security Force personnel assaulted these individuals.  To establish assault as to any individual, plaintiffs must prove all of the following as to such individual:

1. That the Nigerian Government Security Force personnel acted, intending to cause harmful contact, or threatened to touch him in a harmful of offensive manner;

2. That he reasonably believed that he was about to be touched in a harmful manner, or that the Nigerian Security Force personnel were about to carry out the threat;

3. That he did not consent to the Nigerian government security force personnel's conduct; and

4. That the Nigerian Government Security Force personnel's conduct was a substantial factor in causing him harm.

A touching is offensive if it offends a reasonable sense of personal dignity.  In this context, "touch" includes to shoot, to beat, or to cause other physical contact.  Words alone do not amount to an assault.  If you find that plaintiffs have proved that the Nigerian Security Force personnel assaulted any of these individuals as set out in this instruction, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in this case, as those theories will be explained later in these instructions.

**Assault/Ayinbo -  While in Custody of Akure Police**

This instruction applies to events relating to Bola Oyinbo while he was on land after being turned over to the custody of the police in Akure.

The Oyinbos claim that the Akure police personnel assaulted Bola Oyinbo.  To establish assault, the Oyinbos must prove all of the following:

1.    That the Akure police acted, intending to cause harmful contact, or threatened to touch Bola Oyinbo in a harmful or offensive manner;

2.    That Bola Oyinbo reasonably believed that he was about to be touched in a harmful manner, or that the Akure police personnel were about to carry out the threat;

3.    That Bola Oyinbo did not consent to the Akure police's conduct; and

4.    That the Akure police's conduct was a substantial factor in causing Oyinbo's harm.

A touching is offensive if it offends a reasonable sense of personal dignity.  In this context, "touch" includes to shoot, to beat, or to cause other physical contact.  Words alone do not amount to an assault.  If you find that the Oyinbos have proved that the Akure police assaulted Bola Oyinbo as set out in this instruction, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in this case, as those theories will be explained later in these instructions.

15

United States District Court
For the Northern District of California

**Battery**

All plaintiffs bring claims of battery, contending that the Nigerian security forces used unreasonable force in shooting, beating, or otherwise physically harming Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, and Bassey Jeje. To establish this claim as to any such individual, plaintiffs must prove all of the following as to such individual:

> 1.   That the Nigerian security forces intentionally touched him or caused him to be touched;
>
> 2.   That the Nigerian security forces used unreasonable force against him;
>
> 3.   That he did not consent to the use of that force;
>
> 4.   That he was harmed; and
>
> 5.   That the Nigerian security forces' use of unreasonable force was a substantial factor in causing harm to him.

The Nigerian security forces may use reasonable force to arrest or detain a person when they have reasonable cause to believe that that person has committed a crime. Even if the Nigerian security force officers are mistaken, a person being arrested or detained has a duty not to use force to resist arrest unless the Nigerian security forces were using unreasonable force. If the Nigerian security forces were using unreasonable force, then Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, and Bassey Jeje had a right to use force in self-defense.

In deciding whether the Nigerian security forces used unreasonable force, you must determine the amount of force that would have appeared reasonable to Nigerian security forces officers in their position under the same or similar circumstances. You should consider, among other factors, the following:

> (a)   The seriousness of the crime at issue, if any;
>
> (b)   Whether Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje reasonably appeared to pose an immediate threat to the safety of any of the Nigerian security forces or others; and

16

(c)     Whether such individual was actively resisting arrest or attempting to evade arrest.

In this context, "touch" includes to shoot, to beat, or to cause other physical contact.

If you find that the Nigerian security forces committed battery, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**Intent**

In determining whether the Nigerian security forces or the Akure police intended to commit assault or battery, you should presume that the Nigerian security forces and the Akure police intended to accomplish the natural and probable consequences of their actions.  In other words, they acted intentionally if they intended to assault or commit a battery against Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, or if they were substantially certain that such an assault or battery would result from their conduct.

In determining whether the Nigerian security forces or the Akure police were aware of the likely consequences of their actions, you should consider what reasonable people in the same situation would contemplate as the probable result of their acts.

17

**INSTRUCTIONS ON NEGLIGENCE CLAIMS**

**United States District Court**
For the Northern District of California

**Negligence of Nigerian security forces**

Plaintiffs claim that Arolika Irowarinun, Larry Bowoto, Bola Oyinbo, and Bassey Jeje were harmed by the negligence of the Nigerian security forces in their conduct during the Parabe incident. To establish this claim as to any of these individuals, plaintiffs must prove all of the following, as to such individual:

1.      That the Nigerian security forces were negligent;

2.      That the individual was harmed; and

3.      That the  negligence of the Nigerian security forces was a substantial factor in causing the individual's harm.

Plaintiffs must prove negligence by a preponderance of the evidence.  If you find that the Nigerian security forces are responsible for negligence, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.


**Negligence of CNL in calling in/assisting/supervising Nigerian security forces and Akure police**

Plaintiffs contend that Arolika Irowarinun, Larry Bowoto, Bola Oyinbo and Bassey Jeje   were harmed by the negligence of CNL itself in its conduct during the Parabe incident, including calling in the Nigerian security forces and the Akure police during the Parabe incident, providing assistance to the Nigerian security forces and the Akure police during the Parabe incident, and failing properly to train and supervise the Nigerian security forces and the Akure police.

To establish that CNL was negligent in its own conduct toward any individual during the Parabe incident, plaintiffs must prove all of the following, as to such individual:

1.      That CNL was negligent;

2.      That the individual was harmed; and

19

United States District Court
For the Northern District of California

3.      That CNL's negligence was a substantial factor in causing the individual's harm.

Every person has a right to expect that every other person will use reasonable care and will not violate the law, unless he or she knows, or should know, that the other person will not use reasonable care or will violate the law.

Plaintiffs must prove negligence by a preponderance of the evidence.  If you find that CNL is responsible for negligence, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**Negligence – Basic Standard of Care**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in the same situations as the persons alleged to have engaged in negligence.

**Substantial factor - defined**

A "substantial factor" in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.  Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.  A person's negligence may combine with another factor to cause harm.

**Partial Affirmative Defense to Negligence (Contributory Negligence)**

Defendants contend that any liability that they may have for CNL's negligence or the negligence of the Nigerian security forces should be reduced because Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, and Bassey Jeje were also negligent, and their negligence contributed to their harm.

To prove contributory negligence as to any of these individuals, defendants must prove both of the following by a preponderance of the evidence as to such individual:

      1.      That the individual was negligent; and

      2.      That his negligence was a substantial factor in causing his harm.

If defendants prove contributory negligence, then you should determine the percentage of responsibility for Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje.  I will use this percentage to reduce the damages that defendants are liable.

**INSTRUCTIONS FOR WRONGFUL DEATH CLAIMS**

22

**United States District Court**
For the Northern District of California

**Nigerian Law – Wrongful Death Liability**

The Irowarinun plaintiffs contend that defendant Chevron Corporation is liable for the wrongful death of Arolika Irowarinun.  To establish this claim, the Irowarinun plaintiffs must prove each of the following:

> 1.      That Arolika Irowarinun died;
>
> 2.      That Arolika Irowarinun's death was caused by a battery or negligent act by Chevron Nigeria Ltd. and/or the Nigerian Government Security Forces;
>
> 3.      That the Irowarinun plaintiff suffered economic loss as a result of Arolika Irowarinun's death (i.e., was dependent on Arolika Irowarinun); and
>
> 4.      That the Irowarinun plaintiff is a wife or child of Arolika Irowarinun.

If you find that the Irowarinun plaintiffs have proved that Chevron Nigeria Ltd. and/or the Nigerian Government Security Forces caused the wrongful death of Arolika Irowarinun, you will also have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in this case, as those theories will be explained later in these instructions.

**Nigerian Law –Wrongful Death – Contributory Negligence**

As to the Irowarinuns' wrongful death claims based on negligence, defendants claim that Arolika Irowarinun's death was caused in whole or in part by his own negligence.  To succeed on this claim, defendants must prove both of the following:

> 1.      That Arolika Irowarinun was negligent; and
>
> 2.      That Arolika Irowarinun's negligence was a proximate cause of his death.

If defendants prove the above, the damages you find are reduced by your determination of the percentage of Arolika Irowarinun's responsibility.  I will calculate the actual reduction.

1    **INSTRUCTIONS FOR CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL**

2    **DISTRESS**

United States District Court
For the Northern District of California

**Intentional Infliction of Emotional Distress—CNL, the Nigerian security forces and the Akure police**

The Oyinbo family plaintiffs claim that CNL, the Nigerian security forces and the Akure police engaged in conduct that caused Bola Oyinbo to suffer severe emotional distress.  To establish this claim, plaintiffs must prove all of the following:

1. That the conduct of either CNL, the Nigerian security forces and/or the Akure police was outrageous;

2. That CNL, the Nigerian security forces and/or the Akure police either intended to cause Bola Oyinbo emotional distress or acted with reckless disregard of the probability that Bola Oyinbo would suffer emotional distress, knowing that Bola Oyinbo was present when the conduct occurred;

3. That Bola Oyinbo suffered severe emotional distress; and

4. That conduct of CNL, the Nigerian security forces and/or the Akure police was a substantial factor in causing Bola Oyinbo's severe emotional distress.

In this context, "outrageous conduct" means conduct so extreme that it goes beyond all possible bounds of decency.  Conduct is outrageous if a reasonable person would regard the conduct as intolerable in a civilized community.  Outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure.

In this context, "reckless disregard" means acting with knowledge that that emotional distress would probably result from the action,  or acting while giving little or no thought to the probable effects of the conduct.

Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.  "Severe emotional distress" is not mild or brief; it must be so substantial or long lasting that no reasonable person in a civilized society should be expected to bear it.  Plaintiffs are not required to prove that Bola Oyinbo suffered physical injury to recover damages for severe emotional distress.

Plaintiffs must prove intentional infliction of emotional distress by a preponderance of the evidence. If you find that CNL, the Nigerian security forces and/or the Akure police committed intentional infliction of emotional distress, you will have to decide whether one or more of the defendants are liable under any one of the theories of liability presented in the case, as those theories will be explained later in these instructions.

**Intentional Infliction of Emotional Distress – Privileged Conduct**

Defendants contend that they are not liable for Bola Oyinbo's harm, if any, because Chevron Nigeria Limited's conduct in contacting the Nigerian Government Security Forces and the Akure police was permissible. To succeed, defendants must prove all of the following:

1.    That Chevron Nigeria Ltd. was exercising its legal rights to protect its economic interests;

2.    That Chevron Nigeria Ltd.'s conduct was lawful and consistent with community standards; and

3.    That Chevron Nigeria Ltd. had a good faith belief that it had a legal right to engage in the conduct.

If you find all of the above, then defendants are not liable on this claim.

**United States District Court**
For the Northern District of California

1   **INSTRUCTIONS FOR DEFENDANTS' LIABILITY FOR CNL'S CONDUCT**

United States District Court

For the Northern District of California

## Overview of Responsibility of Defendants for CNL

Plaintiffs contend that one or more defendants are liable for CNL's conduct under one or more of the following theories of liability: 1) CNL was an agent of one or more defendants, 2) one or more defendants ratified CNL's actions, 3) one or more defendants aided and abetted CNL's actions, and/or 4) one or more defendants conspired with CNL.

## Corporation is a person under law

Defendants are all corporations.  Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is liable for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

## Direct Liability

I have already determined that defendants Chevron Corporation, Chevron Investments Inc. and Chevron U.S.A. Inc. are not directly liable for the injuries plaintiffs allege they suffered.  You are being asked to determine if any of these defendants is indirectly, or vicariously, liable to any of the plaintiffs for the alleged wrongful acts of CNL and, through CNL, the Nigerian Government Security Forces and the Nigerian Akure police.  I will give you instructions on how to determine whether indirect or vicarious liability exists.

## Corporate Parents and Subsidiaries

Plaintiffs do not contend that any of the defendants are liable for CNL's actions and liabilities simply because of their ownership relationship with CNL.  The law allows corporations to organize for the purpose of isolating liability of related corporate entities, such as a parent and a subsidiary, or for other reasons.  At the same time, however, one corporation may act as the agent of another

corporation, or it may ratify that corporation's actions, or it may aid and abet that corporation, regardless of whether the corporations are a parent and a subsidiary, affiliated companies, or completely separate entities.   An ownership relationship between two corporations neither establishes nor precludes liability between them on the basis of agency, ratification, or aiding and abetting.

**Liability of Defendants For Acts of CNL—Agency**

Plaintiffs contend that each defendant is liable for CNL's conduct because CNL was acting as the agent of each defendant.  Defendants deny that CNL was their agent.

The law allows corporations to organize for the purpose of limiting the liability of related corporations.  Despite the legal arrangements between related corporations, a subsidiary may under certain circumstances be considered an agent of its parent or another affiliated corporation; if so, the parent or affiliate may be held liable for the agent's acts based on the real relationship between the corporations.

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. One may be an agent without receiving compensation for services.  Each defendant is sued as a principal, and plaintiffs contend that CNL was acting as the agent of one or more of the defendants.

In performing services for a parent or affiliate as an agent, the subsidiary must be carrying out the business of the parent or affiliate.  An agency relationship may arise where the subsidiary is acting both for the benefit of its own business and that of its parent or affiliate, as where they have similar or overlapping kinds of business.  No agency may be found where the subsidiary is acting solely to advance its own business and that business is entirely different from the business of the parent or affiliate.

To show that one or more of the defendants are liable for CNL's conduct based on agency, plaintiffs must prove:

1.      That CNL acted as an agent of that defendant or defendants; and

2.      That CNL was acting within the scope of its authority during the Parabe incident.

You should assess the relationship between CNL and the defendants as it relates to this case, rather than whether any sort of agency relationship generally existed between CNL and the defendants. The arrangement must be relevant to the plaintiff's claim of wrongdoing.

In considering whether CNL acted as the agent of one or more of the defendants, you should consider a variety of factors, including:

A.      Whether CNL was functioning as an incorporated arm of one or more defendants;

B.      Whether CNL was involved in activities that, but for CNL's presence in Nigeria, one or more of the defendants would have been forced to undertake themselves;

C.      The degree and content of communications between CNL and any of the defendants, particularly during the Parabe incident and other security incidents;

D.      The degree to which one or more of the defendants set or participated in setting policy, particularly security policy, for CNL;

E.      The nature and degree of overlap between the officers, directors and managers of the defendants and CNL.  The fact that some directors and officers of the parent corporation also serve as directors of the subsidiary will not alone support a finding of agency.

F.      The extent to which CNL officers, managers and employees were selected, supervised or controlled by any of the defendants;

G.      The importance of the subsidiary to the defendants' overall operations, including the amount of revenue the subsidiary produces for defendants and the level of the defendants' involvement in the budget, financial affairs, and production activities of

30

United States District Court
For the Northern District of California

the subsidiary.  The fact of a parent's ownership of the subsidiary alone will not support a finding of agency.

H.    Whether the parent exercised more than the usual degree of direction and control that a parent exercises over a subsidiary.  The usual level of parental involvement includes the monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget, and articulation of general policies and procedures.

Conduct is within the scope of authority if:

a.    It is reasonably related to the kinds of tasks that the agent was employed to perform; or

b.    It is reasonably foreseeable in light of the principal's business or the agent's job responsibilities.

CNL's conduct need not be authorized by defendants to be within the scope of authority.  An agent's unauthorized conduct may be within the scope of authority if the conduct was committed in the course of a series of acts authorized by the principal or the conduct arose from a risk inherent in or created by the enterprise. An agent's wrongful or criminal conduct may be within the scope of employment even if it violates a company policy or does not benefit the principal.

If CNL is the agent of one or more of the defendants, any act or omission of CNL within the scope of authority is considered the act or omission of such defendants.

You must separately consider whether CNL has an agency relationship with each of the defendants.

Each theory of liability is independent, such that if you reject agency for any one defendant, you must also consider whether any other theory of liability applies to that defendant.


**Liability of Defendants For Acts of CNL—Agency (Factors not considered or not dispositive)**

In considering whether CNL acted as the agent of one or more of the defendants, bear in mind that some acts should not be considered as evidence of agency.  These include the preparation and filing of audited consolidated financial statements or annual reports that include information about

subsidiaries of Chevron Corp.; the adoption of internal accounting controls governing payments to foreign officials; and the issuance of collective media releases that include information about subsidiaries of Chevron Corp.

Other factors may be considered, but are not, in and of themselves, determinative of an agency relationship. These factors include whether one or more defendants referred to CNL as a part, division, unit, or department of that defendant; and whether one or more defendants shared a corporate logo or brand with CNL.

**Liability of Defendants For Acts of CNL— Ratification**

Plaintiffs contend that each defendant is liable for the acts of CNL because each defendant ratified or approved that conduct after it occurred. Defendants deny that they ratified CNL's conduct.

To show ratification, plaintiffs must prove:

    1.    That one or more defendants knew or should have known of all material facts related to CNL's conduct, and

    2.    That the defendant or defendants ratified, adopted, or approved of this conduct.

Ratification means to treat the act as if originally authorized. Defendants are liable for CNL's conduct if, after the fact, they ratified, adopted, or approved that conduct, even if it was originally unauthorized.

Approval or ratification can be shown through defendants' statements or it can be inferred from defendants' conduct that implies an intent to consent to or adopt the act. A variety of different types of conduct permit you to infer approval. Ratification of an unauthorized act may be demonstrated through knowing acceptance after the fact of CNL's actions. Defending CNL's actions or covering up its misdeeds may also constitute ratification. Failure to disavow CNL's acts may constitute ratification, even if the acts were not within the scope of the agency relationship. Ratification also

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

exists if the defendants, after knowledge of or opportunity to learn of the misconduct, continued to use CNL's services. Failure to take adequate steps to investigate or remedy CNL's misconduct also constitutes ratification. In considering whether defendants ratified the acts of CNL, you may consider, among other things, whether defendants have made statements to the media that evidence ratification, including false or conflicting statements about CNL's involvement in the Parabe incident and false or conflicting statements about CNL's ownership of the boats and helicopters used to transport the Nigerian security forces.

A defendant's "knowing" ratification can be shown by circumstantial evidence including through evidence of the nature of the acts done, the relation of the parties, the interests of the alleged agent and ratifier, and other circumstances.

If you find that one defendant did not ratify CNL's conduct, you must still consider whether each of the other defendants ratified CNL's conduct.

Each theory of liability is independent, such that if you reject ratification for any defendant, you must also consider whether any other theory of liability applies to that defendant.


**Liability of Defendants for Acts of CNL – Aiding and Abetting**

Plaintiffs contend that each defendant is responsible for CNL's conduct because defendants aided and abetted that conduct. Defendants deny that they aided and abetted CNL's conduct.

To show that one or more defendants are responsible for aiding and abetting CNL's conduct, plaintiffs must prove:

1. That the defendant or defendants provided substantial assistance or encouragement to CNL;

2. That this assistance had a substantial effect on the perpetration of the wrongful acts; and

3. That, when the defendant or defendants provided the assistance, they knew that the wrongful acts would be committed or had been committed.

Knowledge can be inferred from the circumstances.  Mere knowledge that a harm was going to be inflicted on a plaintiff and the failure to prevent it do not constitute aiding and abetting.

You must separately consider whether each defendant aided and abetted CNL's conduct.  Each theory of liability is independent, such that if you reject aiding and abetting for any defendant, you must also consider whether any other theory of liability applies to that defendant.

**Liability of Defendants for Acts of CNL – Conspiracy**

Plaintiffs claim that defendants are liable for CNL's conduct because they conspired together with CNL to commit that conduct.  A conspiracy is an agreement by two or more persons to commit a wrongful act.

To prove a conspiracy, plaintiffs must prove:

1.      That CNL had a plan to commit a wrongful act;

2.      That defendants were aware that CNL had such a plan; and

3.      That defendants agreed with CNL and intended that the wrongful act be committed.

Mere knowledge of the wrongful conduct without an agreement that it be committed is not enough to establish a conspiracy.

34

**INSTRUCTIONS FOR CNL'S RESPONSIBILITY FOR GSF'S CONDUCT**

**United States District Court**
For the Northern District of California

**Overview of Responsibility of Defendants for CNL and the Nigerian security force**

If you find that the Nigerian security forces committed any wrong that harmed plaintiffs under any of the theories on which you were instructed (such as torture, cruel, inhuman, or degrading treatment, wrongful death, assault, battery, intentional infliction of emotional distress, or negligence), then you must determine whether defendants are also liable for that harm. Plaintiffs contend that defendants are liable for the conduct of the Nigerian security forces because defendants are liable for CNL's conduct, and because CNL is liable for the conduct of the Nigerian security forces.

Plaintiffs contend that CNL is liable for the conduct of the Nigerian security forces under one or more of the following theories of liability, which will be explained in the following instructions:

1) the Nigerian security forces were CNL's agents;

2) CNL ratified the conduct of the Nigerian security forces;

3) CNL aided and abetted the Nigerian security forces;

4) CNL conspired with the Nigerian security forces to attack the Parabe protestors;

5) CNL engaged in a joint venture with the Nigerian government, including the Nigerian security forces;

6) CNL engaged in a joint enterprise with the Nigerian security forces;

7) CNL instigated or induced the Nigerian security forces; or

8) CNL hired the Nigerian security forces to do work that involved a special risk of harm.

If you find for the plaintiffs on any one of these theories of liability, this is sufficient to find CNL liable for the conduct of the Nigerian security forces.

Each of these is a separate theory of liability. You only need to find in plaintiffs' favor on one such theory to hold CNL liable for the conduct of the Nigerian security forces. If you find against

United States District Court
For the Northern District of California

plaintiffs on any one such theory, such a finding does not affect any other theory.  You must still individually consider plaintiffs' other theories of liability.

**Responsibility of CNL for acts of Nigerian security forces—Agency**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because the Nigerian security forces were acting as CNL's agent during the Parabe incident.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether the Nigerian security forces were acting as CNL's agent.  Defendants deny that the Nigerian security forces were CNL's agent.

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services.  The other person is called a principal.  One may be an agent without receiving compensation for services.  Plaintiffs contend that CNL was the principal, and the Nigerian security forces were CNL's agent.

To show that CNL is responsible for the Nigerian security forces' conduct based on agency, plaintiffs must prove:

    1.    That the Nigerian security forces were an agent of CNL; and

    2.    That the Nigerian security forces were acting within the scope of their authority during the Parabe incident.

In considering whether the Nigerian security forces acted as the agent of CNL, you may consider a variety of factors, including whether CNL determined the work schedules or assignments of the Nigerian security forces; whether CNL had the authority to decide if, when, or how the Nigerian security forces would participate in security operations, including deciding whether or when the Nigerian security forces would respond to the Parabe platform; whether CNL had control over the

manner in which the Nigerian security forces performed their duties in general or at Parabe; or whether CNL paid, fed, or housed the Nigerian security forces.

Conduct is within the scope of authority if:

    a.     It is reasonably related to the kinds of tasks that the agent was employed to perform; or

    b.     It is reasonably foreseeable in light of the principal's business or the agent's job responsibilities.

The Nigerian security forces' conduct need not be authorized by CNL to be within the scope of authority. An agent's unauthorized conduct may be within the scope of authority if the conduct was committed in the course of a series of acts authorized by the principal or the conduct arose from a risk inherent in or created by the enterprise. An agent or employee's wrongful or criminal conduct may be within the scope of employment even if it violates a company policy or does not benefit the principal.

If the Nigerian security forces are the agent of CNL, any act or omission of the Nigerian security forces within the scope of authority is considered the act or omission of CNL.


**Responsibility of CNL for acts of Nigerian security forces—Ratification**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because CNL ratified or approved that conduct after it occurred. If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether CNL approved the Nigerian security forces' conduct. Defendants deny that CNL ratified the Nigerian security forces' conduct.

To show that CNL is responsible for the Nigerian security forces' conduct on the basis of ratification, plaintiffs must prove:

United States District Court

For the Northern District of California

1.      That CNL knew or should have known of all material facts related to the Nigerian security forces' wrongful conduct, and

2.      That CNL ratified, adopted, or approved of this conduct.

Ratification means to treat the act as if originally authorized.  CNL is responsible for the Nigerian security forces' conduct if, after the fact, CNL ratified, adopted, or approved that conduct, even if it was originally unauthorized.

Approval or ratification can be shown through CNL's statements or it can be inferred from defendants' conduct that implies an intent to consent to or adopt the act.  A variety of different types of conduct permit you to infer approval.  Ratification of an unauthorized act may be demonstrated through knowing acceptance after the fact of the Nigerian security forces' actions.  Defending the Nigerian security forces' actions or covering up their misdeeds may also constitute ratification. Failure to disavow the Nigerian security forces' acts may constitute ratification, even if the acts were not within the scope of the agency relationship.  Ratification also exists if CNL, after knowledge of or opportunity to learn of the misconduct, continued to use the Nigerian security forces' services. Failure to take adequate steps to investigate or remedy the Nigerian security forces' misconduct also constitutes ratification.


**Responsibility of CNL for acts of Nigerian security forces – aiding and abetting**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because CNL aided and abetted the wrongful conduct of the Nigerian security forces.  In determining whether CNL aided and abetted wrongful conduct of the Nigerian security forces, you should apply the same standards for aiding and abetting liability as were set out earlier in these instructions.

United States District Court
For the Northern District of California

1

**Responsibility of CNL for acts of Nigerian security forces – conspiracy**

2

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable

3

for the conduct of the Nigerian security forces because CNL conspired with the Nigerian security

4

forces.  In determining whether CNL conspired with the Nigerian security forces, you should apply

5

the same standards for conspiracy liability as were set out earlier in these instructions.

6

7

8

**Responsibility of CNL for acts of Nigerian security forces—Joint Venture**

9

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable

10

for the conduct of the Nigerian security forces because CNL was engaged in a joint venture with the

11

Nigerian government, including the Nigerian security forces.  If you find that the Nigerian security

12

forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey

13

Jeje, you must decide whether CNL was engaged in a joint venture with the Nigerian government,

14

including the Nigerians security forces.  Defendants deny that CNL was engaged in a joint venture

15

with the Nigerian government, including the Nigerian security forces.

16

A joint venture is an association of two or more persons, including corporations, to carry on a

17

business as co-owners. The members of a joint venture are called joint venturers or partners.  An act

18

or omission of a partner within the scope of the joint venture business is considered the act or

19

omission of all partners.  Therefore each of the members of a joint venture is liable for the wrongful

20

conduct of another member acting within the scope of his or her authority.

21

To show that CNL is responsible for the Nigerian security forces' conduct on the basis of joint

22

venture liability, plaintiffs must prove:

23

24

      1.      That CNL was engaged in a joint venture with the Nigerian government, including
                 the Nigerian security forces, and

25

26

      2.      That the Nigerian security forces were acting within the scope of the joint venture
                 business during the Parabe incident.

27

28

40

United States District Court

For the Northern District of California

In considering whether CNL was engaged in a joint venture with the Nigerian government, you may consider, among other things, whether CNL or defendants made statements that CNL was a member of such a joint venture.

A joint venturer is acting within the scope of the joint venture business when doing anything which is either expressly or impliedly authorized by the joint venture or which is in furtherance of the joint venture business.

If you find that CNL and the Nigerian government were joint venturers and that the Nigerian soldiers CNL brought to Parabe were acting within the scope of the joint venture business, and if you find those soldiers committed wrongful acts against the plaintiffs, then you must find CNL responsible for those wrongful acts.


**Responsibility of CNL for acts of Nigerian security forces—Joint Enterprise**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because CNL was engaged in a joint enterprise with the Nigerian security forces. If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether CNL was engaged in a joint enterprise with the Nigerian security forces. Defendants deny that CNL was engaged in a joint enterprise with the Nigerian security forces.

To show that CNL is responsible for the conduct of the Nigerian security forces on the basis of joint enterprise, plaintiffs must prove:

      1.    That CNL was engaged in concerted action with the Nigerian security forces with a common end or joint purpose; and

      2.    That the Nigerian security forces committed wrongful acts in the course of executing that common end or joint purpose.

The common end or joint purpose need not be wrongful or illegal. A joint enterprise need not be a business venture.

**Responsibility of CNL for acts of Nigerian security forces—Instigation or Inducement**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because CNL instigated or induced the actions of the Nigerian security forces.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje, you must decide whether CNL instigated or induced the wrongful actions of the Nigerian security forces.

Defendants deny that CNL instigated or induced the wrongful actions of the Nigerian security forces.

To show that CNL is responsible for the conduct of the Nigerian security forces on the basis of instigation or inducement, plaintiffs must prove:

    1.    That CNL instigated, induced, or invited the Nigerian security forces to commit wrongful acts;

    2.    That it was foreseeable that these wrongful acts would cause harm to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje; and

    3.    These wrongful acts caused harm to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje.


**Responsibility of CNL for acts of Nigerian security forces—Special Risk of Harm**

Plaintiffs contend that, if defendants are liable for the conduct of CNL, defendants are also liable for the conduct of the Nigerian security forces because the Nigerian security forces were performing work for CNL that involved a special risk of harm.  If you find that the Nigerian security forces are responsible for injuries to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or  Bassey Jeje, you must decide whether the Nigerian security forces were performing work for CNL that involved a special risk of harm.  Defendants deny that the Nigerian security forces were performing work for CNL that involved a special risk of harm.

If you find that the Nigerian security forces were performing work for CNL, but were not CNL's agent, then CNL is responsible for the conduct of the Nigerian security forces if they were performing work that involved a special risk of harm.  This is a separate theory of liability from agency, which also asks whether the security forces were performing services for CNL, but which does not require any special risk of harm.

A special risk of harm is a recognizable danger that arises out of the nature of the work or the place where it is done and requires specific safety measures appropriate to the danger. A special risk of harm may also arise out of a planned but unsafe method of doing the work. A special risk of harm does not include a risk that is unusual, abnormal, or not related to the normal or expected risks associated with the work.

To establish this claim, plaintiffs must prove each of the following:

      1.      That the work done by the Nigerian security forces was likely to involve a special risk of harm to others;

      2.      That CNL knew or should have known that the work was likely to involve this risk;

      3.      That the Nigerian security forces failed to use reasonable care to take specific safety measures appropriate to the danger to avoid this risk; and

      4.      That the Nigerian security forces' failure to use reasonable care was a cause of harm to Arolika Irowarinun, Bola Oyinbo, Larry Bowoto, or Bassey Jeje.

In deciding whether CNL should have known the risk, you should consider its knowledge and experience in the field of work to be done.

**PRIVILEGES, DUTIES AND DEFENSES**

United States District Court
For the Northern District of California

## General – Explanation for Subsequent Instructions

Plaintiffs contend that CNL was negligent in calling in and assisting the Nigerian Security forces. Defendants contend that CNL was not negligent because it had a duty and/or a privilege to call law enforcement or the Nigerian security forces to seek assistance in ending what defendants contend was the unlawful occupation of the barge, platform and tugboat.  I am providing you with the following instructions on United States and Nigerian law relating to such duties and privileges, so that you may assess whether CNL was negligent when it called in and assisted the Nigerian security forces.  The following duties and privileges only apply to plaintiffs' claim that CNL was negligent in calling in and assisting the Nigerian security forces.  These instructions do not apply to any of plaintiffs' remaining claims or liability theories.

## Law Enforcement Reporting Privilege

When a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication cannot be the basis for imposing liability on the citizen.  For this rule to apply, defendants have the burden of showing that their report would trigger proceedings governed by adequate procedural safeguards.  If no such safeguards existed, the rule applies only if defendants prove that they made their report to the police in good faith and without malice.

## Duty to Report Crime

Citizens and residents of Nigeria have a legal duty to report crime to the Nigerian authorities, and to assist them in stopping and preventing crime and apprehending perpetrators.  If you find that Chevron Nigeria Ltd. reasonably believed that plaintiffs were committing any crime, then defendants cannot be liable merely for Chevron Nigeria Ltd.'s reporting such activity to the Nigerian authorities.

45

**Duty to Assist Police**

Citizens have a duty to assist the police in maintaining the peace and suppressing criminal activity.


**Safe Working Environment**

An employer has a legal duty under Nigerian law to provide a safe work environment for workers and contractors while working at the direction of the employer.


**No Legal Duty Exists to Negotiate with Persons Who Have Seized a Facility and Held Hostages**

No one has a legal duty to negotiate with persons who have seized a facility and held hostages.


**Criminal Acts – Hostage Taking**

Under United States law and international law, any person that seizes, detains or threatens to injure or detain persons in order to compel CNL, defendants, the Nigerian government, or anyone else, to do or abstain from doing any act as a condition for releasing the detained persons, is guilty of a felony.


**Criminal Acts – Unlawful Seizure of Platform**

Under Nigerian law, any person who does anything with intent to obstruct or prevent the production or distribution of petroleum products in any part of Nigeria which causes or contributes to any interruption in the production or distribution of petroleum products is guilty of a felony.


**Criminal Acts – Unlawful Seizure of Ship**

If you find that plaintiffs seized or exercised control over a ship by force or threat of force, or any other form of intimidation, or if they performed any act of violence against a person on board a ship,

46

or placed any object on board a ship that is likely to endanger its safe navigation, then they are guilty of a crime under United States law, international law and Nigerian law.

### Nigerian Law – Assault in Pursuance of Conspiracy

Under Nigerian law, any person who assaults any person in pursuance of any unlawful conspiracy respecting any manufacture, trade, business, or occupation, or respecting any person or persons concerned or employed in any manufacture, trade, business, or occupation, or the wages of any such person or persons, is guilt of a felony punishable by three years' imprisonment.

### Nigerian Law – Interference with Oil Operations

Under Nigerian law, any person who interferes with or obstructs the holder of an oil exploration, oil prospecting, or oil mining lease or license (or his servants or agents) in the exercise of any rights, power or liberty conferred by the license or lease is guilty of an offense punishable by imprisonment, a fine, or both.

### Use of Force – Privilege

The Nigerian Government Security Forces and Nigerian Police are legally entitled to use force as may be reasonably necessary to overcome any force used in resisting arrest, and cannot be found to have engaged in wrongful conduct for doing so.

**INSTRUCTIONS FOR COMPENSATORY DAMAGES**

United States District Court
For the Northern District of California

**Compensatory Damages**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for any of the plaintiffs, you must determine the plaintiff's damages. The plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for injury you find was caused by the defendant  It is for you to determine what damages, if any, have been proved.  Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Compensatory Damages – Larry Bowoto and Bassey Jeje (Individual Claims)**

If you find for Larry Bowoto or Bassey Jeje on any of their claims – that is, for torture; cruel, inhuman or degrading treatment; assault; battery; or negligence – you must determine the plaintiff's damages.  In determining the damages for these claims, you should consider the following:

1.    The nature and extent of the injuries;

2.    The disability, disfigurement, and loss of enjoyment of life experienced and which with reasonable probability will be experienced in the future;

3.    The mental, physical, and emotional pain and suffering experienced and which with reasonable probability will be experienced in the future, including injury to feelings, humiliation, shame, degradation, loss of social position or injury to credit or to reputation; and

4.    The reasonable value of necessary medical care, treatment, and services received to the present time.

49

United States District Court
For the Northern District of California

**Compensatory Damages  – Oyinbo family – certain claims**

If you find for the Oyinbo family for Bola Oyinbo's claims of torture or of cruel, inhuman or degrading treatment at any location; or for assault, battery or negligence which occurred before he was taken on land,  you must determine their damages.  In determining the measure of damages for these claims, you should consider:

1. The nature and extent of the injuries suffered by Bola Oyinbo;

2. Any disability, disfigurement and loss of enjoyment of life experienced during the period between injury and death;

3. The mental, physical, and emotional pain and suffering experienced during the period between injury and death;

4. The reasonable value of necessary medical care, treatment, and services received during the period between injury and death;

5. The reasonable value of wages, earnings and earning capacity lost during the period between injury and death.

**Compensatory damages - Oyinbo family – other land-based claims**

If you find for the Oyinbo family for assault, battery, negligence or intentional infliction of emotional distress for any injuries that Bola Oyinbo suffered on land, do not award compensatory damages for these claims.  For legal reasons, the Oyinbo family may not recover mental, physical and emotional pain and suffering for these claims.  You may, however, consider whether to award of punitive damages for these claims, as set forth below.

50

**United States District Court**
For the Northern District of California

**Compensatory Damages – Irowarinun family – for Wrongful Death**

If you find that the Irowarinun family has proved their claim against any defendant for the wrongful death of Arolika Irowarinun, you must determine their damages.

Roseline Irowarinun, Mary Irowarinun, and Margaret Irowarinun claim the following damages:

1.   The loss of Arolika Irowarinun's love, companionship, comfort, care, assistance, protection, affection, society, moral support; and

2.   The loss of the enjoyment of sexual relations.

In calculating these damages, you must calculate the monetary value of these injuries; you should not consider grief, sorrow, or mental anguish.

Bosuwo Sebi Irowarinun, Caleb Irowarinun, Orioye Laltu Irowarinun, Temilola Irowarinun, Adegorye Oloruntimjehum Irowarinun, Aminora James Irowarinun, Eniesoro Irowarinun, Gbenga Irowarinun, Ibimisan Irowarinun, Monotutegha Irowarinun, and Olamisbode Irowarinun also claim the following damages:

1.   The loss of Arolika Irowarinun's love, companionship, comfort, care, assistance, protection, affection, society, moral support; and

2.   The loss of Arolika Irowarinun's training and guidance.

In calculating these damages, you must calculate the monetary value of these injuries; you should not consider grief, sorrow, or mental anguish.

In determining the Irowarinun family's loss, do not consider:

1.   Arolika Irowarinun's pain and suffering; or

2.   The poverty or wealth of the Irowarinun family.

In computing these damages, consider the losses suffered by all plaintiffs in the Irowarinun family and return a verdict of a single amount for the Irowarinun family. I will divide the amount among the plaintiffs in the Irowarinun family.

**PUNITIVE DAMAGES**

If you find for the plaintiffs, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by clear and convincing evidence that punitive damages should be awarded, and, if so, the amount of any such damages. The amount of punitive damages, if any, will be determined by you at a later time. At this time, you must only determine whether an award of punitive damages is appropriate.

You may award punitive damages only if you find that the defendant's conduct on which you base your finding of liability  was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

To prove that any corporate defendant engaged in conduct which was malicious, oppressive or in reckless disregard of the plaintiff's rights, plaintiffs must prove one of the following by clear and convincing evidence:

    1.    That the conduct which was malicious, oppressive or in reckless disregard of plaintiffs' rights was committed by one or more officers, directors or managing agents of the corporate defendant, acting in a corporate capacity; or

    2.    That the conduct which was malicious, oppressive or in reckless disregard of plaintiffs' rights was authorized by one or more officers, directors or managing agents of the corporate defendant; or

    3.    That by one or more officers, directors or managing agents of the corporate defendant knew of the conduct which was malicious,

52

United States District Court

For the Northern District of California

1

oppressive or in reckless disregard of plaintiffs' rights and adopted
or approved that conduct after it occurred.

2

3
An employee is a "managing agent" if he or she exercises substantial independent authority and

4
judgment in his or her corporate decision making so that his or her decisions ultimately determine

5
corporate policy.

6
You may determine to impose punitive damages against one or more of the defendants and not

7
others.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Duty to Deliberate**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through Tracy, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

54

**__Return of Verdict__**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

United States District Court

For the Northern District of California