**United States District Court**
For the Northern District of California

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    LARRY BOWOTO *et al.*,                         No. C 99-02506 SI

9              Plaintiffs,                           **ORDER DENYING PLAINTIFFS'**
                                                     **MOTION FOR A NEW TRIAL and**
10     v.                                            **DENYING PLAINTIFFS' RENEWED**
                                                     **MOTION FOR JUDGMENT AS A**
11   CHEVRON CORPORATION *et al.*,                   **MATTER OF LAW**

12             Defendants.
                                            /
13

14         Plaintiffs have filed a motion for a new trial and have renewed their motion for judgment as a

15   matter of law.  The motions are scheduled for hearing on March 6, 2009.  Pursuant to Civil Local Rule

16   7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the

17   hearing.  Having considered the papers submitted, and for good cause shown, the Court hereby DENIES

18   plaintiffs' motions.

19

20                              **BACKGROUND**

21         This case arose from events on an oil platform in the Niger Delta of Nigeria in 1998.  Plaintiffs

22   brought various claims under the Alien Tort Claims Act, 28 U.S.C. §§ 1350 *et seq.*; the Torture Victim

23   Protection Act of 1991, 28 U.S.C. § 1350, note; and California and Nigerian law against defendants

24   Chevron Corporation, Chevron Investments, Inc., and Chevron U.S.A., Inc.  On December 1, 2008, after

25   a four-week trial, the jury returned a verdict for defendants on all claims.  Now before the Court are

26   plaintiffs' post-trial motions.

27

28   //

**United States District Court**
For the Northern District of California

1   **LEGAL STANDARD**

2   **1.      Motion for a New Trial**

3          Rule 59 of the Federal Rules of Civil Procedure provides that after a jury trial, "[t]he court may,

4   on motion, grant a new trial . . . for any reason for which a new trial has heretofore been granted in an

5   action at law in federal court . . . " Fed. R. Civ. Pro. 59(a).  Rule 59 gives the trial judge the power to

6   prevent a miscarriage of justice.  *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256

7   (9th Cir. 1957).  A motion for new trial may invoke the court's discretion insofar as it is based on claims

8   that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other

9   reasons, the trial was not fair to party moving; and may raise questions of law arising out of alleged

10  substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward*

11  *v. Duncan*, 311 U.S. 243, 251 (1940).  Where a movant claims that a verdict is against the clear weight

12  of the evidence, a new trial should be granted where, after giving full respect to the jury's findings, the

13  judge "is left with the definite and firm conviction that a mistake has been committed" by the jury.

14  *Landes Const. Co ., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

15         The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of

16  discretion on the part of the trial court."  *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per

17  curiam); *see Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969) (trial court has "large

18  judicial discretion" in considering new trial motion).  A trial court may grant a motion for a new trial

19  if the verdict is "contrary to the clear weight of the evidence, or is based upon evidence which is false,

20  or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Roy v. Volkswagen of*

21  *America, Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (quoting *Hanson v. Shell Oil Co.*, 541 F.2d 1352,

22  1359 (9th Cir. 1976)).

23

24  **2.      Motion for Judgment as a Matter of Law**

25         Federal Rule of Civil Procedure 50(b) provides:

26         If the court does not grant a motion for judgment as a matter of law made under Rule
           50(a), the court is considered to have submitted the action to the jury subject to the
27         court's later deciding the legal questions raised by the motion.  No later than 10 days
           after the entry of judgment . . . the movant may file a renewed motion for judgment as
28         a matter of law and may include an alternative or joint request for a new trial under Rule

                                            2

59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. Pro. 50(b). The party moving for judgment as a matter of law bears a heavy burden. Granting a renewed motion for judgment as a matter of law is proper when the evidence construed in the light most favorable to the non-moving party permits only one reasonable conclusion as to the verdict and that conclusion is contrary to the jury's verdict. *Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 181 (9th Cir. 1989).

The question in a motion for judgment as a matter of law is whether there is substantial evidence to support the jury finding for the non-moving party. *See Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001); *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 909 (9th Cir. 1978). In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the verdict. *See Mosesian v. Peat, Marwick, Mitchell*, 727 F.2d 873, 877 (9th Cir. 1984). Substantial evidence is more than a "mere scintilla." *See Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Chisholm Bris. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974). Rather, it is defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

**DISCUSSION**

1.    **Motion for a New Trial**

      A.    **The jury's verdict was not against the clear weight of the evidence**

Plaintiffs argue that the jury's verdict that defendants were not liable to plaintiffs Larry Bowoto, Bassey Jeje, and Ola Oyinbo,[1] for torture; cruel, inhuman or degrading treatment; assault; battery; or

---

[1] Ola Oyinbo sued on behalf of her deceased husband Bola Oyinbo and her minor children Bayo and Deji Oyinbo.

3

**United States District Court**
For the Northern District of California

1   negligence[2] was against the clear weight of the evidence.  They also argue that the jury's finding of no

2   liability to the Irowarinun plaintiffs for wrongful death was against the clear weight of the evidence.[3]

3   Plaintiffs argue that the jury's verdict must be set aside because there was no evidence contradicting

4   plaintiffs' claims that Bowoto, Jeje and Oyinbo were shot, beaten and tortured without justification.

5          Even if plaintiffs' characterization of the evidence were correct, the fact that this evidence was

6   uncontradicted does not necessarily mean that the jury's decision must be set aside.  *Jauregui v. City*

7   *of Glendale*, 852 F.2d 1128, 1132 (9th Cir. 1988) (The jury "may properly reject uncontradicted

8   testimony so long as it does so with good reason. Such evidence properly may be rejected because of

9   its inherent unbelievability, because a witness's demeanor raises doubt as to his sincerity, or because

10  the testimony is clouded with uncertainty.") (citations omitted).

11         In any event, the jury heard evidence that could have made them doubt the credibility of

12  plaintiffs' witnesses. *See, e.g.*,  Decl. of Noel Rodriguez in Supp. of Defs. Opp. ("Rodriguez Decl."),

13  ex. 16, Tr. 2399:21-2403:14 (contradictory statements regarding the location of the bullet Jeje testified

14  was removed from his arm); exs. 4, Tr. 421:2-23, and 10, Tr. 1525:2-19 (contradictory statements about

15  whether the person with one eye could have given the order to shoot Bowoto); exs. 10, Tr. 1524:7 and

16  Decl. of Caroline N. Mitchell in Supp. of Defs. Opp. ("Mitchell Decl."), ex. K at PX 2706-002

17  (inconsistent evidence about the location of Irowarinun's wounds).

18         Moreover, jurors could have believed that plaintiffs were injured but might still have decided

19  defendants were not liable if the jury was not persuaded by plaintiffs' evidence of secondary and tertiary

20  liability.  Plaintiffs' theories of secondary liability were that (1) Chevron subsidiary Chevron Nigeria

21  Limited ("CNL") was engaged in a joint enterprise with Nigeria's Government Security Forces ("GSF")

22  and (2) the GSF was CNL's agent; plaintiffs' theories of tertiary liability were that (3) defendants

23  ratified CNL's conduct or (4) CNL was defendants' agent. The jury heard evidence that could rationally

24  have led them to reject these theories of liability.  *See, e.g.*, Rodriguez Decl., ex. 6, Tr. 853:17-25

25

26         [2] Ola Oyinbo also contests the jury's verdict of no liability for intentional infliction of emotional
    distress.
27

28         [3] The Irowarinun plaintiffs are fourteen individuals who brought this action on behalf of Arolika
    Irowarinun.

4

United States District Court
For the Northern District of California

1  (testimony that CNL's concern was the safety of those on the barge); exs. 14, Tr. 2244:7-17 and 12, Tr.

2  1943:25-1944:8 (testimony that CNL did not control the GSF); ex. 8, Tr. 1248:25-1250:1, 1282:17-

3  1253:8 (cross-examination challenging plaintiffs' expert's opinion that defendants exercised "close

4  control" over CNL).

5         Accordingly, the Court concludes that the jury's finding of no liability was not against the clear

6  weight of the evidence.

7

8         **B.      The Court's evidentiary rulings were not in error**

9         Plaintiffs argue that they are entitled to a new trial because of the cumulative effect of rulings

10 that allowed the jury to hear prejudicial evidence.

11        **i.      Incidents on the *Cheryl Ann* tugboat**

12        Plaintiffs object that the Court should not have admitted testimony from Captain David Schools

13 and others who testified about events on the *Cheryl Ann* tugboat. The Court disagrees. The incidents

14 that gave rise to this case occurred at a site known as the Parabe barge. The jury heard testimony that

15 the *Cheryl Anne* tugboat was moored to the barge at the beginning of the incident and that its crew were

16 taken captive by Ilaje (a Nigerian tribe to which plaintiffs belong) around the time of the incidents on

17 the barge. The Court allowed this evidence on two theories. First, what happened on the tugboat was

18 so closely related to what happened on the barge that the two sets of events were part of the same

19 incident and defendants were therefore entitled to put on evidence of the time, place, and circumstances

20 of what occurred on the tugboat. *See United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).

21 Second, events on the tugboat were relevant to prove the intent of the Ilaje in approaching the barge.

22 *See United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991). Defense evidence about what

23 happened on the tugboat was also relevant to rebut plaintiffs' characterization of the interactions

24 between the Ilaje and the tugboat crew. It was therefore not error to admit this evidence.

25        **ii.     Testimony of CNL employees Hervey and Stapleton**

26        Plaintiffs contend that the Court should not have admitted the deposition testimony of Stapleton

27 and Hervey, two CNL employees who were not at Parabe at the time of the incident. They testified that

28 they had heard that the Ilaje were chanting, threatening to set fire to the barge and to prevent a helicopter

**United States District Court**
For the Northern District of California

1   from landing, and that the Ilaje were smoking marijuana. Stapleton and Hervey also testified that they

2   provided this information to CNL's "crisis management team," the entity that responded to events on

3   the barge. The Court admitted this testimony on the theory that it was offered not to prove that these

4   events occurred but because it was probative of the crisis management team's information about the

5   situation that was unfolding on the barge. The evidence was therefore relevant to a central issue in the

6   case: whether CNL was justified in seeking the assistance of the GSF. The Court properly offered

7   limiting instructions directing the jury to use the evidence only for this purpose. It was not error to

8   admit this deposition testimony.

9

10      **C.      Defense counsel's closing argument does not warrant a new trial**

11      Finally, plaintiffs argue that they are entitled to a new trial because in closing, defense counsel

12   encouraged the jury to use evidence for an improper purpose. Earlier in the trial, the Court had admitted

13   evidence of prior acts of hostage taking by the Ilaje. The Court ruled that this evidence was admissible

14   to prove the state of mind of CNL employee Deji Haastrup. Plaintiffs contend that defendants

15   encouraged the jury to use this evidence for the improper purpose of proving that plaintiffs have violent

16   propensities because of their identity as Ilaje. The Court disagrees. After allowing plaintiffs to present

17   extensive evidence about the detrimental effect that CNL's activities in the region had on the Ilaje for

18   years before the incident at Parabe, the Court ruled that defendants were permitted to introduce some

19   evidence to provide context for why Haastrup responded as he did in May of 1998. It was not error to

20   do so. In addition, defense counsel did not imply in closing that plaintiffs – or the Ilaje in general – have

21   a propensity for violence. Plaintiffs point to the following statement by defense counsel:

22          [Y]ou heard Captain Schools' description of what it was like on the three days,
23      first three days, and you heard his description of what it was like to be hijacked and
        taken hostage to the village, and held there for another three days.
24          Now, why is all this significant? I think for several reasons. First of all, it shows
        that hostage-taking, kidnaping, was part of their mind set. It's something that they
25      would do. It's something they, these Ilaje communities, some people in the Ilaje
        communities, had done at least four times before. It's what they were doing at Parabe,
26      and it's what they did on the tug afterwards.

27   Decl. of Theresa Traber in Supp. of Reply, ex. 19, Tr. 2635:15-2636:1. This excerpt does suggest that

28   counsel argued that the prior acts of hostage taking were relevant for their truth, which was incorrect.

6

**United States District Court**
For the Northern District of California

1   This isolated error in defense counsel's closing arguments was not, however, so unfairly prejudicial as

2   to warrant a new trial.  Furthermore, there is no support in the record for plaintiffs' contention that

3   defense counsel was attempting to exploit juror stereotypes about the Ilaje.

4         For these reasons, plaintiffs' motion for a new trial is DENIED.

5

6   **2.        Renewed Motion for Judgment as a Matter of Law**

7         Plaintiffs argue that they were entitled to a directed verdict on three defenses – the law

8   enforcement reporting privilege, the duty to report crime, and the duty to assist police – because there

9   was no evidence that CNL's contact with the military could be accurately characterized as a report to

10  law enforcement of illegal activity.  The Court disagrees.  The jury heard substantial evidence from

11  which it could rationally conclude that CNL employees sought to alert the authorities that the barge and

12  its workers had been taken hostage.  *See, e.g.*, Rodriguez Decl., ex. 10, Tr. 1628:4-15; ex. 14, Tr.

13  2228:11-2237:13.

14        Plaintiffs also argue that the privilege instructions improperly applied California law to claims

15  for negligence under Nigerian law.  This argument fails because California law on these principles

16  reflects general common law principles on the duty to report a crime.  *See People v. Ford*,  234 Cal.

17  App.2d 480, 487-88 (Cal. Ct. App. 1965) ("All citizens are under a statutory duty to assist the police

18  authorities in maintaining the peace and in suppressing crime [citation], a duty which goes back

19  hundreds of years in the common law . . .").  The privileges were therefore applicable irrespective of

20  what law applied on the barge.  Accordingly, plaintiffs' motion for judgment as a matter of law is

21  DENIED.

22

23       **IT IS SO ORDERED.**

24

25  Dated: March 4, 2009

26                              SUSAN ILLSTON
                            United States District Judge

27

28